| | |
|---|---|
| DISTRICT COURT, COUNTY OF BOULDER, STATE OF COLORADO<br>Address:     Boulder Justice Center<br>                      1777 6th Street<br>                      Boulder, Colorado 80302<br>Telephone: (303) 441-3750 | |
| Plaintiff: **LAURAL O'DOWD, for herself and all others similarly situated**<br>v<br>Defendants: **ANTHEM HEALTH PLANS, INC. d/b/a ANTHEM BLUE CROSS and BLUE SHIELD, ROCKY MOUNTAIN HOSPITAL AND MEDICAL SERVICE, INC. d/b/a ANTHEM BLUE CROSS and BLUE SHIELD, and WELLPOINT, INC.** | ▲ **COURT USE ONLY** ▲ |
| Attorneys for Plaintiff:<br><br>Gregory A. Gold<br>Sommer D. Luther<br>The Gold Law Firm, LLC<br>7375 East Orchard Road, Suite 300<br>Greenwood Village, Colorado 80111<br>Phone Number: (303) 694-4653<br>Fax Number:     (303) 694-2573<br>Atty. Reg. #: 26064<br>Atty. Reg. #: 35053 | Case Number:<br><br>Division:<br><br>Court Room: |

## CIVIL COMPLAINT AND JURY DEMAND

COMES NOW the Plaintiff, Laural O'Dowd, on behalf of herself and all others similarly situated, by and through her attorneys, THE GOLD LAW FIRM, LLC, and for her Civil Complaint and Jury Demand against Defendants Anthem Health Plans, Inc. d/b/a Anthem Blue Cross and Blue Shield of Colorado, Rocky Mountain Hospital and Medical Service, Inc. d/b/a Anthem Blue Cross and Blue Shield, and Wellpoint, Inc., states and alleges as follows:

### JURISDICTION AND VENUE

1.      Plaintiff, Laural O'Dowd is a natural person who resides in the City and County of Boulder, State of Colorado, and during relevant times was insured by Defendant Anthem Health Plans, Inc. d/b/a Anthem Blue Cross and Blue Shield.

2.      At all times relevant to this action, Defendant Anthem Health Plans, Inc. d/b/a Anthem Blue Cross (hereinafter "Anthem") was and is a Connecticut Corporation, licensed to do business in the State of Colorado, with its principal place of business at 108 Legius Road, Wallingford, Connecticut. Anthem operates in Colorado as Anthem Blue Cross and Blue Shield of Colorado and offers and sells several health plans in Colorado. This Complaint applies to all Anthem plans that were sold to individuals and to employers to cover employees in the State of Colorado and who employ less than fifty (50) employees. Anthem is a subsidiary of Defendant Wellpoint, Inc.

3.      At all times relevant to this action, Defendant Rocky Mountain Hospital and Medical Service, Inc. d/b/a Anthem Blue Cross and Blue Shield was and is a Colorado Corporation, licensed to do business in the State of Colorado, with its principal place of business at 700 Broadway, Denver, Colorado 80203. Rocky Mountain Hospital and Medical Service, Inc. operates in Colorado as Anthem Blue Cross and Blue Shield. This Complaint applies to all Anthem plans that were sold to individuals and to employers to cover employees in the State of Colorado and who employ less than fifty (50) employees.

4.      At all times relevant to this action, Defendant Wellpoint, Inc. was and is an Indiana Corporation, licensed to do business in the State of Colorado with its principal place of business at 120 Monument Circle, Indianapolis, Indiana. Upon information and belief, Defendant Wellpoint, Inc. is a holding company that directly or indirectly owns 100% of the stock Anthem and other insurance subsidiaries.

5.      Venue is proper in Boulder County, Colorado pursuant to C.R.C.P. 98(b).

## GENERAL ALLEGATIONS

6.      Plaintiff incorporates by reference the allegations set forth with specificity in Paragraphs 1 through 4 of this Complaint, as if set forth *verbatim*.

7.      Defendant Anthem is a health insurance company that writes and sells health insurance policies. Defendant Anthem is an insurance company regulated by Colorado's insurance laws.

### Colorado Legislature Wants Colorado Citizens To Have Adequate Access to Mental Health Treatment and For Physicians Who Provide Substantially Identical Services to Be Paid On the Same Fee Schedule

8.      Colorado Revised Statute, C.R.S. § 10-16-704 requires that a health insurance carrier, "shall maintain a network that is sufficient in numbers and types of providers to assure that all covered benefits to covered persons will be accessible without unreasonable delay."

9.      In or around 1992, the Colorado legislature enacted C.R.S. 10-16-104 (5.5)(a)(I), providing that, "[E]very group policy, plan certificate, and contract of a carrier subject to the provisions of part 2, 3, or 4 of this article, except those described in

2

section 10-16-102(21)(b), shall provide coverage for the treatment of biologically based mental illness that is no less extensive than the coverage provided for a physical illness."

10.     In or around 1992, the Colorado legislature enacted, C.R.S. § 10-16-104(7), prohibiting health insurance carriers, including Defendants, from setting different fee schedules in an insurance policy for health services that are substantially identical although performed by different professions.  Colorado Revised Statute § 10-16-104(7) provided that:

> **(7) Reimbursement of providers.  (a) Sickness and accident insurance.**     (I)(A)  Notwithstanding any provisions of any policy of sickness and accident insurance issued by an entity subject to the provisions of part 2 of this article or a prepaid dental care plan subject to the provisions of part 5 of this article, whenever any such policy or plan provides for reimbursement for a service that may be lawfully performed by a person licensed in this state for the practice of osteopathy, medicine, dentistry, dental hygiene, optometry, psychology, chiropractic, podiatry, or acupuncture, a carrier shall not deny reimbursement under the policy or plan when the service is rendered by a person so licensed.  Nothing in this part 1 or part 2 or 5 of this article precludes a carrier from setting different fee schedules in an insurance policy for different services performed by different professions, but **the carrier shall use the same fee schedule for those portions of health services that are substantially identical although performed by different professions**.

11.     Upon information and belief, on or about June 1, 2008, Plaintiff, Laural O'Dowd, purchased a Preferred Provider Organization (PPO) health insurance policy from Defendant Anthem.  Ms. O'Dowd's PPO Plan provided In-Network (participating) and Out-of-Network (non-participating) benefits.

12.     Ms. O'Dowd's insurance coverage with Anthem is fully-insured coverage.

13.     Plaintiff's health insurance policy provided coverage for Mental Health, Alcohol Dependency and Substance Dependency Services.

14.     Plaintiff, Laural O'Dowd, has been under the psychiatric care of a psychiatrist since January 2008.  Under the Anthem policy, Ms. O'Dowd's psychiatrist is an out-of-network provider for Anthem.

15.     Plaintiff's husband has also been under the care of psychiatrist who is an out-of-network provider for Anthem.

16.     Based on the terms of Ms. O'Dowd's health insurance policy with Anthem, Anthem has imposed an Out-of-Network Maximum Allowable Amount for Ms. O'Dowd's psychiatrist.  Based on the terms of the contract, Ms. O'Dowd is financially responsible to pay the difference between the psychiatrist charges and the Maximum Allowable Amount paid by Anthem.

17.     Ms. O'Dowd's medical treatment by her psychiatrist was billed and presented to Anthem through Current Procedural Terminology ("CPT") codes.

18.     On or about July 25, 2012, Plaintiff Laural O'Dowd was provided with the Disclosure of Estimated Allowable Reimbursement (DEAR) outlining the estimated allowable charges for services, categorized by CPT codes, provided by Leland Johnston, M.D.   Plaintiff received psychiatric treatment from Dr. Johnston.

19.     On or about July 26, 2012, Plaintiff Laural O'Dowd was provided with the Disclosure of Estimated Allowable Reimbursement (DEAR) outlining the estimated allowable charge for services, categorized by CPT codes, provided by James Marquardt, M.D.   Plaintiff's husband received psychiatric care from Dr. Marquardt.

20.     The Disclosure of Estimated Allowable Reimbursement (DEAR) provided by Anthem for Drs. Johnston and Marquardt demonstrated that Anthem was employing different Out-of-Network Maximum Allowable Amounts for Dr. Johnston and Dr. Marquardt for exactly the same psychiatric CPT Codes.   As an example, the documentation provided by Anthem demonstrated that while Dr. Johnston was reimbursed $115.00 as the Maximum Allowable Amount for treatment under CPT Code 90809 – Dr. Marquardt was reimbursed $171.13 as the Maximum Allowable Amount for treatment under the same CPT Code, 90809 as illustrated below.



I Paid Anthem for Health Insurance Benefits

(Laural O'Dowd)

Plaintiff's Psychiatrist                    Plaintiff's Husband Psychiatrist[1]

<u>Both Providing Psychiatric Services Under Same Billing Code</u>
<u>Both Providing "Substantially Identical" Treatment</u>

   

Reimbursed by Anthem - $115.00          Reimbursed by Anthem - $171.13

     21.    This entire scam was exposed when Plaintiff discovered Dr. Marquardt was wrongly classified as a primary care physician with the Defendants' database, and his services were charged as a primary care physician for substantially identical treatment by Defendants.

## <u>The Colorado Division of Insurance Does Not Like This</u>

     22.    Ms. O'Dowd brought a Complaint against Anthem with the Colorado Division of Insurance.

     23.    On or about September 17, 2012, at the direction of the Colorado Division of Insurance, Anthem addressed Ms. O'Dowd's concerns relating to Anthem's conduct and differing reimbursement rates.

     24.    On October 4, 2012, the Colorado Division of Insurance sent a letter to Anthem advising that they were continuing their review of Ms. O'Dowd's Complaint regarding Anthem's maximum allowable amounts being different for an out-of-network general practitioner than it was for an out-of-network psychiatrist when identical CPT codes are being used. Even though they were both psychiatrists, Defendants had them

---

[1] Defendants incorrectly thinks this psychiatrist is a general practice/primary care physician.

categorized differently – **Hence how this double dealing shell game was discovered.**

25. In the October 4, 2012 letter, the Colorado Division of Insurance directed Anthem to Colorado Revised Statute Section 10-16-104(7):

> Nothing in this part 1 or parts 2 of 5 of this article shall preclude an insurance company from setting different fee schedules in an insurance policy for different services performed by different professions, but the same fee schedule shall be used for those portions of health services that are substantially identical although performed by different professions.

26. In the October 4, 2012 letter, the Colorado Division of Insurance advised Anthem that, "[t]he services rendered by each provider are coded according to the Current Procedural Terminology (CPT) manual. Therefore, unless the medical records are being requested each and every time two different providers are using the same CPT code, it would appear that health services are "substantially identical" are being performed by each provider."   The Colorado Division of Insurance also requested that Anthem provide, "the actual data utilized by Anthem BCBS to set the out-of-network reimbursement rates for CPT codes 90801, 90802, 90804, 90805, 90806, 90807, 90808, 90809, 90810, 90811, 90812, 90813, 90814, 90816, 90846, 90847, 90849, 90853, 90857 and 90862 for Dr. Johnston and Dr. Marquardt."

27. On October 18, 2012, Anthem responded to the Colorado Division of Insurance. The Colorado Division of Insurance's questions were not answered and the information requested was not provided.

28. On November 14, 2012, the Colorado Division of Insurance wrote to Anthem again requesting the information it had requested on October 4, 2012. The Colorado Division of Insurance reiterated its previous position that, "[a]gain, the services rendered by each provider are coded according to the Current Procedural Terminology (CPT) manual. When a provider utilizes a procedure code, unless it includes a modifier, health services being rendered should be in line with the procedure code's definition of each provider billing that code would be performing services that are "substantially identical" to the services being performed by other providers. Additionally, unless some type of modifier is used to signify that additional services are provided, there should be no reason for Anthem to request that a copy of medical records be submitted in order to determine the appropriate reimbursement."

### We Promise You Will Get Balance Billed By Out-Of-Network Providers But We Will Break Our Promise To Pay These Doctors Same Fee Schedule For Substantially Identical Service to You (Sorry About That)

29. Plaintiff's health insurance policy provided by Anthem, provided *inter alia* that:

**Non-Participating Providers (Out-of-Network)**
Providers who have not signed a PPO Provider contract with
Us are non-participating Providers who use this PPO plan.
Services provided by a non-participating Provider are
considered Out-of-Network.    When you see a non-
participating Provider you may have higher Out-of-Pocket
costs. Your Out-of-Network Cost Sharing responsibilities for
non-participating Providers may be found on the *Schedule of
Benefits* under the Out-of-Network heading.

We will not deny or restrict Covered Services just because
you get treatment from a non-participating Provider;
however, you may have to pay more. The Cost Sharing for
Covered Services from a non-participating Provider may be
larger. Also, non-parting Providers do not have to accept our
Maximum Allowed Amount as full payment.    They can
charge or "balance bill" you for any amount of their bill
which We do not pay. This "balance billing" cost is on top of,
and does not count toward, you Cost Sharing obligation.

We pay the benefits of this Booklet directly to non-
participating Providers, if you have authorized an
assignment of benefits. An assignment of benefits means
you want Us to pay the Provider instead of you. We may
require a copy of the assignment of benefits for Our records.
These payments fulfill our obligation to you for those
services.

30.    Upon information and belief, Defendants improperly reimbursed
physicians in different medical specialties at different rates under the same CPT codes.

31.    Upon further information and belief, Defendants failed to provide an
adequate network for the treatment of mental health conditions, including but not
limited to, biologically based mental illness and mental disorders.

## CLASS ALLEGATIONS

32.    Plaintiff incorporates herein by this reference the allegations set forth in
Paragraphs 1 through 31 of this Complaint, as if set forth *verbatim.*

33.    Plaintiff brings this action pursuant to C.R.C.P. 23(a) and (b)(3) on behalf
of a class of similarly situated Colorado residents.  The class consists of:

All patients insured by Defendants who's bills were paid at
the wrong amount for CPT treatment codes 90801, 90802,
90804, 90805, 90806, 90807, 90808, 90809, 90810, 90811,
90812, 90813, 90814, 90816, 90846, 90847, 90849, 90853,
90857 and 90862 for treatment expenses where Defendants
choose to reimburse different fees schedules for substantially
identical services.

34.    The members of the class are so numerous and geographically dispersed
that their individual joinder is impracticable.   The precise number of class members
may be determined with specificity from records maintained by Defendants.

35.    Common questions of law and fact that exist as to all members of the class
include, but are not limited to, the following:

36.    Plaintiff's claim is typical of the claims of the members of the class because
Plaintiff purchased and utilized a health insurance policy issued by Anthem.

37.    Plaintiff is an adequate representative of the class because she will
vigorously pursue this action on behalf of the entire class, her interests do not conflict
with the interests of other class members, and she has retained counsel competent.
Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the
class.

38.    The common questions of law and fact set forth above predominate over
any questions affecting only individual members of the class.  In addition, a class action
in this matter is superior to other available methods for the fair and efficient
adjudication of the controversy. The class is readily definable, and prosecution of this
case as a class action will eliminate the possibility of repetitious litigation and will
provide redress for claims that may otherwise be too small to support the expense of
individual prosecution. A class action presents far fewer management difficulties and
provides the benefits of a single adjudication, economics of scale, and comprehensive
supervision by a single court of what would otherwise amount to tens of thousands of
separate claims.

39.    In the alternative, the class may be certified under the provisions of
C.R.C.P. 23(b)(1) and/or 23(b)(2) because, in addition, to the fact that the class is so
numerous that joinder of all members is impracticable, there are questions of law or fact
common to the class, Plaintiff's claims are typical of those of the class, and Plaintiff and
her counsel will fairly and adequately represent the class:

(a)    The prosecution of separate actions by individual
members of the class would create a risk of inconsistent or
varying adjudication with respect to individual class
members which would establish incompatible standards of
conduct for Defendants; or;

8

(b)     The prosecution of separate actions by individual class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c)     Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final and injunctive relief with respect to the members of the class as a whole.

40.     For all the reasons set forth, certification of a class of persons who were insured by Defendants who received treatment under codes 90801, 90802, 90804, 90805, 90806, 90807, 90808, 90809, 90810, 90811, 90812, 90813, 90814, 90816, 90846, 90847, 90849, 90853, 90857 and 90862 where Defendants reimbursed psychiatrists at lower rates than general practitioners for substantially identical treatment is appropriate.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment that Defendants Violated C.R.S. § 10-17-704 and C.R.S. 10-16-104, *et seq.*)

41.     Plaintiff incorporates herein by this reference the allegations set forth in Paragraphs 1 through 40 of this Complaint, as if set forth *verbatim*.

42.     The Defendants reimbursement of psychiatrists at lower rates than general practitioners for substantially identical treatment and failure to have an adequate network is in violation of Colorado law.

43.     The Defendants actions and practices in failing to provide an adequate network to its insureds is in violation of Colorado law.

44.     There is no clinically recognized standard that would allow this disparity in treatment between mental health and non-mental health benefits and/or available networks.

45.     WHEREFORE, Plaintiff seeks a declaration from this Court that the Defendants' conduct was illegal and invalid under Colorado law, including, but not limited to, C.R.S. § 10-17-704 and C.R.S. § 10-16-104, *et seq.*

## SECOND CLAIM FOR RELIEF
### (Claims for Relief Under ERISA)

46.     Plaintiff incorporates herein by this reference the allegations set forth in Paragraphs 1 through 45 of this Complaint, as if set forth *verbatim*.

47.     Under the Employee Retirement Income Security Act of 1974 ("ERISA"), Defendants must comply with the terms and conditions of its health care plans in making benefit determinations and processing claims on behalf of its insureds.

48.     ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) provides a plan participant such as Plaintiff and all others similarly situated with a right to bring a civil action to recover benefits due under the terms of the plan, to enforce her rights under the terms of the plan and/or to clarify rights to future benefits under the terms of the plan.

49.     Under the terms of the plan issued to the Plaintiff and similar plans issued by the Defendants, Plaintiff and all others similarly situated are entitled to obtain out-of-network mental health services without being subject to unfair or discriminatory reimbursement practices by Defendants.

50.     In administering its ERISA plans, Defendants acts as a fiduciary and must comply with its fiduciary obligations toward the participants and beneficiaries of the ERISA plan.

51.     Defendants have violated the terms and conditions of its ERISA plans, and, hence has violated ERISA by reimbursing mental health services below the levels authorized by the by the plans and required by law.

52.     Defendants have violated the terms and conditions of its health plans, and violated ERISA, by applying processes, strategies, evidentiary standards and other factors to deny or reduce benefits for mental health services that are inconsistent with or in conflict with the law.

53.     Defendants actions were not substantially justified, and, were arbitrary and capricious, were without substantial evidence, and, constitute abuse of any discretion allowed and were wrongful under the circumstances.

54.     The Plaintiff and all others similarly situated have been harmed by Defendants' violations of ERISA. Plaintiff, on her own behalf, and on behalf of all other similarly situated seek to enjoin Defendants' policies and practices that violate ERISA, requests that Defendants reimburse the benefits denied or reduced as result of such policies; requests that Defendants pay appropriate interest back to the date such claims were originally submitted; and seek appropriate equitable relief arising from Defendants' misconduct, including an award of a surcharge to compensate her and other members of the class for Defendants' violations.

55.     Pursuant to 29 U.S.C. § 1132(g), Plaintiff and all others similarly situated are entitled to an award of their reasonable attorneys' fees and costs incurred in bringing this action.

## THIRD CLAIM FOR RELIEF
### (Breach of Contract)

56.     Plaintiff incorporates herein by this reference the allegations set forth in Paragraphs 1 through 55 of this Complaint, as if set forth *verbatim.*

57.     Plaintiff and all others similarly situated entered into and purchased a contract of health insurance from Defendants.

58.     Defendants promised to provide benefits pursuant to the terms of the health insurance contract.

59.     Defendants breached their promises to provide benefits pursuant to the terms of the health insurance contract.

60.     As a result of the Defendants' breach of their promises to provide benefits pursuant to the terms of the contract, the Plaintiff and all others similarly situated were damaged.

WHEREFORE, Plaintiff and the class members respectfully request that this Court:

A.     Find in favor of Plaintiff and the class members and against Defendants on each of the claims for relief set forth herein;

B.     Award Plaintiff and the class member's compensatory damages, punitive damages, and attorney fees, interest, and costs as permitted by law;

C.     Enter a declaratory judgment that, Defendants' conduct of reimbursing psychiatrists at lower rates than other medical providers for substantially identical health services was illegal and invalid under Colorado law;

D.     Enter a declaratory judgment that Defendants' conduct of failing to provide an adequate network to Plaintiff and all others similarly situated was illegal and invalid under Colorado law;

E.     Enter an injunction enjoining Defendants from reimbursing psychiatrists at lower rates than other medical providers for substantially identical health services; and,

F.     Award Plaintiff and all others similarly situated reasonable attorneys' fees and costs incurred in bringing this action;

G.     Grant all equitable relief permitted under the law; and

H.     Take any other action the Court deems to be just and proper.

11

## JURY DEMAND

PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Dated this 18th day of July, 2014.

THE GOLD LAW FIRM, LLC
*A duly signed original is on file*
*at The Gold Law Firm, LLC*

By:      */s/ Gregory A. Gold*
Gregory A. Gold, #26064
Sommer D. Luther, #35053
*Attorney for Plaintiff*
The Gold Law Firm
7375 E. Orchard Road, Suite 300
Greenwood Village, CO 80111
(303) 694-4653

Plaintiff's Address:
2360 Hillsdale Way
Boulder, Colorado 80305