IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-CV-02787-KLM

LAURAL O'DOWD, for herself and all others similarly situated,

Plaintiff,

v.

ANTHEM HEALTH PLANS, INC., d/b/a ANTHEM BLUE CROSS and BLUE SHIELD;
ROCKY MOUNTAIN HOSPITAL AND MEDICAL SERVICE, INC., d/b/a ANTHEM
BLUE CROSS and BLUE SHIELD; and WELLPOINT, INC.

Defendants.

## AMENDED COMPLAINT

COMES NOW the Plaintiff, Laural O'Dowd, on behalf of herself and all others similarly situated, by and through her attorneys, THE GOLD LAW FIRM, LLC, and for her Civil Complaint against Defendants Anthem Health Plans, Inc. d/b/a Anthem Blue Cross and Blue Shield of Colorado, Rocky Mountain Hospital and Medical Service, Inc. d/b/a Anthem Blue Cross and Blue Shield, and Wellpoint, Inc., states and alleges as follows:

## JURISDICTION AND VENUE

1. Plaintiff, Laural O'Dowd is a natural person who resides in the City and County of Boulder, State of Colorado, and during relevant times was insured by Defendant Anthem Health Plans, Inc. d/b/a Anthem Blue Cross and Blue Shield.

2. At all times relevant to this action, Defendant Anthem Health Plans, Inc. d/b/a Anthem Blue Cross (hereinafter "Anthem") was and is a Connecticut Corporation,

licensed to do business in the State of Colorado, with its principal place of business at 108 Legius Road, Wallingford, Connecticut.  Anthem operates in Colorado as Anthem Blue Cross and Blue Shield of Colorado and offers and sells several health plans in Colorado.   Anthem is a subsidiary of Defendant Wellpoint, Inc.

3.      At all times relevant to this action, Defendant Rocky Mountain Hospital and Medical Service, Inc. d/b/a Anthem Blue Cross and Blue Shield ("Rocky Mountain") was and is a Colorado Corporation, licensed to do business in the State of Colorado, with its principal place of business at 700 Broadway, Denver, Colorado 80203.  Rocky Mountain operates in Colorado under the trade name Anthem Blue Cross and Blue Shield and offers managed health care plans to employers.

4.      At all times relevant to this action, Defendant Wellpoint, Inc. was and is an Indiana Corporation, licensed to do business in the State of Colorado with its principal place of business at 120 Monument Circle, Indianapolis, Indiana.  Upon information and belief, Defendant Wellpoint, Inc. is a holding company that directly or indirectly owns 100% of the stock Anthem and other insurance subsidiaries.  Wellpoint provides health and life insurance, managed health care programs, administration of government health programs and pharmacy benefit management services through its wholly owned subsidiaries and affiliates.

5.      This Complaint applies to all Anthem plans that were sold to individuals and to employers to cover employees in the State of Colorado.

6.      Jurisdiction and venue are proper pursuant to Fed. R. Civ. Proc. 1391(b)(2), 1390(c), and 1441(a).

**<u>GENERAL ALLEGATIONS</u>**

7.	Plaintiff incorporates by reference the allegations set forth with specificity in Paragraphs 1 through 6 of this Complaint, as if set forth *verbatim.*

8.	Defendant Anthem is a health insurance company that writes and sells health insurance policies.  Defendant Anthem is an insurance company regulated by Colorado's insurance laws.

## The Colorado Legislature Has Declared That Colorado Citizens Are To Have Access to Mental Health Treatment On the Same Terms As Other Forms Of Medical Treatment

9.	In or around 1992, the Colorado legislature enacted C.R.S. 10-16-104 (5.5)(a)(I), providing that, "[E]very group policy, plan certificate, and contract of a carrier subject to the provisions of part 2, 3, or 4 of this article, except those described in section 10-16-102(21)(b), shall provide coverage for the treatment of biologically based mental illness that is no less extensive than the coverage provided for a physical illness."

10.	In or around 1992, the Colorado legislature enacted, C.R.S. § 10-16-104(7), prohibiting health insurance carriers, including Defendants, from setting different fee schedules in an insurance policy for health services that are substantially identical although performed by different professions.  Colorado Revised Statute § 10-16-104(7) provided that:

> **(7) Reimbursement of providers.  (a) Sickness and accident insurance**.  (I)(A) Notwithstanding any provisions of any policy of sickness and accident insurance issued by an entity subject to the provisions of part 2 of this article or a prepaid dental care plan subject to the provisions of part 5 of this article, whenever any such policy or plan provides for reimbursement for a service that may be lawfully performed by a person licensed in this state for the practice of osteopathy, medicine, dentistry, dental hygiene,

3

optometry, psychology, chiropractic, podiatry, or acupuncture, a carrier shall not deny reimbursement under the policy or plan when the service is rendered by a person so licensed. Nothing in this part 1 or part 2 or 5 of this article precludes a carrier from setting different fee schedules in an insurance policy for different services performed by different professions, but **the carrier shall use the same fee schedule for those portions of health services that are substantially identical although performed by different professions**.

11. Upon information and belief, on or about June 1, 2008, Plaintiff, Laural O'Dowd, purchased a Preferred Provider Organization ("PPO") health insurance policy from Defendant Anthem. Ms. O'Dowd's PPO Plan provided In-Network (participating) and Out-of-Network (non-participating) benefits.

12. Ms. O'Dowd's insurance coverage with Anthem is fully-insured coverage.

13. Plaintiff's health insurance policy provided coverage for Mental Health, Alcohol Dependency and Substance Dependency Services.

14. Ms. O'Dowd, has been under the care of a psychiatrist since January 2008. Under the Anthem policy, Ms. O'Dowd's psychiatrist is an out-of-network provider for Anthem.

15. Plaintiff's husband has also been under the care of psychiatrist who is an out-of-network provider for Anthem.

16. Anthem has imposed an Out-of-Network Maximum Allowable Amount for Ms. O'Dowd's psychiatrist. Based on the terms of the contract, Ms. O'Dowd was

financially responsible, and did pay the difference between the psychiatrist charges and the Maximum Allowable Amount paid by Anthem.

17.    Ms. O'Dowd's medical treatment by her psychiatrist was billed and presented to Anthem through Current Procedural Terminology ("CPT") codes.

18.    On or about July 25, 2012, Plaintiff Laural O'Dowd was provided with the Disclosure of Estimated Allowable Reimbursement ("DEAR") outlining the estimated allowable charges for services, categorized by CPT codes, provided by Leland Johnston, M.D.  Plaintiff received psychiatric treatment from Dr. Johnston.

19.    On or about July 26, 2012, Plaintiff Laural O'Dowd was provided with the DEAR outlining the estimated allowable charge for services, categorized by CPT codes, provided by James Marquardt, M.D.  Plaintiff's husband received psychiatric care from Dr. Marquardt.

20.    The DEARs provided by Anthem for Drs. Johnston and Marquardt demonstrated that Anthem was employing different Out-of-Network Maximum Allowable Amounts for Dr. Johnston and Dr. Marquardt for exactly the same psychiatric CPT Codes.  As an example, the documentation provided by Anthem demonstrated that while Dr. Johnston was reimbursed $115.00 as the Maximum Allowable Amount for treatment under CPT Code 90809 – Dr. Marquardt was reimbursed $171.13 as the

Maximum Allowable Amount for treatment under the same CPT Code, 90809 as

illustrated below.    This varying reimbursement rate was not based on quality or

performance measures.



I Paid Anthem for Health Insurance Benefits

(Laural O'Dowd)

Plaintiff's Psychiatrist                    Plaintiff's Husband Psychiatrist[1]

<u>Both Providing Psychiatric Services Under Same Billing Code</u>

<u>Both Providing "Substantially Identical" Treatment</u>

 

Reimbursed by Anthem - $115.00                    Reimbursed by Anthem - $171.13

21.    Defendants' violation was exposed when Plaintiff discovered Dr. Marquardt was wrongly classified as a primary care physician in the Defendants' database, and his services were charged as a primary care physician for substantially identical treatment by Defendants.  Defendants' system of reimbursements results in different rates being applied to substantially identical services.  Further, Defendants' varying rates of reimbursement are not based on the providers' quality or performance measures.

**<u>The Colorado Division of Insurance Initiated A Review of Defendants and Expressed Concern Over Defendants' Practices</u>**

---

[1] Defendants incorrectly thinks this psychiatrist is a general practice/primary care physician.

22.    Ms. O'Dowd brought a Complaint against Anthem with the Colorado Division of Insurance (the "Division").  In response, the Division initiated a review of Defendants reimbursement rates.  The Division forwarded Ms. O'Dowd's complaint to Defendants and began its review on August 27, 2012.

23.    On or about September 17, 2012, at the direction of the Division, Anthem addressed Ms. O'Dowd's concerns relating to Anthem's conduct and differing reimbursement rates.

24.    On October 4, 2012, the Division sent a letter to Anthem advising that they were continuing their review of Ms. O'Dowd's Complaint regarding Anthem's maximum allowable amounts being different for an out-of-network general practitioner than it was for an out-of-network psychiatrist when identical CPT codes are being used.  Even though Drs. Johnston and Marquardt were both psychiatrists, Defendants had categorized them differently.

25.    In the October 4, 2012 letter, the Division directed Anthem to Colorado Revised Statute Section 10-16-104(7):

> Nothing in this part 1 or parts 2 of 5 of this article shall preclude an insurance company from setting different fee schedules in an insurance policy for different services performed by different professions, but the same fee schedule shall be used for those portions of health services that are substantially identical although performed by different professions.

26.    In the October 4, 2012 letter, the Division advised Anthem that, "[t]he services rendered by each provider are coded according to the Current Procedural

Terminology (CPT) manual.  Therefore, unless the medical records are being requested each and every time two different providers are using the same CPT code, it would appear that health services are "substantially identical" are being performed by each provider."   The Colorado Division of Insurance also requested that Anthem provide, "the actual data utilized by Anthem BCBS to set the out-of-network reimbursement rates for CPT codes 90801, 90802, 90804, 90805, 90806, 90807, 90808, 90809, 90810, 90811, 90812, 90813, 90814, 90816, 90846, 90847, 90849, 90853, 90857 and 90862 for Dr. Johnston and Dr. Marquardt."

27.   On October 18, 2012, Anthem responded to the Division.  Defendants provided general responses to the Division.  However, Defendants did not provide details as to how they determined reimbursement rates, and failed to provide any actual data that Defendants used to set any out-of- network reimbursement rates, claiming that such data was proprietary.

28.   On November 14, 2012, the Division wrote to Anthem again requesting the information it had requested on October 4, 2012.  The Division reiterated its previous position that, "[a]gain, the services rendered by each provider are coded according to the Current Procedural Terminology (CPT) manual.  When a provider utilizes a procedure code, unless it includes a modifier, health services being rendered should be in line with the procedure code's definition of each provider billing that code would be performing services that are 'substantially identical' to the services being performed by other providers.  Additionally, unless some type of modifier is used to signify that additional services are provided, there should be no reason for Anthem to request that a copy of medical records be submitted in order to determine the appropriate

9

reimbursement."    Thus, Anthem, at relevant times, was offering different reimbursement rates for "substantially identical" health services.

29.    During various communications from Defendants in 2012, it became apparent that Defendants would not agree with Plaintiff's position and that Defendants would not provide the relief she was requesting.  Thus, it was clear beyond a reasonable doubt that further requests for review would be futile.

## Defendants Wrongfully Deny Out-Of-Network The Proper Level of Reimbursement, and As A Result Providers Balance Bill the Class

30.    Plaintiff's health insurance policy provided by Anthem, provided *inter alia* that:

> **Non-Participating Providers (Out-of-Network)**
> Providers who have not signed a PPO Provider contract with Us are non-participating Providers who use this PPO plan. Services provided by a non-participating Provider are considered Out-of-Network.    When you see a non-participating Provider you may have higher Out-of-Pocket costs.  Your Out-of-Network Cost Sharing responsibilities for non-participating Providers may be found on the *Schedule of Benefits* under the Out-of-Network heading.
>
> We will not deny or restrict Covered Services just because you get treatment from a non-participating Provider; however, you may have to pay more.  The Cost Sharing for Covered Services from a non-participating Provider may be larger.  Also, non-parting Providers do not have to accept our Maximum Allowed Amount as full payment.    They can charge or "balance bill" you for any amount of their bill which We do not pay.  This "balance billing" cost is on top of, and does not count toward, your Cost Sharing obligation.
>
> We pay the benefits of this Booklet directly to non-participating Providers, if you have authorized an assignment of benefits.  An assignment of benefits means you want Us to pay the Provider instead of you. We may require a copy of the assignment of benefits for Our records. These payments fulfill our obligation to you for those

10

services.

31.     Upon information and belief, Defendants improperly reimbursed physicians in different medical specialties at different rates under the same CPT codes. The varying reimbursement rates were not based on quality or performance measures. For example, CPT Code 90809 pertains to medical treatment for mental illness, but Defendants reimburse mental health professionals at a lower rate than other medical health professionals who perform substantially identical services and bill under the same CPT code.  Thus, licensed mental health professionals are reimbursed at lower rates than professionals who are licensed to treat physical illness, even though the latter are providing the same services (i.e. treating mental health).  These mental health professionals then balance bill their patients to make up for the lower reimbursement rate.

## CLASS ALLEGATIONS

32.     Plaintiff incorporates herein by this reference the allegations set forth in Paragraphs 1 through 31 of this Complaint, as if set forth *verbatim*.

33.     Plaintiff brings this action pursuant to Fed. R. Civ. Proc. 23(a) and (b)(3), individually and on behalf of a class of similarly situated individuals (the "Class").  The relevant time period for the purposes of this action is the period beginning three years before this action was filed and until entry of judgment (the "Class Period").  The Class consists of:

> All Colorado residents who, during the Class Period, received treatment for mental illness while they were participants in one of Defendants'   plans under which their mental health professionals were reimbursed at rates below those of other medical professionals providing the same services and billing under the same CPT treatment codes, and who were either

11

"deficiently reimbursed" or "balance billed" by their mental health professionals, including, but not limited to CPT Code 90809.

34. The members of the class are so numerous and geographically dispersed that their individual joinder is impracticable. The precise number of class members may be determined with specificity from records maintained by Defendants.

35. Common questions of law and fact exist as to all members of the Class, include, but are not limited to, the following:

a. Whether Defendants' practices result in different rates of reimbursement for substantially identical medical services.

b. Whether Defendants' practices discriminate against licensed medical professionals in a manner that is unrelated to quality or performance measures.

c. Whether Defendants' reimbursement practices are prohibited by Colorado law.

d. Whether Defendants' reimbursement practices deny Plaintiff and other members of the Class benefits to which they are entitled under the Defendants' Plans.

e. Whether Defendants owe a fiduciary duty to Plaintiff and other members of the Class.

f. Whether Defendants' reimbursement practices constitute a breach of fiduciary duties owed to Plaintiff and the Class.

g. Whether Plaintiff and other members of the Class have been injured by Defendants' reimbursement practices.

36.     Plaintiff's claim is typical of the claims of the members of the class because Plaintiff purchased and utilized a health insurance policy issued by Anthem.

37.     Plaintiff is an adequate representative of the class because she will vigorously pursue this action on behalf of the entire class, her interests do not conflict with the interests of other class members, and she has retained competent counsel. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the class.

38.     The common questions of law and fact set forth above predominate over any questions affecting only individual members of the class.  In addition, a class action in this matter is superior to other available methods for the fair and efficient adjudication of the controversy.  The class is readily definable, and prosecution of this case as a class action will eliminate the possibility of repetitious litigation and will provide redress for claims that may otherwise be too small to support the expense of individual prosecution.  A class action presents far fewer management difficulties and provides the benefits of a single adjudication, economics of scale, and comprehensive supervision by a single court of what would otherwise amount to tens of thousands of separate claims.

39.     In the alternative, the class may be certified under the provisions of Fed. R. Civ. Proc. 23(b)(1) and/or 23(b)(2) because, in addition, to the fact that the class is so numerous that joinder of all members is impracticable, there are questions of law or fact common to the class, Plaintiff's claims are typical of those of the class, and Plaintiff and her counsel will fairly and adequately represent the class:

13

(a)     The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudication with respect to individual class members which would establish incompatible standards of conduct for Defendants; or;

(b)     The prosecution of separate actions by individual class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c)     Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final and injunctive relief with respect to the members of the class as a whole.

40.     For all the reasons set forth, certification of a class of persons who were insured by Defendants who received treatment under codes, including, but not limited to CPT Code 90809 where Defendants reimbursed psychiatrists at lower rates than general practitioners for substantially identical treatment is appropriate.

**FIRST CLAIM FOR RELIEF**

**(Declaratory Judgment that Defendants Violated C.R.S. § 10-16-704 and**

**C.R.S. 10-16-104, *et seq.*; C.R.S. 10-16-107.7)**

41.     Plaintiff incorporates herein by this reference the allegations set forth in Paragraphs 1 through 40 of this Complaint, as if set forth *verbatim.*

42.     The Defendants' reimbursement practices violate Colorado law.  For example, Defendants reimburse psychiatrists at lower rates than general practitioners

14

for substantially identical treatment.

43.     There is no sound basis for applying different reimbursement rates for substantially identical health services, which services are represented by the CPT Codes alleged herein.  Further, Defendants' practice of varying reimbursement rates is not based on quality or performance measures.

44.     WHEREFORE, Plaintiff seeks a declaration from this Court that the Defendants' conduct was illegal and invalid under Colorado law, including, but not limited to, C.R.S. § 10-16-704 and C.R.S. § 10-16-104, *et seq.*; and C.R.S. § 10-16-107.7.

## SECOND CLAIM FOR RELIEF

## (Injunctive Relief Under ERISA)

45.     Plaintiff incorporates herein by this reference the allegations set forth in Paragraphs 1 through 44 of this Complaint, as if set forth verbatim.

46.     ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3) provides a plan participant such as Plaintiff and all others similarly situated with a right to bring a civil action to enjoin acts or practices that violate ERISA or the terms of the plan, to enforce provisions of ERISA or the plan, or to obtain other appropriate equitable relief.

47.     As alleged above, Defendants' unfair and discriminatory reimbursement practices deprive Plaintiff and members of the Class of plan benefits, to their detriment. Plaintiff and all others similarly situated are entitled to obtain out-of-network mental health services without being subject to Defendants' unfair or discriminatory reimbursement practices, which violate the plan and ERISA.

48.      Plaintiff requests an order enjoining Defendants from violating the terms and conditions of their ERISA plans and committing violations of ERISA by engaging in their practice of reimbursing mental health services below the levels authorized by the by the plans and required by law, as alleged above.

49.      As alleged above, Defendants have breached their fiduciary duties owed to Plaintiff and the Class.  Plaintiff and the Class have suffered actual harm as a result of Defendants' unlawful practices, set forth above.  Plaintiff therefore seeks the equitable relief of a surcharge to compensate her and other members of the class for Defendants' violations.

50.      Pursuant to 29 U.S.C. § 1132(g), Plaintiff and all others similarly situated are entitled to an award of their reasonable attorneys' fees and costs incurred in bringing this action.

## THIRD CLAIM FOR RELIEF

### (Claim for Benefits Under ERISA)

51.      Plaintiff incorporates herein by this reference the allegations set forth in Paragraphs 1 through 50 of this Complaint, as if set forth *verbatim*.

52.      Under the Employee Retirement Income Security Act of 1974 ("ERISA"), Defendants must comply with the terms and conditions of its health care plans in making benefit determinations and processing claims on behalf of its insureds.

53.      ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) provides a plan participant such as Plaintiff and all others similarly situated with a right to bring a civil action to recover benefits due under the terms of the plan, to enforce her rights under

the terms of the plan and/or to clarify rights to future benefits under the terms of the plan.

54.    Under the terms of the plan issued to the Plaintiff and similar plans issued by the Defendants, Plaintiff and all others similarly situated are entitled to obtain out-of-network mental health services without being subject to unfair or discriminatory reimbursement practices by Defendants.

55.    In administering their ERISA plans, Defendants acts as fiduciaries and must comply with their fiduciary obligations toward the participants and beneficiaries of the ERISA plan.

56.    Defendants have violated the terms and conditions of their ERISA plans, and, hence have violated ERISA by reimbursing mental health services below the levels authorized by the plans and required by law.

57.    Defendants have violated the terms and conditions of their health plans, and violated ERISA by applying processes, strategies, evidentiary standards and other factors to deny or reduce benefits for mental health services that are inconsistent with or in conflict with the law.

58.    Defendants actions were not substantially justified, were arbitrary and capricious, were without substantial evidence, and constitute abuse of any discretion allowed and were wrongful under the circumstances.

59.    The Plaintiff and all others similarly situated have been harmed by Defendants' violations of ERISA as alleged above.  Plaintiff, on her own behalf, and on behalf of all other similarly situated, requests that Defendants reimburse the benefits denied or reduced as result of such policies, and that Defendants pay appropriate

interest back to the date such claims were originally submitted.

60.     Pursuant to 29 U.S.C. § 1132(g), Plaintiff and all others similarly situated are entitled to an award of their reasonable attorneys' fees and costs incurred in bringing this action.

## FOURTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duty Under ERISA)

61.     Plaintiff incorporates herein by this reference the allegations set forth in Paragraphs 1 through 60 of this Complaint, as if set forth *verbatim*.

62.     At all relevant times, Defendants possessed and exercised discretionary authority or control with respect to management of their Plans.  Therefore, Defendants were fiduciaries under ERISA, 29 U.S. C. § 1002.

63.     Under the terms of the plan issued to the Plaintiff and similar plans issued by the Defendants, Plaintiff and all others similarly situated are entitled to obtain out-of-network mental health services without being subject to unfair or discriminatory reimbursement practices by Defendants.

64.     In administering their ERISA plans, Defendants act as fiduciaries and must comply with their fiduciary obligations toward the participants and beneficiaries of their Plans, as set forth in section 404 of ERISA, 29 U.S.C. § 1104.  In committing the acts described above, Defendants have failed to discharge their duties in the interest of the participants and beneficiaries.

65.     Defendants have also violated the terms and conditions of their health plans, and violated ERISA by applying processes, strategies, evidentiary standards and other factors to deny or reduce benefits for mental health services that are inconsistent

18

with or in conflict with the Plans and applicable law.

66.     Defendants' actions were not substantially justified, were arbitrary and capricious, were without substantial evidence, and constitute abuse of any discretion allowed and were wrongful under the circumstances.

67.     The Plaintiff and all others similarly situated have been harmed by Defendants' violations of ERISA as alleged above.  Plaintiff, on her own behalf, and on behalf of all other similarly situated seek an order requiring Defendants to restore losses to the Plan and participants resulting from their breaches of fiduciary duty as alleged above; and seek appropriate equitable relief arising from Defendants' misconduct.

68.     Pursuant to 29 U.S.C. § 1109, Plaintiff and all others similarly situated are entitled to an award of their reasonable attorneys' fees and costs incurred in bringing this action.

WHEREFORE, Plaintiff and the class members respectfully request that this Court:

A.     Find in favor of Plaintiff and the class members and against Defendants on each of the claims for relief set forth herein;

B.     Award Plaintiff and the class member's compensatory damages, attorney fees, interest, and costs as permitted by law;

C.     Enter a declaratory judgment that, Defendants' conduct of reimbursing psychiatrists at lower rates than other medical providers for substantially identical health services was illegal and invalid under Colorado law;

D.     Enter an injunction enjoining Defendants from reimbursing psychiatrists at lower rates than other medical providers for substantially identical health services;

19

and,

  E.  Award Plaintiff and all others similarly situated reasonable attorneys' fees

and costs incurred in bringing this action;

  F.  Grant all equitable relief permitted under the law; and

  G.  Take any other action the Court deems to be just and proper.


  Dated: January 21, 2015.


        THE GOLD LAW FIRM, LLC
        ***A duly signed original is on file***
        ***at The Gold Law Firm, LLC***

    By:  */s/ Gregory A. Gold*
       Gregory A. Gold, #26064
       Sommer D. Luther, #35053
       *Attorney for Plaintiff*
       The Gold Law Firm
       7375 E. Orchard Road, Suite 300
       Greenwood Village, CO 80111
       (303) 694-4653

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 21, 2015, a true and correct copy of the

foregoing AMENDED COMPLAINT was served via ECF upon the following:


E. Desmond Hogan
Miranda L. Birge
Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone 202-637-5493
Fax 202-637-5910
desmond.hogan@hoganlovells.com

David A. DeMarco
1200 17th Street, Suite 1500
Denver, Co 80202
Telephone 303-454-2409
Fax 303-899-7333
Attorneys for Defendant


<u>/s/ Dawn Rannells</u>
Dawn Rannells, Paralegal
