IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| LAURAL O'DOWD, for herself and all others similarly situated,<br><br>　　　　　　Plaintiff<br><br>　　　　　　v.<br><br>ANTHEM, INC. and ROCKY MOUNTAIN HOSPITAL AND MEDICAL SERVICE, INC., d/b/a ANTHEM BLUE CROSS and BLUE SHIELD.<br><br>　　　　　　Defendants. | Civil Action No. 14-CV-02787-KLM |

SECOND AMENDED COMPLAINT

Plaintiff Laural O'Dowd, on behalf of herself and all others similarly situated, sues Defendants Anthem, Inc. ("Anthem") and Rocky Mountain Hospital and Medical Service, Inc. ("Anthem Colorado"). Ms. O'Dowd states as follows:

The Parties

1.  Plaintiff Laural O'Dowd resides in the City and County of Boulder, Colorado. Ms. O'Dowd, her husband, and her four children are insured by Defendant Anthem Colorado.

2.  Anthem Colorado is a Colorado Corporation, licensed to do business in Colorado. It is an insurance carrier regulated by Colorado's insurance laws. Anthem Colorado maintains its principal place of business at 700 Broadway, Denver,

5110986.1

Colorado 80203. Anthem Colorado sells and administers health plans in Colorado. Upon information and belief, Anthem Colorado takes instruction for the operation of those plans from Anthem, including the amounts at which it sets reimbursement rates for services performed by medical providers and by mental health providers.

3.  Anthem is a large health-benefits company. It is a publicly-traded, for-profit corporation, organized under the laws of Indiana. Anthem maintains its principal place of business at 120 Monument Circle, Indianapolis, Indiana 48204. Anthem used to be known as "WellPoint, Inc."

4.  Anthem owns Anthem Colorado, either directly or indirectly. Anthem is an independent licensee of Blue Cross and Blue Shield Association. Through its many subsidiaries and affiliates (such as Anthem Colorado), it offers managed health care plans to employers. It also provides health and life insurance, managed health care programs, administration of government health programs, and pharmacy benefit management services. In this respect, Anthem functions as a large insurance company. Indeed, through its subsidiaries, it is licensed to conduct insurance operations in every State in the union.

5. Upon information and belief, Anthem sets policies across its subsidiaries, including coverage policies and national policies for the methods Anthem's subsidiaries use to set provider reimbursement rates and to apply medical necessity standards. Anthem employs Samuel R. Nussbaum, M.D., who serves as its

2

5110986.1

Executive Vice President of Clinical Health Policy and Chief Medical Officer. Upon information and belief, Dr. Nussbaum and his staff are in charge of developing these policies.

## Jurisdiction and Venue

6. This Complaint applies to all Anthem plans sold to individuals and to employers to cover employees in Colorado.

7. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1441 and 29 U.S.C. § 1132(e). The Court has supplemental jurisdiction over Plaintiff's State law claims under 28 U.S.C. § 1367.

8. Venue is proper in this District under 28 U.S.C. § 1391 and 29 U.S.C. § 1332(e)(2).

9. This Court may exercise personal jurisdiction over Defendants because Anthem Colorado resides in this District and Anthem's conduct has had a substantial impact in this District.

## Factual Allegations

### The Statutory Framework

10. In 1992, the Colorado legislature enacted a provider non-discrimination statute, C.R.S. § 10-16-104(7). This provision prohibited health insurance carriers, including Defendants, from discriminating against providers of different professions

5110986.1

by setting separate fee schedules for substantially identical services. The statute

stated as follows:

> **(7) Reimbursement of providers. (a) Sickness and accident insurance**.
> (I)(A) Notwithstanding any provisions of any policy of sickness and
> accident insurance issued by an entity subject to the provisions of part
> 2 of this article or a prepaid dental care plan subject to the provisions
> of part 5 of this article, whenever any such policy or plan provides for
> reimbursement for a service that may be lawfully performed by a
> person licensed in this state for the practice of osteopathy, medicine,
> dentistry, dental hygiene, optometry, psychology, chiropractic,
> podiatry, or acupuncture, a carrier shall not deny reimbursement
> under the policy or plan when the service is rendered by a person so
> licensed. Nothing in this part 1 or part 2 or 5 of this article precludes a
> carrier from setting different fee schedules in an insurance policy for
> different services performed by different professions, but **the carrier
> shall use the same fee schedule for those portions of health services
> that are substantially identical although performed by different
> professions**.

11. During its operation, the requirements of this provider non-discrimination

statute became ERISA plan terms.

12. In 1997, the Colorado legislature enacted a mental health parity statute. The

State Parity Act provides that health insurers "must provide coverage for the

treatment of biologically based mental illness and mental disorders that is no less

extensive than the coverage provided for a physical illness." Colo. Rev. Stat. § 10-16-

104(5.5)(a)(I).

13. Unlike the federal Mental Health Parity and Addiction Act of 2008, which

applies only to large employers, the State Parity Act applies both to "small"

4

employers and "large" employers. The requirements of this State insurance law are become ERISA plan terms.

14. In 2010, Congress enacted the Patient Protection and Affordable Care Act ("ACA"). The ACA included a provision, § 2706, that is similar to Colorado's provider non-discrimination statute.

15. Section 2706 of the ACA is codified at 42 U.S.C. § 300gg–5(a). It provides in relevant part that health insurers "shall not discriminate with respect to participation under the plan or coverage against any health care provider who is acting within the scope of that provider's license or certification under applicable State law [unless the] varying reimbursement rates [are] based on quality or performance measures."

16. The federal provider non-discrimination statute took effect as of January 1, 2014. The ACA itself does not provide for an independent private right of action to enforce its provisions. Instead, it is incorporated into ERISA through 29 U.S.C. § 1185d. It is therefore enforceable by ERISA plan participants through 29 U.S.C. § 1132(a), which authorizes litigation to address ERISA violations.

17. Congress made clear that the ACA provider non-discrimination statute was not meant to "supersede any provision of State law which establishes, implements, or continues in effect any standard or requirement solely relating to health

5

insurance issuers in connection with individual or group health insurance coverage. . . ." 42 U.S.C.A. § 300gg-23.

18. In response, Colorado chose to replace its own provider non-discrimination statute, C.R.S. § 10-16-104(7), and to bring it in line with the ACA provision. Like the ACA provision, Colorado's statute states that health insurers "shall not discriminate with respect to participation under the plan or coverage against any provider who is acting within the scope of his or her license or certification under applicable state law." Colo. Rev. Stat. § 10-16-107.7. Like the ACA provision, Colorado's statute does not prevent insurers from "varying reimbursement rates based on quality or performance measures."

***Plaintiff's Insurance Coverage***

19. On June 1, 2008, Plaintiff Laural O'Dowd purchased from Defendants a Preferred Provider Organization ("PPO") health insurance policy. Ms. O'Dowd's PPO Plan provided In-Network (participating) and Out-of-Network (non-participating) benefits.

20. Ms. O'Dowd's insurance coverage with Anthem is fully-insured coverage, which means that Anthem not only administers the plan but also pays the resulting benefits out of its own assets. She is a participant, and her husband and four children are beneficiaries.

5110986.1

21. Plaintiff's health insurance policy provides coverage for Mental Health, Alcohol Dependency and Substance Dependency Services.

22. Ms. O'Dowd has been under the care of a psychiatrist since January 2008. Ms. O'Dowd's psychiatrist is an Out-of-Network provider under the Anthem PPO plan, which means that the provider does not participate in Anthem's PPO network and has not agreed to accept Anthem's reimbursement as payment in full for services provided.

23. Anthem Colorado imposed an Out-of-Network Maximum Allowable Amount for Ms. O'Dowd's psychiatrist. Based on the terms of the contract, Ms. O'Dowd was financially responsible for the difference between her psychiatrist's charges and the Maximum Allowable Amount paid by Anthem. Ms. O'Dowd paid these charges.

24. Plaintiff's husband also has been under the care of an out-of-network psychiatrist.

25. As is customary, when Ms. O'Dowd's psychiatrist invoiced charges to Ms. O'Dowd using Current Procedural Terminology ("CPT") codes, which were then submitted to Anthem Colorado for processing and payment under the terms of the insurance plan. CPT codes are unique five-digit numbers for each separate healthcare procedure, which are developed and promulgated by the American Medical Association, for use by providers in billing for services.

7

5110986.1

26. Medicare, a government-sponsored insurance plan for the elderly and disabled, provides a payment schedule using CPT codes to set reimbursement rates. A review board has assigned a "relative value unit" or "RVU" to each CPT Code. For instance, CPT Code 99213 (representing a 15-minute evaluation and management ("E/M") examination for an established—as opposed to a new—patient) has been assigned 2.04 RVUs. RVUs are designed to reflect the amount of time and effort (and hence value) a healthcare service represents. RVUs do not fluctuate based on quality or performance measures. Thus, in the absence of an agreement by the provider to accept a discounted rate, the reimbursement rate for every procedure with a 2.04 RVU should be the same. That is because Medicare has determined that the same time and effort goes in to that procedure. To the extent one procedure is more difficult or complicated than another, or otherwise warrants higher reimbursement, it should be assigned more RVUs.

27. Anthem uses RVUs to determine reimbursement rates for medical care providers. It does not, however, use RVUs to determine reimbursement rates for mental healthcare providers. Instead, Anthem purposefully uses an alternative system that leads to lower reimbursement rates for the same services. Anthem's decision to use separate methods is not based on quality or performance measures. By itself, this demonstrates that Anthem is not treating mental health providers comparably to medical providers, in violation of the non-discrimination provision.

8

5110986.1

28. On or about July 25, 2012, Plaintiff Laural O'Dowd was provided with the Disclosure of Estimated Allowable Reimbursement ("DEAR") stating the estimated allowable charges for services, categorized by CPT codes, provided by Leland Johnston, M.D. Plaintiff received psychiatric treatment from Dr. Johnston.

29. On or about July 26, 2012, Plaintiff Laural O'Dowd was provided with the DEAR outlining the estimated allowable charge for services, categorized by CPT codes, provided by James Marquardt, M.D. Plaintiff's husband received psychiatric care from Dr. Marquardt.

30. The DEARs provided by Anthem for Drs. Johnston and Marquardt demonstrated that Anthem used different Out-of-Network Maximum Allowable Amounts for Dr. Johnston and Dr. Marquardt for exactly the same psychiatric CPT Codes. As an example, the documentation provided by Anthem demonstrated that while Dr. Johnston was reimbursed $115.00 as the Maximum Allowable Amount for treatment under CPT Code 90809 (individual psychotherapy with E/M totaling 75-80 minutes), while Dr. Marquardt was reimbursed $171.13 for the same CPT Code.

31. After discovering that Defendants reimburse participants differently for the same services performed by these two providers, Plaintiff sought an explanation from Defendants. She learned that Defendants had incorrectly classified Dr. Marquardt as a primary care physician in their database so that his services were charged as a primary care physician for substantially identical treatment by

9

5110986.1

Defendants. In short, Defendants' system of reimbursements results in different rates being applied to the same services when offered by different provider types.

32. Defendants' varying reimbursement rates are not based on quality or performance measures.

33. Ms. O'Dowd filed a complaint against Anthem with the Colorado Division of Insurance ("Division"). In response, the Division initiated a review of Defendants' rates. The Division forwarded Ms. O'Dowd's complaint to Defendants and began its review on August 27, 2012.

34. On or about September 17, 2012, Anthem responded to Ms. O'Dowd's complaint, but provided little substantive information.

35. On October 4, 2012, the Division sent a letter to Anthem advising that they were continuing their review of Ms. O'Dowd's Complaint regarding Anthem's maximum allowable amounts being different for an out-of-network general practitioner than it was for an out-of-network psychiatrist when identical CPT codes are being used. Even though Drs. Johnston and Marquardt were both psychiatrists, Defendants had categorized them differently.

36. In the October 4, 2012 letter, the Division pointed Anthem to Colorado's statutory requirement that "the same fee schedule shall be used for those portions of health services that are substantially identical although performed by different professions." Colo. Revised Statute § 10-16-104(7). The Division explained that,

10

"[t]he services rendered by each provider are coded according to the Current Procedural Terminology (CPT) manual. Therefore, unless the medical records are being requested each and every time two different providers are using the same CPT code, it would appear that health services are 'substantially identical' are being performed by each provider." The Division also requested that Anthem provide, "the actual data utilized by Anthem BCBS to set the out-of-network reimbursement rates for CPT codes 90801, 90802, 90804, 90805, 90806, 90807, 90808, 90809, 90810, 90811, 90812, 90813, 90814, 90816, 90846, 90847, 90849, 90853, 90857 and 90862 for Dr. Johnston and Dr. Marquardt."

37. On October 18, 2012, Defendants provided general responses to the Division. Defendants did not explain how they determined their reimbursement rates. Indeed, they failed to provide any actual data that Defendants used to set any out-of-network reimbursement rates, claiming that such data was proprietary.

38. On November 14, 2012, the Division wrote to Anthem again requesting the information it had requested on October 4, 2012. The Division reiterated its previous position that "the services rendered by each provider are coded according to the Current Procedural Terminology (CPT) manual. When a provider utilizes a procedure code, unless it includes a modifier, health services being rendered should be in line with the procedure code's definition of each provider billing that code would be performing services that are 'substantially identical' to the services being

11

performed by other providers. Additionally, unless some type of modifier is used to signify that additional services are provided, there should be no reason for Anthem to request that a copy of medical records be submitted in order to determine the appropriate reimbursement." Thus, Anthem, at relevant times, was imposing different reimbursement rates for "substantially identical" health services.

39. On December 13, 2012, Anthem wrote the Division in an effort to justify its policies, but actually confirmed its statutory violations. In this letter, Anthem confirmed that it uses two separate out-of-network reimbursement rates: one for medical professionals and a second for behavioral health professionals. It then attached copies of the two schedules it deemed to be "confidential" (and which has not been provided to Plaintiff), along with the following explanation:

> Medical: A confidential spreadsheet of the relative value unit (RVU) figures – for work, practice experience and malpractice – which Anthem has loaded for the codes in question. For each code, the spreadsheet also lists the degree to which the respective RVUs are adjusted for geographic differences in resource costs, by application of Medicare's geographic cost indices (GOCIs). The spreadsheet also includes both the conversion factor which Medicare uses in calculating its reimbursement and Anthem's proprietary conversion factor which it applies in determining its current Colorado out-of-network medical reimbursement.

> Behavioral: A confidential current Anthem Colorado fee schedule, for the codes in question, used for in-network behavioral health providers. . . . [I]n setting its current out-of-network reimbursement fee schedule for behavioral health providers, Anthem considers the in-network behavioral fees paid for the same codes. . . . We believe that our out-of-network reimbursement for the codes in question are appropriate, in part, because we have in-network medical and behavioral providers willing to accept an equal or lesser amount as

12

payment in full, and in sufficient numbers that satisfies the demand for those services. So, if providers remain willing to join and stay in our network at these rates, we believe it is reasonable to infer that our out-of-network rates remains appropriate.

40. This analysis demonstrates that Anthem treats behavioral health providers differently from medical providers, leading to behavioral health providers receiving reduced reimbursement rates. This is discriminatory conduct in violation of the non-discrimination provision of the ACA, which has been incorporated into ERISA. If out-of-network medical providers are paid based on RVUs, then out-of-network behavioral health providers should be as well, and based on the same payment per RVU. The disparate fee schedules uncovered by Plaintiff demonstrate that Anthem fails to reimburse behavioral health providers at a proper level, in violation of ERISA and the non-discrimination provision.

41. Plaintiff's health insurance policy provided by Anthem Colorado, provides *inter alia* as follows:

### Non-Participating Providers (Out-of-Network)

Providers who have not signed a PPO Provider contract with Us are non-participating Providers who use this PPO plan. Services provided by a non-participating Provider are considered Out-of-Network. When you see a non-participating Provider you may have higher Out-of-Pocket costs.  Your Out-of-Network Cost Sharing responsibilities for non-participating Providers may be found on the *Schedule of Benefits* under the Out-of-Network heading.

We will not deny or restrict Covered Services just because you get treatment from a non-participating Provider; however, you may have to pay more.  The Cost Sharing for Covered Services from a non-participating Provider may be larger.  Also, non-parting Providers do not have to accept our Maximum Allowed Amount as full payment.

5110986.1

> They can charge or "balance bill" you for any amount of their bill which We do not pay. This "balance billing" cost is on top of, and does not count toward, your Cost Sharing obligation.
>
> We pay the benefits of this Booklet directly to non-participating Providers, if you have authorized an assignment of benefits. An assignment of benefits means you want Us to pay the Provider instead of you. We may require a copy of the assignment of benefits for Our records. These payments fulfill our obligation to you for those services.

42. Defendants improperly reimburse for services performed by healthcare providers in different professions but under the same CPT codes. The varying reimbursement rates were not based on quality or performance measures. For example, CPT Code 90809 pertains to medical treatment for mental illness, but Defendants reimburse mental health professionals at a lower rate than other medical professionals who perform substantially identical services and bill under the same CPT code. Thus, participants are reimbursed less for services obtained from licensed mental health professionals than for services performed by professionals who are licensed to treat physical illness, even though the latter are providing the same services (i.e. treating mental health). Plan participants remain financially responsible for the balance that was not reimbursed by their health insurers.

43. Anthem continues to discriminate against mental health providers. Plaintiff's three sons also see psychologists and psychiatrists. Plaintiff, who is financially

5110986.1

responsible for these healthcare services, has requested and received disclosures of estimated allowable reimbursements as they relate to these providers.

44. This discrimination has further been exacerbated by the fact that Anthem has changed its policies internally to reduce reimbursement for behavioral health care services even further. For example, Plaintiff's children are seeing out-of-network psychologists to address certain mental health issues. In the last two years, Anthem's reimbursement rates for these providers have declined precipitously, as the following chart demonstrates:

| CPT Code | 4/11/13 Fee | 11/10/15 Fee |
|---|---|---|
| 90832 (30 min therapy) | $51 | $36 |
| 90834 (45 min therapy) | $79 | $66 |
| 90837 (60 min therapy) | $139.98 | $77 |
| 90847 (family therapy w/ patient) | $81 | $66 |
| 90853 (group therapy) | $44 | $38 |

45. These reductions in fees payable to out-of-network behavioral health providers during this time period are not justified by any changes in plan terms which would justify a sudden reduction in benefits. Instead, they further highlight Defendants' improper discrimination against behavioral health providers.

15

5110986.1

46. Prior to having her children begin seeing psychiatrists, Plaintiff had tried to find in-network providers, because the out-of-pocket costs are significantly higher when going out-of-network due to greater deductibles and copayments. She was unable to do so, however, because there were few in-network providers and those providers who were in Anthem's network already had too many clients or did not specialize in children. This belies the excuse that Anthem gave to the regulators in its December 13, 2012 letter, in which Anthem asserted that it had a robust network of behavioral health providers and therefore did not need to pay more to out-of-network providers. In fact, the low level of reimbursement Anthem offers to behavioral health providers has led to an inadequate network for Plaintiff and other Anthem insureds.

47. Anthem's communications both to Plaintiff and to the regulators in 2012 demonstrated that Anthem had adopted its reimbursement methodology as a firm policy which would not be changed based on individual grievances or appeals. Thus, it was obvious that further requests for review would be futile. Relief will only be available through this litigation.

Class Allegations

48. Plaintiff brings this action in accordance with Federal Rule of Civil Procedure 23(a) and (b)(3), individually and on behalf of a class of similarly situated individuals (the "Class"). The relevant time period for the purposes of this action is

5110986.1

the period beginning three years before Plaintiff filed this action on July 18, 2014

and until entry of judgment (the "Class Period").

49. Based on currently available information, the Class consists of:

> All Colorado residents who, during the Class Period, received treatment for mental illness while they were participants or beneficiaries in one of Defendants' plans and received reimbursement for services obtained from their behavioral health professionals at rates below those participants and beneficiaries who received treatment from other medical professionals billing under the same CPT treatment codes or where they received reimbursement for treatment from behavioral health providers at a rate per RVU below that paid for treatment by medical professionals.

50. The members of the class are so numerous and geographically dispersed that their individual joinder is impracticable. The precise number of class members may be determined with specificity from records maintained by Defendants.

51. Common questions of law and fact exist as to all members of the Class. They include, but are not limited to, the following:

   a. Whether Defendants' practices result in different rates of reimbursement for substantially identical medical services.

   b. Whether Defendants' practices discriminate against licensed medical professionals in a manner that is unrelated to quality or performance measures.

   c. Whether Defendants' reimbursement practices are prohibited by Colorado law.

17

d. Whether Defendants' reimbursement practices are prohibited by the ACA or ERISA.

e. Whether Defendants' reimbursement practices deny Plaintiff and other members of the Class benefits to which they are entitled under the Defendants' Plans.

f. Whether Defendants owe a fiduciary duty to Plaintiff and other members of the Class.

g. Whether Defendants' reimbursement practices constitute a breach of fiduciary duties owed to Plaintiff and the Class.

h. Whether Plaintiff and other members of the Class have been injured by Defendants' reimbursement practices.

52. Plaintiff's claim is typical of the claims of the members of the Class because Plaintiff purchased and used a health insurance policy issued by Defendants and exercised her right to receive coverage for services received from behavioral health providers.

53. Plaintiff is an adequate representative of the class because she will vigorously pursue this action on behalf of the entire class, her interests do not conflict with the interests of other class members, and she has retained competent counsel with experience in ERISA and health insurance litigation, including with respect to behavioral health. Plaintiff and Plaintiff's counsel will fairly and

5110986.1

adequately protect the interests of the class.

54. The common questions of law and fact set forth above predominate over any questions affecting only individual members of the class. In addition, a class action in this matter is superior to other available methods for the fair and efficient adjudication of the controversy. The class is readily definable, and prosecution of this case as a class action will eliminate the possibility of repetitious litigation and will provide redress for claims that may otherwise be too small to support the expense of individual prosecution. A class action presents far fewer management difficulties and provides the benefits of a single adjudication, economics of scale, and comprehensive supervision by a single court of what would otherwise amount to tens of thousands of separate claims.

55. In the alternative, the Court may certify the Class in accordance with Federal Rule of Civil Procedure 23(b)(1) or 23(b)(2), because:

   a. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudication with respect to individual class members which would establish incompatible standards of conduct for Defendants; or;

   b. The prosecution of separate actions by individual class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other class members not

    5110986.1

parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

c. Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final and injunctive relief with respect to the members of the class as a whole.

56. For all the reasons set forth, certification is appropriate of a class of persons who were insured by Defendants who received treatment for behavioral health issues and whose behavioral health providers have been discriminated against by Defendants.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment that Defendants Violated Colorado's Provider Non-Discrimination Statutes: C.R.S. 10-16-104(7) and C.R.S. 10-16-107.7)

57. Plaintiff incorporates all prior allegations as if set forth verbatim.

58. Defendants' reimbursement practices violate Colorado's provider non-discrimination statutes by reimbursing participants and beneficiaries differently for the same services based on the profession of their provider.

59. Defendants reimburse mental health providers at lower rates than general practitioners for substantially identical treatment.

60. There is no sound basis for applying different reimbursement rates for substantially identical health services, which services are represented by the CPT

5110986.1

Codes. Further, Defendants' practice of varying reimbursement rates is not based on quality or performance measures.

61. WHEREFORE, Plaintiff seeks a declaration from this Court that the Defendants' conduct was illegal and invalid under Colorado law, including, but not limited to C.R.S. § 10-16-104 and C.R.S. § 10-16-107.7.

### SECOND CLAIM FOR RELIEF
(Injunctive Relief Under ERISA)

62. Plaintiff incorporates the allegations set forth in the previous paragraphs, as if set forth verbatim.

63. ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), provides a plan participant such as Plaintiff and all others similarly situated with a right to bring a civil action to enjoin acts or practices that violate ERISA or the terms of the plan, to enforce provisions of ERISA or the plan, or to obtain other appropriate equitable relief.

64. Defendants' unfair and discriminatory reimbursement practices deprive benefits to Plaintiff and the Class. Plaintiff and all others similarly situated are entitled to obtain out-of-network mental health services without being subject to Defendants' unfair or discriminatory reimbursement practices, which violate the plan and ERISA.

65. In particular, Defendants' practices violate 42 U.S.C. § 300gg–5, which provides that health insurers "shall not discriminate with respect to participation

5110986.1

under the plan or coverage against any health care provider who is acting within the scope of that provider's license or certification under applicable State law."

66. Plaintiff requests an order enjoining Defendants from violating the terms and conditions of their ERISA plans and committing statutory violations of ERISA by engaging in their practice of reimbursing mental health services below the levels authorized by the plans and required by law.

67. As alleged above, Defendants have breached their fiduciary duties owed to Plaintiff and the Class. Plaintiff and the Class have suffered actual harm as a result of Defendants' unlawful practices, set forth above.

68. To the extent such relief does not duplicate the relief otherwise available under ERISA, Plaintiff further seeks the equitable relief of restitution, disgorgement, or surcharge sufficient to compensate Plaintiff and the Class for the discriminatory reimbursement rates imposed on out-of-network behavioral health providers.

69. In addition, in accordance with 29 U.S.C. § 1132(g), Plaintiff and all others similarly situated request an award of their reasonable attorneys' fees and costs incurred in bringing this action.

### THIRD CLAIM FOR RELIEF
(Claim for Benefits Under ERISA)

70. Plaintiff incorporates all prior allegations in this Complaint, as if set forth verbatim.

22

71. Under ERISA, Defendants must comply with the terms and conditions of its health care plans in making benefit determinations and processing claims on behalf of its insureds.

72. ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), provides a plan participant such as Plaintiff and all others similarly situated with a right to bring a civil action to recover benefits due under the terms of the plan, to enforce her rights under the terms of the plan and to clarify rights to future benefits under the terms of the plan.

73. Under the terms of the plan issued to the Plaintiff and similar plans issued by Defendants, Plaintiff and all others similarly situated are entitled to obtain out-of-network mental health services without being subject to unfair or discriminatory reimbursement practices by Defendants.

74. In administering their ERISA plans, Defendants acts as fiduciaries and must comply with their fiduciary obligations toward the participants and beneficiaries of the ERISA plan.

75. Defendants have violated the terms and conditions of their ERISA plans, and have violated ERISA, by reimbursing for mental health services below the levels authorized by the plans and required by law.

76. Defendants have violated the terms and conditions of their health plans, and violated ERISA by applying processes, strategies, evidentiary standards, and other

5110986.1

factors to deny or reduce benefits for mental health services that are inconsistent with or in conflict with the law.

77. Defendants' actions were not substantially justified, were arbitrary and capricious, were without substantial evidence, and constitute an abuse of any discretion allowed and were wrongful under the circumstances.

78. The Plaintiff and all others similarly situated have been harmed by Defendants' violations of ERISA as alleged above. Plaintiff, on her own behalf, and on behalf of all other similarly situated, requests that Defendants reimburse the benefits denied or reduced as result of such policies, and that Defendants pay appropriate penalties and interest back to the date such claims were originally submitted. Pursuant to 29 U.S.C. § 1132(g), Plaintiff and all others similarly situated are entitled to an award of their reasonable attorneys' fees and costs incurred in bringing this action.

## FOURTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty Under ERISA)

79. Plaintiff incorporates all previous allegations as if set forth verbatim.

80. Plaintiff asserts breach of fiduciary duty claims under § 1132(a)(1)(B) and § 1132(a)(3).

81. At all relevant times, Defendants possessed and exercised discretionary authority or control with respect to management of their Plans. Therefore, Defendants were fiduciaries under ERISA, 29 U.S.C. § 1002.

5110986.1

82. Under the terms of Plaintiff's plan and similar plans issued by Defendants, Plaintiff and all others similarly situated are entitled to obtain out-of-network mental health services without being subject to unfair or discriminatory reimbursement practices by Defendants.

83. In administering their ERISA plans, Defendants act as fiduciaries and must comply with their fiduciary obligations toward the participants and beneficiaries of their Plans, as set forth in section 404 of ERISA, 29 U.S.C. § 1104. In committing the acts described above, Defendants have failed to discharge their duties in the interest of the participants and beneficiaries.

84. Defendants have also violated the terms and conditions of their health plans, and violated ERISA by applying processes, strategies, evidentiary standards, and other factors to deny or reduce benefits for mental health services that are inconsistent with or in conflict with the Plans and applicable law.

85. Defendants' actions were not substantially justified, were arbitrary and capricious, were without substantial evidence, and constitute an abuse of any discretion allowed and were wrongful under the circumstances.

86. Plaintiff and all others similarly situated have been harmed by Defendants' violations of ERISA as alleged above. Plaintiff, on her own behalf, and on behalf of all others similarly situated seek an injunction prohibiting Anthem from continuing to engage in the conduct detailed in this Complaint which violates its fiduciary

5110986.1

obligations under ERISA. Further, to the extent such relief does not duplicate relief otherwise available under ERISA, Plaintiff seeks an order requiring Defendants to restore losses to the Plan and participants resulting from their breaches of fiduciary duty as alleged above; and seek appropriate equitable relief arising from Defendants' misconduct.

87. Pursuant to 29 U.S.C. § 1109, Plaintiff and all others similarly situated are entitled to an award of their reasonable attorneys' fees and costs incurred in bringing this action.

WHEREFORE, Plaintiff and the class members respectfully request that this Court:

A.      Find in favor of Plaintiff and the class members and against Defendants on each of the claims for relief set forth in this Complaint;

B.      Award Plaintiff and the class member's compensatory damages, attorney fees, interest, penalties, and costs as permitted by law;

C.      Enter a declaratory judgment that Defendants' conduct of reimbursing for services provided by behavioral health providers at lower rates than other medical providers for substantially identical health services, or without providing compensation at a comparable level per RVU, was and is illegal and invalid under Colorado law;

5110986.1

D.     Enter an injunction enjoining Defendants from reimbursing for services performed by behavioral health providers at lower rates than services performed by other medical providers for substantially identical health services or requiring Defendants to pay behavioral health providers at the same amount as medical providers per RVU;

E.     Award Plaintiff and all others similarly situated reasonable attorneys' fees and costs incurred in bringing this action;

F.     Grant all equitable relief permitted under the law; and

G.     Take any other action the Court deems to be just and proper.


Dated:  November 30, 2015


                                        ZUCKERMAN SPAEDER LLP
                                        *A duly signed original is on file*
                                        *at Zuckerman Spaeder LLP*

                                        */s/ Conor B. O'Croinin*
Gregory A. Gold, #26064                 Conor B. O'Croinin
Sommer D. Luther, #35053                ZUCKERMAN SPAEDER LLP
THE GOLD LAW FIRM                       100 East Pratt Street, Suite 2440
7375 E. Orchard Road, Suite 300         Baltimore, MD 21202
Greenwood Village, CO 80111             (410) 332-0444
(303) 694-4653                          (410) 659-0436 (fax)
                                        cocroinin@zuckerman.com


5110986.1

D. Brian Hufford
Jason S. Cowart
ZUCKERMAN SPAEDER LLP
399 Park Avenue, 14th Floor
New York, NY 10022
(212) 704-9600
(212) 704-4256 (fax)
dbhufford@zuckerman.com
jcowart@zuckerman.com

Meiram Bendat
PSYCH-APPEAL, INC.
8560 Sunset Boulevard
Suite 500
West Hollywood, CA 90069
(310) 598-3690 x.101
(888) 975-1957 (fax)
mbendat@psych-appeal.com

*Attorneys for Plaintiff*

28

5110986.1