**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No.: 1:14-cv-02787-KLM

LAURAL O'DOWD, for herself and all others similarly situated,

    Plaintiff,

v.

ANTHEM, INC. and
ROCKY MOUNTAIN HOSPITAL AND MEDICAL SERVICE, INC. d/b/a ANTHEM BLUE
CROSS and BLUE SHIELD,

    Defendants.

---

**DEFENDANTS' PARTIAL MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

---

E. Desmond Hogan
Miranda L. Berge
Briana L. Black
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
202.637.5493/202.637.5910 (fax)
desmond.hogan@hoganlovells.com
miranda.berge@hoganlovells.com
briana.black@hoganlovells.com

Nicholas M. DeWeese
HOGAN LOVELLS US LLP
1200 Seventeenth St., Suite 1500
Denver, CO 80202
303.454.2530/303.899.7333 (fax)
nicholas.deweese@hoganlovells.com

*ATTORNEYS FOR ROCKY MOUNTAIN HOSPITAL
AND MEDICAL SERVICE, INC. d/b/a
ANTHEM BLUE CROSS AND BLUE SHIELD
AND ANTHEM, INC.*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ...................................................................................................................... 4

LEGAL STANDARD................................................................................................................ 6

ARGUMENT ........................................................................................................................... 6

I.    PLAINTIFF'S DECLARATORY JUDGMENT CLAIM SHOULD BE DISMISSED
      TO THE EXTENT IT IS NOT BROUGHT UNDER 1132(A)(1)(B). ............................. 6

II.   PLAINTIFF'S CLAIMS UNDER 1132(A)(3) SHOULD BE DISMISSED
      BECAUSE THEY IMPERMISSIBLY DUPLICATE HER 1132(A)(1)(B)
      BENEFITS CLAIMS.......................................................................................................... 7

      A.    Plaintiff's 1132(a)(3) Claims Are Based on Underpayment of Plan Benefits........ 9

      B.    Plaintiff's Alleged Injury Is Adequately Remedied Through 1132(a)(1)(B). ...... 11

      C.    Plaintiff's Claims For Equitable Surcharge, Restitution or Disgorgement Do
            Not State Alternative Claims For Relief................................................................. 12

      D.    Dismissal of Plaintiff's 1132(a)(3) Claims Is Not Premature............................... 16

III.  TO THE EXTENT PLAINTIFF PURPORTS TO BRING 1132(A)(3) CLAIMS
      THAT ARE NOT BASED ON A DENIAL OF PLAN BENEFITS, THOSE
      CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.............. 18

      A.    Plaintiff Fails to State Breach of Fiduciary Duty Claims Based on Allegations
            Regarding the Development of Company-Wide Reimbursement Policies........... 18

      B.    Plaintiff Cannot Seek to Enforce Colorado and Federal Laws Except Through
            An ERISA Claim For Benefits. ............................................................................. 20

IV.   ANTHEM, INC. IS NOT A PROPER DEFENDANT TO PLAINTIFF'S
      DECLARATORY JUDGMENT AND 1132(A)(1)(B) CLAIMS.................................. 22

      A.    Anthem, Inc. Is Not a Proper Defendant to Plaintiff's 1132(a)(1)(B) Claims...... 22

      B.    Plaintiff's Declaratory Judgment Claim Against Anthem, Inc. Also Fails........... 23

CONCLUSION....................................................................................................................... 24

i

# TABLE OF AUTHORITIES

**Page**

CASES:

*Aetna Health Inc. v. Davila*,
   542 U.S. 200 (2004)....................................................................................................1, 2, 7

*Am. Psychiatric Assoc. v. Anthem Health Plans*,
   50 F. Supp. 3d 157, 169-70 (D. Conn. 2014) ..................................................................20, 21

*Arana v. Oschsner Health Plan*,
   338 F.3d 433 (5th Cir. 2003) .........................................................................................7

*Arapahoe Surgery Ctr. v. Cigna Healthcare*,
   Civ. No. 13–cv–3422, 2015 WL 1041515 (D. Colo. Mar. 6, 2015).......................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................................6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................................6

*Benson v. Prudential Financial, Inc.*,
   Civ. No. 07-587, 2007 WL 4334026 (D.N.M. Aug. 17, 2007) .....................................9, 11, 17

*Callery v. U.S. Life Ins. Co. in City of New York*,
   392 F.3d 401 (10th Cir. 2004) .......................................................................................14

*Coldesina v. Estate of Simper*,
   407 F.3d 1126 (10th Cir. 2005) .....................................................................................19

*Conkright v. Frommert*,
   559 U.S. 506 (2010)......................................................................................................2

*DeLuca v. Blue Cross Blue Shield of Mich.*,
   628 F.3d 743 (6th Cir. 2010) .........................................................................................20

*Fifth Third Bancorp v. Dudenhoeffer*,
   134 S. Ct. 2459 (2014)..................................................................................................6

*Fulghum v. Embarq Corp.*,
   Civ. No. 07–2602, 2008 WL 5109781 (D. Kan. Dec. 2, 2008).........................................9, 12

*Gaalla v. Citizens Med. Ctr.*,
  Civ. No. V-10-14, 2010 WL 2671705 (S.D. Tex. June 30, 2010)............................................7

*Geddes v. United Staffing Alliance Employee Med Plan.*,
  469 F.3d 919 (10th Cir. 2006) .........................................................................................22

*Gerrity Oil & Gas Corp. v. Magness*,
  946 P.2d 913 (Colo. 1997) (en banc).................................................................................7

*Holbrooks v. Sun Life Assur. Co. of Canada*,
  Civ. No. 11-1383, 2012 WL 2449850 (D. Kan. June 26, 2012)..................................9, 10, 17

*Horne v. J.C. Penney Corp.*,
  Civ. No. 14-cv-2383, 2014 WL 6060434 (M.D. La. Nov. 12, 2014) ......................................16

*Huynh v. Liberty Life Assurance Co. of Boston*,
  Civ. No. 10-276, 2011 WL 2340800 (D.N.M. March 23, 2011)........................................9, 17

*Hyde v. Benicorp Ins. Co.*,
  363 F. Supp. 2d 1304 (D. Kan. 2005)...............................................................................9, 12

*Kenseth v. Dean Health Plan, Inc.*,
  722 F.3d 869 (7th Cir. 2013) ..............................................................................................17

*Larson v. United Healthcare Ins. Co.*,
  723 F.3d 905 (7th Cir. 2013) .................................................................................7, 19, 21

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
  552 U.S. 248 (2008) (Roberts, J., concurring)........................................................................2

*Lefler v. United Healthcare of Utah*,
  72 Fed. Appx. 818 (10th Cir. 2003)................................................................................. *passim*

*Mass. Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985).................................................................................................1, 2, 11

*McGravy v. Metropolitan Life Ins. Co.*,
  690 F.3d 176 (4th Cir. 2012) ..............................................................................................17

*Medina v. Catholic Health Initiatives*,
  Civ. No. 13-cv-01249, 2014 WL 4852264 (D. Colo. Sept. 30, 2014)......................................4

*Mertens v. Hewitt Assocs.*,
  508 U.S. 248 (1993)...............................................................................................................2

*Meyer v. Unum Life Ins. Co.*,
Civ. No. 12-1134, 2013 WL 1411776 (D. Kan. April 8, 2013)...........................................9, 12

*Moore v. Berg Enter.*,
Civ. No. 98-4080, 1999 WL 1063823 (10th Cir. Nov. 23, 1999)..............................................8

*New York Psychiatric Ass'n, Inc. v. UnitedHealth Group*,
798 F.3d 125 (2d Cir. 2015)....................................................................................................16

*O'Donnell v. Blue Cross Blue Shield of Wyo.*,
173 F. Supp. 2d 1176 (D. Wyo. 2001).....................................................................................21

*Pegram v. Herdich*,
530 U.S. 211 (2000)...........................................................................................................19, 20

*Powers v. BlueCross Blue Shield of Illinois*,
947 F. Supp. 2d 1139 (D. Colo. 2013)................................................................................9, 15

*Prier v. Steed*,
456 F.3d 1209 (10th Cir. 2006) ...............................................................................................24

*Rochow v. Life Ins. Co. of N. America*,
780 F.3d 364 (6th Cir. 2015) .............................................................................................12, 16

*Rogers v. Boeing Co. Emp. Retirement Plan*,
Civ. No. 10-cv-1207, 2010 WL 4117558 (D. Kan. Oct. 19, 2010) ...........................................9

*Sigai v. Sedgwick Claims Mgmt. Servs., Inc.*,
Civ. No. 11-130, 2011 WL 6151410 (D. Kan. Dec. 12, 2011)...................................................9

*Silva v. Metropolitan Life Ins. Co.*,
762 F.3d 711 (8th Cir. 2014) ...................................................................................................17

*Talkin v. Deluxe Corp.*,
Civ. No. 05-2305, 2007 WL 1469648 (D. Kan. May 18, 2007)...............................................16

*Turney v. Dz Bank AG Deutsche Zenral Genossenschaftsbank*,
Civ. No. 09-2533, 2010 WL 3735757 (D. Kan. Sept. 20, 2010) .............................................24

*Varity Corp. v. Howe*,
516 U.S. 489 (1996)......................................................................................................... *passim*

*Warren Pearl Const. Corp. v. Guardian Life Ins. Co. of Am.*,
639 F. Supp. 2d 371 (S.D.N.Y. 2009)......................................................................................21

**STATUTES:**

C.R.S. § 10-1-103(1)..................................................................................................................6

C.R.S. § 10-1-108(7) ................................................................................................................6

C.R.S. § 10-16-102(8)..............................................................................................................24

C.R.S. § 10-16-104 *et seq.* ............................................................................................. *passim*

C.R.S. § 10-16-107.7 ...........................................................................................4, 5, 6, 20, 23, 24

C.R.S. § 10-16-109 ....................................................................................................................7

29 U.S.C. § 1002 *et seq.*....................................................................................................18, 22

42 U.S.C. § 300gg *et seq.*.......................................................................................................4, 21

Public Health Services Act § 2706(a) ...................................................................................4, 5, 21

**RULES:**

Fed. R. Civ. P. 12(b)(6)...............................................................................................................1

## INTRODUCTION

Plaintiff's Second Amended Complaint, Dkt. 53 ("SAC"), like her First Amended Complaint, Dkt. 27 ("FAC"), is based on the allegation that Anthem Colorado—and now Anthem, Inc.—("Defendants") allegedly underpaid Plaintiff's benefits claims for out-of-network ("OON") mental health services.  Plaintiff claims this violated the terms of her health benefits plan and incorporated applicable law, which, she alleges, required reimbursement of mental health providers at the "same rate" or based on the same "RVU" paid to medical providers. Based on this single alleged injury, Plaintiff attempts to plead four separate Counts, each of which run afoul of the pleading requirements under ERISA's comprehensive remedial scheme and fail to state a claim under Fed. R. Civ. P. 12(b)(6) as to one or both Defendants.[1]

The Supreme Court has described the civil enforcement provisions of ERISA 1132(a) as "carefully integrated" and the remedial scheme within 1132(a) as an "interlocking, interrelated, and interdependent" part of a "comprehensive and reticulated statute." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985) (internal quotation marks omitted).  ERISA's civil enforcement scheme completely preempts related state law causes of action, *Aetna Health Inc. v. Davila*, 542 U.S. 200, 215 (2004), and gives rise to separate and distinguishable causes of action,

---

[1]  On September 30, 2015, the Court granted in part and denied in part Anthem Colorado's Motion to Dismiss Plaintiff's First Amended Complaint.  Sept. 30, 2015 Order Granting and Denying In Part Def.'s Mot. to Dismiss Am. Compl., Dkt. 36 ("Opinion" or "Op.").  Plaintiff subsequently obtained leave to file the SAC and effected service on Defendant Anthem, Inc.  As explained herein, the SAC's amendments, as well as the further briefing provided herein, demonstrate that, with the exception of Plaintiff's 1132(a)(1)(B) claim against Anthem Colorado, all of her claims should be dismissed.  While this motion does not seek dismissal of Plaintiff's 1132(a)(1)(B) claim as to Anthem Colorado, Defendants reserve all rights to challenge that claim, and any other claim that may survive the instant motion, based on, Plaintiff's failure to exhaust administrative remedies and a challenge to Plaintiff's entitlement to additional reimbursement pursuant to state and federal insurance laws, and other defenses.

demands proof of different elements, is available against only certain defendants, and provides various and differing forms of limited relief. *See LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 258-59 (2008) (Roberts, J., concurring) (discussing the distinctions between 1132 subsections (a)(1)(B), (a)(2), and (a)(3)).

As the Supreme Court has recognized, this detailed remedial scheme reflects a "careful balancing" between "competing congressional purposes," *Varity Corp. v. Howe*, 516 U.S. 489, 497, 538 (1996), that must be taken into account when addressing ERISA claims:

> ERISA represents a careful balancing between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans. . . .  ERISA induces employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred.

*Conkright v. Frommert*, 559 U.S. 506, 517 (2010) (quotations and citations omitted); *see also Davila*, 516 U.S. at 215 ("limited remedies available under ERISA are an inherent part of the 'careful balancing' between" competing goals).  Accordingly, the Supreme Court has declined to tamper with "an enforcement scheme crafted with such evident care as the one in ERISA." *Mass. Mut.*, 473 U.S. at 147; *see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262-64 (1993).

Against this backdrop, Plaintiff's claims ignore a number of important ERISA pleading requirements.  Thus, her claims should be dismissed for failure to state a claim as follows:

First, Plaintiff does not specify whether her claim for declaratory relief in Count I—which seeks clarification regarding Plaintiff's entitlement to plan benefits under Colorado state law—is brought under 1132(a)(1)(B).  To the extent that it is not, it should be dismissed because it there is no private right of action to enforce the Colorado insurance laws at issue, and Plaintiff's exclusive enforcement mechanism, if any, is through an ERISA claim for benefits.

Second, Plaintiff's claims under 1132(a)(3) in Counts II and IV run afoul of the deliberate structure of ERISA's remedial scheme that makes 1132(a)(1)(B) the exclusive avenue for enforcing her right to receive plan benefits, and that makes 1132(a)(3)'s "catchall" equitable relief appropriate only where adequate relief under 1132(a)(1)(B) and other sections of ERISA cannot be pursued. Plaintiff's 1132(a)(3) claims impermissibly duplicate her 1132(a)(1)(B) claims in Counts III and IV because they are based on a single alleged injury—underpayment of plan benefits—for which 1132(a)(1)(B) provides an adequate remedy. Thus, consistent with Tenth Circuit authority, Plaintiff's 1132(a)(3) claims are precluded as a matter of law.

Third, to the extent that Plaintiff purports to bring her 1132(a)(3) fiduciary duty claims based on conduct that does not duplicate her breach of fiduciary duty claims under 1132(a)(1)(B)—that is, something other than Defendants' alleged discretionary administration of Plaintiff's plan—those claims should be dismissed for failure to state a claim. While the SAC contains various allegations regarding Defendants' alleged establishment of internal, company-wide discriminatory reimbursement policies, those allegations on their own do not plausibly show Defendants acted in a fiduciary capacity as required to state a claim for breach of fiduciary duty. Moreover, Plaintiff cannot bring independent 1132(a)(3) claims based on alleged violations of Colorado and federal law because those laws are not independently actionable and can only be enforced to the extent they become plan terms through a claim for plan benefits.

Finally, Plaintiff's 1132(a)(1)(B) and declaratory judgment claims should be dismissed as to Anthem, Inc. for the additional reason that Anthem, Inc. is not a proper defendant.

Accordingly, Defendants respectfully request that the Court dismiss all Counts as to Anthem, Inc. and Counts I, II, and Count IV's 1132(a)(3) claim as to Anthem Colorado.

**BACKGROUND**

Each of Plaintiff's four, overlapping Counts is based on the allegation that "Defendants" underpaid reimbursement amounts for Plaintiff's OON mental health services in violation of the terms of her ERISA plan.  SAC ¶¶ 6, 41-45, 57-59, 62-64, 70-76, 79-84.  While many of Plaintiff's allegations are made as to "Defendants" generally, other allegations in the SAC make clear that her plan was insured, and her claims were submitted, adjudicated, and paid by only Anthem Colorado, not by its separate Indiana-based ultimate parent company, Anthem, Inc.  *Id.* ¶¶ 2-3, 23, 25, 41; *see also* Anthone Decl., Ex. 1 at 1-3, 53, 65.[2]  Specifically, Plaintiff claims that Anthem Colorado "imposed" in her health insurance policy "an [OON] Maximum Allowable Amount for [her] psychiatrist" and improperly reimbursed her for the OON mental health services provided by her psychiatrist in amounts less than what Anthem Colorado would have paid to a medical provider for the same services.  SAC ¶¶ 23, 41-42.  As in the FAC, Plaintiff alleges that for claims prior to 2014, this conduct violated Colorado insurance law C.R.S. §§ 10-16-104(5.5), 10-16-104(7), provisions which she alleges are incorporated as enforceable terms in ERISA plans.  *Id.* ¶¶ 11, 13.  The SAC now also alleges that, for services starting in 2014, this conduct violated C.R.S. §§ 10-16-107.7 (which replaced § 10-16-104(5.5)), as well as section 2706(a) of the Public Health Services Act, as amended by the Affordable Care Act, codified at 42 U.S.C. § 300gg-5(a).  *Id.* ¶¶ 14-18.  Unlike C.R.S. §§ 10-16-104(5.5), and

---

[2]  Defendants request that, in deciding this Motion, the Court consider the document attached as Exhibit 1 to the Anthone Declaration filed herewith.  The Court may consider the health insurance policy referenced in the SAC and central to Plaintiff's claims.  SAC ¶¶ 19-23, 41; *Medina v. Catholic Health Initiatives*, 2014 WL 4852264, *2 n.9 (D. Colo. Sept. 30, 2014), *R&R adopted in part, rejected in part on other grounds*, 2014 WL 4852272 (D. Colo. Sept. 30, 2014).  Exhibit 1 is a policy issued by Anthem Colorado under which Plaintiff was insured during the relevant period, and there is no reasonable dispute regarding its authenticity.

104(7), Plaintiff does not expressly allege that PHS 2706(a) and its state law analog (C.R.S. §
10-16-107.7) are enforceable terms of her plan, but, she nonetheless purports to enforce those
laws as terms of her plan by alleging that they entitle her to increased benefits.  *See id.* ¶¶ 16-18,
21-23, 40-42.

The SAC refers to PHS 2706(a), the Colorado analog at C.R.S. § 10-16-107.7, and
repealed Colorado statute C.R.S. § 10-16-104(7) as "provider non-discrimination" statutes.  *Id.*
¶¶ 10, 16, 18.  The SAC also contains a passing reference to C.R.S. 10-16-104(5.5), which
Plaintiff calls "a mental health parity act."  *Id.* ¶¶ 13-14.  Plaintiff alleges that these federal and
state laws required that OON services rendered by mental health providers be reimbursed at the
"same rate" or based on the same "RVU" paid to medical providers.  *Id.* ¶¶ 10-18, 27, 40, 59, 64,
73, 82.  Defendants reserve all rights to challenge, at the appropriate time, Plaintiffs'
interpretation of these statutes, including what she asserts they require with regard to
reimbursement for services rendered by mental health providers.  Notably, PHS 2706(a) and the
Colorado analog do not define what it means to "discriminate with respect to participation under
the plan or coverage" against a licensed health care provider.  To date, no court has interpreted
these statutes, PHS 2706(a) was adopted without meaningful discussion in its legislative history,
and the departments charged with implementing PHS 2706(a) have stated that no enforcement
action will be taken against a group health plan as long as the plan is "using a good faith,
reasonable interpretation" of PHS 2706(a).[3]

---

[3] *See* FAQs About Affordable Care Act Implementation at 4,
https://www.cms.gov/CCIIO/Resources/Fact-Sheets-and-FAQs/Downloads/ACA-FAQs-Part-
XXVII-MOOP-2706-FINAL.pdf (last visited Jan. 17, 2016).

## LEGAL STANDARD

A motion to dismiss should be granted when the complaint fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 669 (2009). Thus, to survive a motion to dismiss, a pleading must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citation omitted). Consistent with *Twombly* and *Iqbal*, the Supreme Court has emphasized that courts in ERISA class actions have an obligation to engage in a "careful, context-sensitive scrutiny of a complaint's allegations" to ensure that the complaint properly states a claim for relief. *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2470-71 (2014).

## ARGUMENT

I.  **PLAINTIFF'S DECLARATORY JUDGMENT CLAIM SHOULD BE DISMISSED TO THE EXTENT IT IS NOT BROUGHT UNDER 1132(A)(1)(B).**

In Count I, Plaintiff seeks a declaration regarding her rights to plan benefits pursuant to C.R.S. §§ 10-16-104(7) and 10-16-107.7, which Plaintiff alleges are enforceable "plan terms" and entitle her to additional reimbursement under her plan. *See* Background *supra*; SAC ¶¶ 59-62. Unlike Counts II-IV, Count I is not expressly brought under ERISA. To the extent Plaintiff's declaratory judgment claim is brought under any law other than under 1132(a)(1)(B), it should be dismissed because 1132(a)(1)(B) provides Plaintiff with the exclusive avenue to clarify her entitlement to additional benefits under her ERISA plan. Plaintiff has no private right of action to enforce the Colorado insurance laws at issue in Count I,[4] and she cannot use a

---

[4]  There is no express private right of action, nor any basis to imply one as those provisions are enforceable by the Commissioner of Insurance, *see, e.g.*, C.R.S. §§ 10-1-103(1), 10-1-108(7),

declaratory judgment claim to make an end-run around the absence of a private right of action under the Colorado insurance laws. *See Gaalla v. Citizens Med. Ctr.*, 2010 WL 2671705, at \*4 (S.D. Tex. June 30, 2010) (citing *Durr v. Strickland*, 602 F.3d 788, 789 (6th Cir. 2010)). Instead, Plaintiff may only seek to enforce those statutes, to the extent they become plan terms, through a claim for plan benefits. *See Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 911-13 (7th Cir. 2013) (recognizing that "when an employee-benefits plan includes an insurance policy, contract terms mandated by state insurance law become plan terms" enforceable through an benefits claim under 1132(a)(1)(B)). Moreover, because Plaintiff's plan is an ERISA plan, any attempt by Plaintiff to assert a claim for plan benefits "'outside of, or in addition to, ERISA's remedial scheme'" is completely preempted by ERISA. *See* Op. at 17 (quoting *Davila*, 542 U.S. at 217-18) (dismissing Plaintiff's common law fiduciary duty claim for benefits as completely preempted); *see also Arana v. Oschsner Health Plan*, 338 F.3d 433, 438 (5th Cir. 2003) (finding state law declaratory judgment claim for ERISA plan benefits completely preempted).[5]

## II.    PLAINTIFF'S CLAIMS UNDER 1132(A)(3) SHOULD BE DISMISSED BECAUSE THEY IMPERMISSIBLY DUPLICATE HER 1132(A)(1)(B) BENEFITS CLAIMS.

Plaintiff's 1132(a)(3) claims in Counts II and IV should be dismissed because those claims are nothing more than Plaintiff's improper attempt to repackage her denial-of-benefits claims as independent claims for breach of fiduciary duty and for injunction and surcharge.

In *Varity*, the Supreme Court explained that 1132(a)(3) is a "'catchall' provision [that] act[s] as a safety net, offering appropriate equitable relief for injuries . . . not elsewhere

---

10-16-109, and to do so would frustrate the purposes of Colorado's legislative scheme. *See Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913, 923 (Colo. 1997) (en banc).

[5] Because Count I is completely preempted both under Supreme Court authority and the reasoning of this Court's Opinion, Defendants do not here address the separate argument that Plaintiff's declaratory judgment claim is also expressly preempted.

adequately remed[ied]" under 1132. 516 U.S. at 512. In considering whether such "catchall" relief is appropriate, the Supreme Court has instructed that courts should "respect the 'policy choices reflected in the inclusion of certain remedies and the exclusion of others.'" *Id.* at 515 (citation omitted). That includes the limited remedies under 1132(a)(1)(B) for claims for plan benefits and for "breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims." *Id.* at 512. There, the Supreme Court found that plaintiffs' 1132(a)(3) claim was appropriate because plaintiffs did not seek plan benefits as required to state an 1132(a)(1)(B) claim and had no remedy for individual harms under 1132(a)(2), and therefore "[t]hey must rely on [1132(a)(3)] or else they have no remedy at all." *Id.* at 515.

*Varity* thus establishes that a plaintiff may not circumvent Congress's deliberate limits on remedies for claims for plan benefits under 1132(a)(1)(B) simply by declaring an entitlement to equitable relief under 1132(a)(3). Instead, to state an 1132(a)(3) claim, a plaintiff must allege "injuries caused by violations that [1132] does not elsewhere adequately remedy." *Id.* at 512. In other words, a plaintiff must allege *an injury distinct from the denial of plan benefits* that otherwise would not be adequately remedied by other subsections of 1132(a) and thereby make the otherwise unavailable "catchall" relief available to redress plaintiff's injury. *Id*.

Following *Varity*, the Tenth Circuit has held that, because 1132(a)(3) is only a "catch-all" provision, "consideration of a claim under [1132(a)(3)] is improper when [plaintiff] . . . states a cognizable claim under [1132(a)(1)(B)], a provision which provides adequate relief for [the] alleged [ ] injury." *Lefler v. United Healthcare of Utah*, 72 Fed. Appx. 818, 826 (10th Cir. 2003)); *see also Moore v. Berg Enter.*, 1999 WL 1063823, at *2 n. 2 (10th Cir. Nov. 23, 1999) (a plaintiff cannot "repackage his 'denial of benefits claim' as a claim for 'breach of fiduciary

8

duty'" under 1132(a)(3)) (quoting *Varity*, 516 U.S. at 513).  In *Lefler*, the Tenth Circuit affirmed

dismissal on summary judgment of plaintiff's duplicative 1132(a)(3) claim even where it found

that plaintiff's 1132(a)(1)(B) claim failed on the merits.  72 Fed. Appx. at 826.  And, following

*Lefler*, the vast majority of courts in this Circuit have dismissed improperly "repackaged"

1132(a)(3) claims for failure to state a claim.  *See* Sections II.B.-C. *infra*.[6]

Here, as explained below, Plaintiff's SAC makes clear that her 1132(a)(3) claims, like her

1132(a)(1)(B) claims, are based on the same, single alleged injury—the underpayment of

benefits under Plaintiff's plan.  If proven, Plaintiff's 1132(a)(1)(B) claims could provide Plaintiff

with adequate relief for that alleged injury, foreclosing any claims for additional or alternative

equitable relief under 1132(a)(3). Because Plaintiff has not pled an injury distinct from the denial

of benefits, Rule 12 dismissal of Plaintiff's 1132(a)(3) is not premature and should be granted.

### A.    Plaintiff's 1132(a)(3) Claims Are Based on Underpayment of Plan Benefits.

Plaintiff's 1132(a)(3) claims, just like her 1132(a)(1)(B) claims, are expressly and in

substance based on allegations that Anthem Colorado underpaid benefits owed under the terms

of her plan.  Indeed, the Court previously recognized that Plaintiff's common law breach of

---

[6] *See also, e.g.*, *Holbrooks v. Sun Life Assur. Co. of Canada*, 2012 WL 2449850, at *2 (D. Kan. June 26, 2012); *Benson v. Prudential Financial, Inc.*, 2007 WL 4334026, at *7 (D.N.M. Aug. 17, 2007); *Powers v. BlueCross Blue Shield of Illinois*, 947 F. Supp. 2d 1139, 1143 (D. Colo. 2013); *Meyer v. Unum Life Ins. Co.*, 2013 WL 1411776, at *7 (D. Kan. Apr. 8, 2013); *Huynh v. Liberty Life Assurance Co. of Boston*, 2011 WL 2340800, at *6 (D.N.M. Mar. 23, 2011); *Hyde v. Benicorp Ins. Co.*, 363 F. Supp. 2d 1304, 1306 (D. Kan. 2005); *Fulghum v. Embarq Corp.*, 2008 WL 5109781, at *10 (D. Kan. Dec. 2, 2008).  The two cases located by Defendants holding otherwise are distinguishable.  *See Rogers v. Boeing Co. Emp. Retirement Plan*, 2010 WL 4117558, at *4 n.2 (D. Kan. Oct. 19, 2010) (1132(a)(3) fiduciary duty claim was not based only alleged denial of plan benefits but also on based on separate injuries not adequately remedied under 1132(a)(1)(B)); *Sigai v. Sedgwick Claims Mgmt. Servs., Inc.*, 2011 WL 6151410, at *3 (D. Kan. Dec. 12, 2011) (declining to dismiss 1132(a)(3) fiduciary duty claim in part because defendants did not concede that plaintiff had stated a claim for denial of benefits that, if proven, could, be remedied under (a)(1)(B) and thus did not show that 1132(a)(3) claim was duplicative).

fiduciary duty claim in Count IV of the FAC was based on an "alleged failure to pay benefits" and thus was appropriately brought under 1132(a)(1)(B). Op. at 14 (citing *Varity*, 516 U.S. at 512) (directing that Plaintiff could amend her pleading to bring her fiduciary duty claim under 1132(a)(1)(B)). That same alleged breach of fiduciary duty was the basis for Plaintiff's request for injunction and surcharge in Count II of the FAC. *See* FAC at ¶ 49. And, the Court also previously recognized that Plaintiff's claim for injunction and surcharge under 1132(a)(3) in Count II and for plan benefits under 1132(a)(1)(B) in Count III of the FAC were "based on the same alleged actions" (that is, the alleged improper "reimbursement provided by Anthem [Colorado] for psychiatric care under her medical insurance policy"). Op. at 2, 10. Like the FAC, the SAC does not allege any injury distinct from the alleged underpayment of plan benefits in support of Plaintiff's 1132(a)(3) claims in Counts II and IV. To the contrary, the fact that Plaintiff's breach of fiduciary duty claim in Count IV is now brought under *both* 1132(a)(1)(B) *and* 1132(a)(3) and is based on the *same allegations* shows that the only alleged breach of fiduciary duty at issue in this case concerns the same alleged underpayment of plan benefits.[7]

Because Plaintiff does not allege any injury distinct from the alleged underpayment of plan benefits, her 1132(a)(3) claims are nothing more than improper attempts to repackage denial of benefit claims under 1132(a)(1)(B). *See Lefler*, 72 Fed. Appx. at 826; *Holbrooks*, 2012 WL 2449850, at *2 (dismissing plaintiff's 1132(a)(3) claims for equitable relief that were "not [ ]

---

[7] *See* SAC ¶¶ 42 (alleging that Defendants engaged in unfair and discriminatory reimbursement practices that resulted in participants receiving unpaid benefits and less reimbursement); 64, 66, 68 (injunctive relief claim based on allegations of "reimbursement practices *that deprive benefits* to Plaintiff and Class," and "*reimburse[ment of] mental health services below levels authorized by the plans and required by law*"); 80-84 (fiduciary duty claim based on alleged "*den[ial] or reduc[tion of] benefits* [under] the Plans or applicable law") (emphases added).

10

alternative claims for relief under [1132(a)(3)]," but rather a "claim of a denial of benefits in a slightly repackaged format"); *Benson*, 2007 WL 4334026, at \*7 (finding plaintiff precluded from asserting 1132(a)(3) claims where he "failed to establish any meaningful distinction" between his 1132(a)(3) and 1132(a)(1)(B) claims).

## B.    Plaintiff's Alleged Injury Is Adequately Remedied Through 1132(a)(1)(B).

On their face, Plaintiff's requests for equitable relief under 1132(a)(3) all seek redress for the alleged underpayment of benefits.[8]  This is consistent with the fact that Plaintiff points to no distinct injury beyond the alleged underpayment of plan benefits.  But this Court has previously recognized that 1132(a)(1)(B) "provides an adequate and appropriate remedy for Anthem['s] [ ] alleged failure to pay benefits."  Op. at 13-14.  Specifically, 1132(a)(1)(B) "allows a suit to recover benefits due under the plan, to enforce rights under the terms of the plan, and to obtain a declaratory judgment of future entitlement to benefits under the provisions of the plan contract." *Id.* at 13 (citing *Firestone Tire & Rubber Co. & Bruch*, 489 U.S. 101, 108 (1989)); *see also Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146-47 (1985) (1132(a)(1)(B) allows plaintiff "to recover accrued benefits, to obtain a declaratory judgment that she is entitled to benefits under the provisions of the plan contract, and to enjoin the plan administrator from improperly refusing to pay benefits in the future").  It also permits recovery of the pre-judgment interest and

---

[8]  In Count II, Plaintiff seeks to enjoin Defendants from "reimbursing mental health services below the levels authorized by the plans and required by law" and "[t]o the extent such relief does not duplicate the relief otherwise available under ERISA, . . . restitution, disgorgement, or surcharge sufficient to compensate Plaintiff and the Class for the discriminatory reimbursement rates."  SAC ¶¶ 66, 68.  In Count IV, Plaintiff seeks "an injunction prohibiting Anthem from continuing to engage in the conduct detailed in this Complaint" (i.e., the underpayment of plan benefits) and "to the extent such relief does not duplicate relief otherwise available under ERISA, . . . an order requiring Defendants to restore losses to the Plan and participants" resulting from Defendants' alleged "reimburse[ement] for mental health services below the levels authorized by the plans and required by law.").  *Id.* at ¶¶ 75, 86.

11

attorneys' fees Plaintiff seeks as well, SAC at ¶¶ 69, 78, 87.  *See Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 372, 374 (6th Cir. 2015).  Accordingly, because 1132(a)(1)(B) "provides an adequate and appropriate remedy" for the alleged failure to pay plan benefits, Plaintiff is precluded from slapping an equitable label on her request to try to pursue "catch-all" equitable relief under 1132(a)(3) to redress that same alleged injury.  *See Lefler*, 72 Fed. Appx. at 826; *see also, e.g.*, *Meyer*, 2013 WL 1411776, at *6-*7 (concluding that plaintiff's ostensibly separate 1132(a)(3) claim for injunctive relief arose from an injury for which plaintiff "could be made whole" that could be wholly redressed under 1132(a)(1)(B) and, therefore, was "indisputably a claim for . . . benefits"); *Hyde*, 363 F. Supp. 2d at 1307-09; *Fulghum*, 2008 WL 5109781, at *10.

> **C.    Plaintiff's Claims For Equitable Surcharge, Restitution or Disgorgement Do Not State Alternative Claims For Relief.**

The Court previously declined to dismiss Plaintiff's 1132(a)(3) claim in Count II of the FAC on the ground that the surcharge remedy sought under 1132(a)(3) was not "the same" as the relief sought under 1132(a)(1)(B).  Op. at 10.  Specifically, the Court focused on Plaintiff's surcharge claim and found that it "seeks equitable relief in the form of recovery of amounts Defendant may have improperly gained from the alleged breach of fiduciary duty, while Plaintiff's [1132(a)(1)(B)] claim seeks payment of benefits."  *Id.*; *see also id.* at 10 n. 8 (recognizing that request for injunctive relief seeking surcharge *could* be brought under 1132(a)(1)(B)).  That finding was informed by the Court's conclusion that it was "unclear" from the parties' briefing "whether recovery of a 'surcharge' amounts to anything other than recovery of reimbursement for reduced benefits."  *Id.* at 7 n. 6.  Both Plaintiff's SAC and case law considering similar 1132(a)(3) claims demonstrate that—putting aside Plaintiff's characterization of her claim or the relief she seeks—Plaintiff's 1132(a)(3) claims are, in substance, no more than

"requests for recovery of reduced benefits" under Plaintiff's plan that should be pursued only under 1132(a)(1)(B).  As explained below, affixing different labels to the claim ("equitable relief") or seeking a different type of damages for the alleged injury ("surcharge" or "restitution" or "disgorgement") do not change this result.

In Counts II and IV of the SAC, Plaintiff's requests for surcharge, restitution or disgorgement expressly seek "to *compensate* Plaintiff and the Class for the *discriminatory reimbursement rates imposed on [OON] behavioral health providers*," based on the assertion that "*[u]nder the terms of Plaintiff's plan*" she is "entitled to obtain [OON] mental health services without being subject to such *reimbursement practices*."  SAC ¶¶ 64, 68, 82, 86 (emphases added).  This is the same as a request for *payment of reduced reimbursement* of mental health benefits allegedly owed *under Plaintiff's plan*.  Perhaps recognizing this, Plaintiff only seeks such equitable relief "to the extent [it] does not duplicate relief otherwise available under ERISA."  *Id.* ¶¶ 68, 86.  But nowhere in the SAC does Plaintiff allege any facts showing how such relief is "not duplicative" of relief available under 1132(a)(1)(B), and her express claims under 1132(a)(1)(B) belies any argument that relief under 1132(a)(1)(B) is unavailable. Although Plaintiff attempts to assign an equitable label to her requested relief, the substance of her so-called "surcharge, restitution or disgorgement" claim is a demand to receive "deprive[d] benefits" under her plan.  *Id.* ¶¶ 65, 87.  Accordingly, Plaintiff's 1132(a)(3) and 1132(a)(1)(B) claims do not "seek[] two different recoveries" as this Court previously held, but instead seek duplicative "recovery of reimbursement for reduced benefits."  Op. at 7, nn. 6, 10.  This conclusion is consistent with ERISA's remedial scheme because the only injury Plaintiff alleges is the denial of benefits—an injury for which she can be made whole under 1132(a)(1)(B).

13

Further underscoring the fact that Plaintiff's equitable relief claims are merely re-labeled claims for benefits is Plaintiff's failure to plausibly allege a constructive trust or unjust enrichment as required to state a claim for restitution, disgorgement or surcharge.  A claim at equity for restitution or disgorgement is "based on defendant's gain, not a plaintiff's loss" and thus is "limited to situations where money or property" belonging to the plaintiff "can be traced to particularly funds or property in defendant's possession." *Callery v. U.S. Life Ins. Co. in City of New York*, 392 F.3d 401, 406 (10th Cir. 2004).  An equitable request for surcharge also is based on a constructive trust theory.  Op. at 9-10 ("a request for a surcharge is essentially an unjust enrichment claim" to recover "'monetary compensation for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment'") (quoting *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1880 (2011)).  Plaintiff's requests for restitution, disgorgement or surcharge fail to state a claim because they seek compensation for "deprive[d] benefits," SAC ¶¶ 65, 87—not specifically identifiable funds that were gained by Defendants and that are distinct from Defendants' general assets.  *See Callery*, 392 F.3d at 406 (rejecting equitable restitution claim under 1132(a)(3) where plaintiff did not seek "to regain particular funds or property" but instead the full value of her insurance policy benefits); *Arapahoe Surgery Ctr. v. Cigna Healthcare*, 2015 WL 1041515, at *3, *4 (D. Colo. Mar. 6, 2015) (finding overpayments defendant allegedly paid to plaintiff as a result of billing misconduct were "not properly the subject of a [1132](a)(3) claim" for equitable restitution because mere designation as "overpayments" did not make the funds "separately identifiable").  Similarly, the SAC lacks any factual allegations that Defendants hold funds necessary to provide Plaintiff "make-whole relief," *Amara*, 131 S. Ct. at 1880, that are any different than her request for unpaid benefits, for

14

which adequate relief is available under 1132(a)(1)(B).

Again, the Tenth Circuit's decision in *Lefler* is instructive. There, plaintiffs claimed that defendant improperly calculated co-payment amounts and *reduced their plan benefits*, and they sought payment of benefits under 1132(a)(1)(B) and equitable relief under 1132(a)(3) to remedy their alleged injury. 72 Fed. Appx. at 826. Similar to Plaintiff's equitable relief claims here, plaintiffs sought "a constructive trust for monies . . . improperly held" as a result of defendant's alleged "breach of fiduciary duty" in denying plan benefits. *Id.* at 822. Focusing on the *adequacy* of 1132(a)(1)(B) to remedy injuries that the Tenth Circuit found were nothing more than underpaid plan benefits—rather than the equitable *labels* attached to plaintiffs' 1132(a)(3) claim for constructive trust—the Tenth Circuit held that plaintiffs' remedies for an alleged breach fiduciary duty in paying plan benefits were found exclusively in 1132(a)(1)(B). *Id.* at 826. Thus, based on *Lefler* and amendments in the SAC, Plaintiff's "claim for equitable relief in the form of recovery of amounts Defendant may have improperly gained from the alleged breach of fiduciary duty" in denying plan benefits is at bottom indistinct from her "[1132(a)(1)(B)] claim seek[ing] payment of benefits." *See* Op. at 10.[9]

Numerous other courts have similarly held that a plaintiff is precluded from pursuing

---

[9] The Court previously distinguished *Lefler* on the ground that the fiduciary duty claim that was dismissed as duplicative was based on the defendant's alleged "'fail[ure] to inform the class of its discounting practice and improperly denying, de facto, benefits under the plan.'" Op. at 10 (quoting *Lefler*, 72 Fed. Appx. at 826). The Court likewise distinguished the Colorado district court's decision in *Powers* on the ground that it "does not mention a surcharge" and dismissed a duplicative breach of fiduciary duty claim for wrongful denial of benefits. *Id.* (quoting *Powers*, 947 F. Supp. 2d at 1143). As Defendants have explained, the SAC makes clear that Plaintiff's fiduciary duty claim, like the fiduciary duty claims in *Lefler* and *Powers*, is based only on the alleged wrongful denial of plan benefits, and thus Plaintiff's 1132(a)(3) requests for equitable relief, like the requests for relief in *Lefler* and *Powers*, are in substance based on a single injury and the same theory of recovery for denied plan benefits.

15

1132(a)(3) claims for equitable surcharge, restitution or disgorgement of plan benefits on the ground a defendant's *denial of benefits* and defendant's wrongful *withholding of benefits in breach of its fiduciary duty* "comprise a single injury" for which 1132(a)(1)(B) provides adequate relief. *Rochow*, 780 F.3d at 374; *see also Talkin v. Deluxe Corp.*, 2007 WL 1469648, at * 10 (D. Kan. May 18, 2007) (finding that 1132(a)(3) claim for "equitable restitution of all savings or gains realized by [defendant]" was "really a request for back pay and lost benefits" under plan "not recoverable under [1132](a)(3)"); *Horne v. J.C. Penney Corp.*, 2014 WL 6060434, *4 (M.D. La. Nov. 12, 2014) (dismissing 1132(a)(3) claim for "equitable surcharge" of benefits withheld where it was "at bottom, one and the same . . . [as her] claim for denial of benefits under § 1132 (a)(1)(B)"). Moreover, even if Plaintiff had sought in the SAC additional relief, such an award of defendant's profits, on top of her request for payment for benefits (which she has not done), that request would be "plainly beyond and inconsistent with ERISA's purpose to make claimants whole." *Rochow*, 780 F.3d at 372.

In sum, Plaintiff has asserted no distinct injury as a result of Defendants' alleged breach of fiduciary duty, and the only injury she has alleged—underpayment of plan benefits—can be adequately remedied through 1132(a)(1)(B). Thus, the Court should reject Plaintiff's attempts to request additional or alternative "catchall" relief under 1132(a)(3) by couching her requests for payment of benefits in equitable terms of "surcharge, disgorgement, or restitution."

### D.    Dismissal of Plaintiff's 1132(a)(3) Claims Is Not Premature.

Relying on the Second Circuit's decision in *New York Psychiatric Ass'n, Inc. v. UnitedHealth Group*, 798 F.3d 125 (2d Cir. 2015), this Court previously found that dismissal of Plaintiff's duplicative 1132(a)(3) claim was "premature." Op. at 10 n. 8. The Second Circuit's

16

holding, however, is inconsistent with persuasive Tenth Circuit authority that duplicative

1132(a)(3) claims are "foreclosed" as a matter of law, without regard to whether a plaintiff will

succeed on the merits of an 1132(a)(1)(B) claim.[10]

As discussed above, in *Lefler* the Tenth Circuit explicitly stated that "*consideration* of a

claim under [1132(a)(3)] is improper when the Class, as here, *states a cognizable claim* under

[1132(a)(1)(B)]." 72 Fed. Appx. at 826 (emphases added). In the same decision, the Tenth

Circuit affirmed the district court's finding that the plaintiff's 1132(a)(1)(B) claim failed on the

merits. *Id.* at 826. Thus, as other courts have recognized, the Tenth Circuit's analysis in *Lefler*

"indicates that the rule [against duplicative 1132(a)(3) claims] is not tied to any procedural

status, and that dismissal [under Rule 12] may be appropriate even if the claim under

[1132](a)(1)(B) ultimately proves unfounded on the merits." *Holbrooks*, 2012 WL 2449850, at

*2; *see also Huynh*, 2011 WL 2340800, at *6 ("The Tenth Circuit is unequivocal that Plaintiff

may not seek equitable relief under § 1132(a)(3) where she has a remedy under §1132(a)(1)(B)

available to her."). Consistent with *Lefler*, the vast majority of courts in this Circuit have

dismissed duplicative 1132(a)(3) claims for benefits on a Rule 12 motion, prior to a

determination on the merits of plaintiffs' 1132(a)(1)(B) claims. *See, e.g.*, *Holbrooks*, 2012 WL

2449850; *Benson*, 2007 WL 4334026, at *5, *6; n. 6 *supra*. This Court should do the same.

---

[10] The Supreme Court's decision in *Amara*, 131 S. Ct. 1866, as well as the other cases cited in footnote 8 of the Court's Opinion declining to dismiss 1132(a)(3) claims are distinguishable because they were based on alleged injuries distinct from the denial of plan benefits. *See Amara*, 131 S. Ct. at 1870, 1881-82 (1132(a)(3) claim premised on alleged misleading statement regarding changes to plan benefits); *Silva v. Metropolitan Life Ins. Co.*, 762 F.3d 711, 726 (8th Cir. 2014) (1132(a)(3) claim based on alleged failure to provide summary plan descriptions); *Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 882 (7th Cir. 2013) (1132(a)(3) claim based on alleged misinformation from plan representative); *McGravy v. Metropolitan Life Ins. Co.*, 690 F.3d 176, 171 (4th Cir. 2012) (1132(a)(3) claim based on misrepresentation regarding coverage).

17

**III.    TO THE EXTENT PLAINTIFF PURPORTS TO BRING 1132(A)(3) CLAIMS THAT ARE NOT BASED ON A DENIAL OF PLAN BENEFITS, THOSE CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.**

**A.    Plaintiff Fails to State Breach of Fiduciary Duty Claims Based on Allegations Regarding the Development of Company-Wide Reimbursement Policies.**

As explained above in Section II, Plaintiff's 1132(a)(3) claims in Counts II and IV are based on allegations that Defendants breached their fiduciary duties in interpreting and applying the terms of Plaintiff's plan and improperly denying plan benefits—and thus are properly asserted only under 1132(a)(1)(B), not 1132(a)(3).  To the extent Plaintiff purports to premise her 1132(a)(3) fiduciary duty claims on allegations that are not duplicative of her 1132(a)(1)(B) claims—such as allegations regarding Defendants' establishment of company-wide reimbursement policies without regard to plan terms—those claims must fail because they do not plausibly allege that Defendants' were acting as fiduciaries by exercising their discretion in administering Plaintiff's plan.  To the extent the SAC's allegations about company-wide reimbursement are so related, these allegations can be remedied through Plaintiff's 1132(a)(1) claims, and Defendants are not moving to dismiss them as to Anthem Colorado.  (For the reasons set forth in Section IV below, Anthem, Inc. is not a proper defendant to Plaintiff's 1132(a)(1)(B) claim.)  To the extent these allegations are not tied to the administration of Plaintiff's plan, however, they fail to plausibly allege Defendants were acting as fiduciaries as required to state a claim for breach of fiduciary duty.

Under ERISA, an actor "is a fiduciary with respect to a plan to the extent he exercises any discretionary control respecting management of such plan" or "he has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A).  Fiduciary status under ERISA is functional:  "regardless of status or title, parties

18

are only plan fiduciaries to the extent they are performing one of the functions identified in the definition" of fiduciary. *Coldesina v. Estate of Simper*, 407 F.3d 1126, 1132 (10th Cir. 2005) (citing *Varity*, 516 U.S. at 498; 29 C.F.R. § 2509.75-8 at D-2). Specifically relevant here, "[a] plan administrator engages in a fiduciary act when making a discretionary determination about whether a claimant is entitled to benefits under the terms of the plan documents." *Varity*, 516 U.S. at 511. Accordingly, in assessing whether plaintiff has stated a claim for fiduciary duty, a court should carefully assess whether the defendant was "performing a fiduciary function[ ] when taking the action subject to complaint." *Pegram v. Herdich*, 530 U.S. 211, 226 (2000).

For the reasons explained above in Section II, Plaintiff's fiduciary duty claims under 1132(a)(1)(B) and 1132(a)(3) all only seek to challenge the discretionary aspects of Defendants' alleged benefits determinations under the terms of Plaintiff's plan—claims that can only be brought under 1132(a)(1)(B) (and, as to Anthem, Inc., not at all, *see* Section IV *infra*). To the extent that Plaintiff seeks to avoid dismissal of her duplicative 1132(a)(3) by arguing that her 1132(a)(3) claims challenge the substance of Defendants' company-wide internal reimbursement policies *without regard to the interpretation and application of plan terms*—those claims fail to plausibly allege Defendants were exercising discretion in administering the plan as required to plead that Defendants were acting in a fiduciary capacity.[11] *See Larson*, 723 F.3d at 917 (affirming dismissal of plaintiffs' breach of fiduciary duty claims that did "not attack the discretionary aspects of claims administration [i.e.,] individual eligibility and benefits

---

[11] For example, the SAC alleges that "Anthem[, Inc.] sets policies across its subsidiaries, including coverage policies and national policies for the methods Anthem[, Inc.]'s subsidiaries use to sets provider reimbursement rates and to apply medical necessity standards." SAC ¶ 5. It further sets forth allegations regarding Defendants' "system of reimbursement" and changes to "policies internally to reduce reimbursement for behavioral health care services even further" which are "not justified by any changes in plan terms." *Id.* ¶¶ 31, 44, 45.

determinations" but instead, challenged defendant's decisions to require copays for chiropractic care in violation of Wisconsin's chiropractic mandate law, which "'are not themselves fiduciary acts'") (quoting *Pegram*, 530 U.S. at 226) (emphasis in original). Rather, Plaintiff's allegations regarding Defendants' development of internal company-wide reimbursement policies are the sort of non-fiduciary "business decisions" that do not state a claim for fiduciary duty. *See Am. Psychiatric Assoc. v. Anthem Health Plans*, 50 F. Supp. 3d 157, 169-70 (D. Conn. 2014) (dismissing 1132(a)(3) fiduciary duty claims "challeng[ing] [defendants'] rate setting on a 'system-wide' basis 'regardless of the particulars of the individual plan'"); *see also DeLuca v. Blue Cross Blue Shield of Mich.*, 628 F.3d 743, 747 (6th Cir. 2010) (insurer was "clearly" "not acting as a fiduciary when it negotiated the challenged rate changes, principally because those business dealings were not directly associated with the benefits plan at issue here but were generally applicable to a broad range of health-care consumers").

**B.    Plaintiff Cannot Seek to Enforce Colorado and Federal Laws Except Through An ERISA Claim For Benefits.**

Plaintiff cannot bring an independent 1132(a)(3) claim for alleged violations of the Colorado and federal laws invoked in the SAC (separate from a claim for plan benefits pursuant to those laws) for another reason. Because there is no private right of action to enforce those laws, they are only enforceable to the extent such laws "become ERISA plan terms" as Plaintiffs contend, and claims for plan benefits, for the reasons set forth in Section II, can only be brought under 1132(a)(1)(B).

Plaintiff's 1132(a)(3) claims are based in part on alleged violations of Colorado state insurance law, C.R.S. §§ 10-16-104(5.5), 10-16-104(7), 10-16-107.7. As discussed above, there is no express or implied private right of action to enforce those state laws, and they are

20

actionable only to the extent they become terms of Plaintiff's plan.  *See* Section I *supra*.

Likewise, with respect to PHS 2706(a), as Plaintiff herself acknowledges, "[t]he ACA itself does not provide for an independent private right of action to enforce its provisions," SAC ¶ 16.  Section 2706(a) is codified at 42 U.S.C. § 300gg-5 and, like the rest of 42 U.S.C. § 300gg *et seq.*, applies to "group health plans" pursuant to 29 U.S.C. § 1185d (subject to other ERISA provisions).  Like other parts of § 300gg *et seq.*, PHS 2706 does not provide for a private right of action,  but does provide for enforcement by the States and the Secretary of Health and Human Services pursuant to 42 U.S.C. § 300gg-22.  *See Warren Pearl Const. Corp. v. Guardian Life Ins. Co. of Am.*, 639 F. Supp. 2d 371, 376-77 (S.D.N.Y. 2009) (finding no "direct or indirect" private right of action for purported violations of § 300gg-12(a) because "only the Secretary of Health and Human Services or other authorized state authorities" may enforce the statute); *O'Donnell v. Blue Cross Blue Shield of Wyo.*, 173 F. Supp. 2d 1176, 1180 (D. Wyo. 2001) (no private right of action for claims concerning pre-existing conditions pursuant to § 300gg-3 *et seq.* because the statute is enforced by the States and Secretary).

Because the Colorado state insurance laws and PHS 2607(a) are not independently actionable, Plaintiff can enforce these laws only to the extent they become enforceable terms in a group health plan and, as such, only through her claim for benefits under her plan.  *See Larson*, 723 F.3d at 911-13 (recognizing that "when an employee-benefits plan includes an insurance policy, contract terms mandated by state insurance law become plan terms" enforceable under 1132(a)(1)(B)); *Am. Psychiatric. Assoc.*, 50 F. Supp. 3d at 169, n.12 (analyzing similar claims based on alleged violations of 29 U.S.C. § 1185a(a)(3) and concluding that "[s]ince there is no private right of action under the Parity Act to the extent that Plaintiffs seek to challenge

21

Defendants' alleged failure to comply with 'the federal law mandate of parity,' they must do so through their respective insurance plans").  Because claims for plan benefits can only be brought under 1132(a)(1)(B), *see* Section II *supra*, Plaintiff has no independent, actionable 1132(a)(3) claim for violations of state and federal law.

## IV.  ANTHEM, INC. IS NOT A PROPER DEFENDANT TO PLAINTIFF'S DECLARATORY JUDGMENT AND 1132(A)(1)(B) CLAIMS.

The Court should dismiss Count I and the 1132(a)(1)(B) claims in Counts III and IV as to Anthem, Inc.—Anthem Colorado's Indiana-based parent company, SAC ¶¶ 3, 4—for the additional reason that Plaintiff has not plausibly alleged that Anthem, Inc. is a proper defendant.

### A.  Anthem, Inc. Is Not a Proper Defendant to Plaintiff's 1132(a)(1)(B) Claims.

The Tenth Circuit has held that the only proper defendants to a claim for benefits under 1132(a)(1)(b) are the "the plan as an entity and plan administrators" and "possibly" the "named fiduciary." *Geddes v. United Staffing Alliance Employee Med Plan*, 469 F.3d 919, 931 (10th Cir. 2006).  Here, the SAC nowhere alleges that Anthem, Inc. is the "plan," the designated "plan administrator," or the "named fiduciary" of Plaintiff's plan.[12]  Moreover, any attempt to hold Anthem, Inc. liable as such is undermined by the terms of Plaintiff's policy referenced in the SAC, which does *not* designate Anthem, Inc. as the plan administrator and expressly designates *Anthem Colorado* as the "claims fiduciary."  *See* Anthone Decl., Ex. 1 at 53, 65.

Instead, in support of Plaintiff's 1132(a)(1)(B) claims against Anthem, Inc., the SAC

---

[12]  *See* 29 U.S.C. § 1002(3) (defining "plan" as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan"); § 1002(16) (defining "plan administrator" as (i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.").

alleges that "[i]n administering their ERISA plans, Defendants acts [sic] as fiduciaries."  SAC at

¶¶ 74, 83.  But, as described above, Anthem, Inc. is not the named fiduciary under Plaintiff's

plan.  And because the SAC's allegations concerning ultimate control over the decision to pay

benefits are directed to *Anthem Colorado*, not Anthem, Inc., Plaintiff cannot rely on the handful

of cases in this Circuit that could be read to suggest that, in addition to the plan, named plan

administrator, and named fiduciary, "an entity with control over the ultimate decision to pay or

not pay benefits" may be liable under 1132(a)(1)(B).  *See, e.g.*, *Basquez v. East Central OK Elec.

Co-op., Inc.*, 2008 WL 906166, at *6 (E.D. Okla. Mar. 31, 2008).  Specifically, the SAC alleges

Plaintiff's "health insurance policy [was] provided by *Anthem Colorado*," that Plaintiff's claims

were submitted to "*Anthem Colorado*," and that "*Anthem Colorado* imposed an [OON]

Maximum Allowable Amount" for Plaintiff's claims.  SAC ¶¶ 23, 25, 41 (emphases added).

Further, any suggestion that Anthem, Inc. had ultimate control over the decision to pay benefits

for Plaintiff's claims is undermined by the health insurance policy referenced in the SAC which

provides that Anthem Colorado, not Anthem, Inc., shall have "final" decision-making authority

to "how [Plaintiff's] benefits [are] managed."  *See* Anthone Decl., Ex. 1 at 3.

### B.    Plaintiff's Declaratory Judgment Claim Against Anthem, Inc. Also Fails.

Anthem, Inc. is not a proper defendant to Plaintiff's declaratory judgment claim in

Count I.  The Colorado statutes invoked in that claim (C.R.S. §§ 10-16-104 and 10-16-107.7) by

their plain terms, apply to health insurance "carriers."  *See* C.R.S. § 10-16-104 (directed to "the

carrier"); § 10-16-107.7 (applying to "[a] carrier offering an individual or group health benefit

plan in this state").  The term "carrier," as used in those statutes, is defined to "mean[] any entity

that provides health coverage in this state . . . and any other entity providing a plan of health

23

insurance or health benefits subject to the insurance laws and rules of Colorado." C.R.S. § 10-16-102(8). Thus, the plain language of C.R.S. §§ 10-16-104 and 10-16-107.7 precludes their application to Anthem, Inc. here, as Plaintiff has identified "Anthem Colorado," not Anthem, Inc., as "the carrier" or insurer of Plaintiff's plan. *See* SAC ¶ 41. Because Plaintiff's underlying statutory claims fail as to Anthem, Inc., her declaratory judgment claim also fails as to Anthem, Inc. *See, e.g.*, *Prier v. Steed*, 456 F.3d 1209, 1213 (10th Cir. 2006); *Turney v. Dz Bank AG Deutsche Zenral Genossenschaftsbank*, 2010 WL 3735757, at *6 (D. Kan. Sept. 20, 2010).

## CONCLUSION

For all the foregoing reasons, Defendants' Partial Motion to Dismiss should be granted.

Respectfully submitted this 19th day of January 2016.

**HOGAN LOVELLS US LLP**

*s/ E. Desmond Hogan*
E. Desmond Hogan
Miranda L. Berge
Briana L. Black
555 Thirteenth Street, NW
Washington, D.C. 20004
202.637.5493 (ph)/ 202.637.5910 (fax)
desmond.hogan@hoganlovells.com
miranda.berge@hoganlovells.com
briana.black@hoganlovells.com

Nicholas M. DeWeese
1200 Seventeenth St., Suite 1500
Denver, CO 80202
303.454.2530 (ph)/ 303.899.7333 (fax)
nicholas.deweese@hoganlovells.com

*ATTORNEYS FOR DEFENDANTS*

24

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of January, 2016, I electronically filed the foregoing DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the persons listed below:

ZUCKERMAN SPAEDER LLP
Conor B. O'Croinin
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
(410) 332-0444
(410) 659-0436 (fax)
cocroinin@zuckerman.com

D. Brian Hufford
Jason S. Cowart
399 Park Avenue, 14th Floor
New York, NY 10022
(212) 704-9600
(212) 704-4256 (fax)
dbhufford@zuckerman.com
jcowart@zuckerman.com

THE GOLD LAW FIRM
Gregory A. Gold, #26064
Sommer D. Luther, #35053
7375 E. Orchard Road, Suite 300
Greenwood Village, CO 80111
(303) 694-4653

Meiram Bendat
PSYCH-APPEAL, INC.
8560 Sunset Boulevard, Suite 500
West Hollywood, CA 90069
(310) 598-3690 x.101
(888) 975-1957(fax)
mbendat@psych-appeal.com

*/s/* E. Desmond Hogan