IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

LAURAL O'DOWD, for herself and all
others similarly situated,

*Plaintiff*

v.

ANTHEM, INC. and ROCKY
MOUNTAIN HOSPITAL AND
MEDICAL SERVICE, INC., d/b/a
ANTHEM BLUE CROSS and BLUE
SHIELD,

*Defendants.*

Civil Action No. 14–CV–02787–KLM

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' SECOND MOTION TO DISMISS**

Plaintiff Laural O'Dowd opposes Defendants' Partial Motion To Dismiss

Plaintiffs' Second Amended Complaint.

## I.    Introduction

Plaintiff O'Dowd and her family are beneficiaries under a fully-insured health

insurance policy issued and administered by Defendants (collectively "Anthem"

unless otherwise specified). Ms. O'Dowd receives mental health services from a

psychiatrist who has not entered into any contract with Anthem to accept reduced

reimbursement rates. Plaintiff's psychiatrist is therefore considered an out-of-

network provider under her policy. Plaintiff pays up front for these out-of-network

5197525.1

services, and receives reimbursement under her policy at a level determined by Anthem pursuant to her plan.

In 2012, Ms. O'Dowd discovered that Anthem had previously adopted a reimbursement policy for out-of-network behavioral health services that paid out at a level well below what Anthem reimburses plan participants and beneficiaries for the same or equivalent services by medical providers. Anthem's discriminatory treatment had the effect of increasing Plaintiff's financial burden. SAC ¶¶ 28–30. Plaintiff filed a grievance with the Colorado Division of Insurance. In response, Anthem confirmed that it does in fact use a different fee schedule for behavioral health providers than it does for medical doctors. *Id.* ¶ 33.

For medical services, Anthem uses a methodology comparable to Medicare. Anthem calculates a "relative value unit" ("RVU") for each separate health care service to represent the cost and experience required for a particular service. Anthem then adjusts that calculation by a conversion factor to account for the complexity of the procedure. A service with a higher RVU will typically receive a higher reimbursement rate. SAC ¶ 39. Rather than using the same methodology for behavioral health providers, Anthem uses a "confidential . . . fee schedule" to reimburse for out-of-network behavioral health services based on the discounted fees it pays to its in-network providers. *Id.* Anthem's methodology results in patients being reimbursed substantially less when they obtain mental health services from behavioral health providers rather than medical providers.

2

Ms. O'Dowd filed this lawsuit to stop Anthem's discriminatory policies. Anthem's policies violate both Colorado's provider nondiscrimination statutes and the Employee Retirement Income Security Act of 1974 ("ERISA"). Ms. O'Dowd seeks additional benefits or appropriate equitable relief for her and other similarly-situated insureds who also have received inadequate benefits. Defendants have moved to dismiss part of the case, but recognize that at a minimum, the case will proceed on the merits concerning Defendants' reimbursement policies under Plaintiff's third claim for relief against Defendant Rocky Mountain Hospital and Medical Service, Inc. ("Anthem Colorado").

## II.    Standard

The Tenth Circuit has recognized that there is a "powerful presumption against rejecting pleadings for failure to state a claim." *Maez* v. *Mountain States Tel. and Tel., Inc.*, 54 F.3d 1488, 1496 (10th Cir. 1995). "Granting [a] defendant's motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Duran* v. *Carris*, 238 F.3d 1268, 1270 (10th Cir. 2001) (internal quotations omitted)). Construed in the light most favorable to the plaintiff, and accepting as true all material allegations, *Ridge at Red Hawk, L.L.C.* v. *Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007), a complaint survives dismissal where it alleges a plausible claim for relief—that is, the "[f]actual allegations must be enough to raise

3

a right to relief above the speculative level," *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007).

### III.    Argument

### A.  Plaintiff May Seek A Declaratory Judgment Under ERISA.

In her first claim for relief, Plaintiff seeks a declaratory judgment that Anthem has violated Colorado's provider non-discrimination statutes, found in Colo. Rev. Stat. § 10–16–104(7), which was applicable through May 2013, and its replacement, Colo. Rev. Stat. § 10–16–107.7, which became effective May 13, 2013. Anthem moved to dismiss this claim only "to the extent [it] is brought under any law other than under [ERISA, 29 U.S.C. §] 1132(a)(1)(B)." Anthem Mem. 6. *See id.* at 7 ("Plaintiff may only seek to enforce those statutes, to the extent they become plan terms, through a claim for plan benefits.") (citing *Larson* v. *United Healthcare Ins. Co.,* 723 F.3d 905, 911–13 (7th Cir. 2013)).

As before, Anthem has eschewed a detailed analysis of whether these Colorado statutes are preempted by ERISA. But given Anthem's concession that Plaintiff's ERISA plan incorporates Colorado State insurance law, the question whether Plaintiff obtains declaratory relief under § 1132(a)(1)(B) or through some other vehicle, such as the federal declaratory judgment act, 28 U.S.C. § 2201, has no practical effect on this action.[1] As Anthem recognizes, "when an employee-benefits

---

[1] If at a later point Anthem challenges Plaintiff's entitlement to seek declaratory relief relating to these Colorado statutes through an ERISA claim, Plaintiff reserves the right to assert a claim under the declaratory judgment act or state law.

plan includes an insurance policy, contract terms mandated by state insurance law become plan terms." *Larson,* 723 F.3d at 913.[2] Under § 1132(a)(1)(B), Plaintiff is entitled not only to "recover benefits" and "enforce" her rights under her plan, but also "to clarify [her] rights to future benefits under the terms of the plan." Because the Colorado statutes are deemed to be incorporated into Plaintiff's plan terms, she is entitled to pursue declaratory relief. *See Massachusetts Mut. Life Ins. Co.* v. *Russell,* 473 U.S. 134, 146–47 (1985) (confirming that § 1132(a)(1)(B) allows for a declaratory judgment).[3]

## B. Plaintiff Has Stated a Claim Under 29 U.S.C. § 1132(a)(3).

### 1. The ACA's Provider Nondiscrimination Provision Is Enforceable Under ERISA § 1132(a)(3).

In her second claim for relief, Plaintiff alleges that Anthem is subject to liability under § 1132(a)(3) for participating in violations of 42 U.S.C. § 300gg–5. That statute provides that health insurers "shall not discriminate with respect to participation under the plan or coverage against any health care provider who is

---

[2] *See also CIGNA Corp.* v. *Amara,* 563 U.S. 421, 435–36, (2011) (ERISA § 1132(a)(1)(B) "allows a court to look outside the plan's written language in deciding what those terms are, *i.e.,* what the language means") (citing *UNUM Life Ins. Co. of America* v. *Ward,* 526 U.S. 358, 377–379 (1999), as "permitting the insurance terms of an ERISA-governed plan to be interpreted in light of state insurance rules"); *Huang* v. *Life Ins. Co. of N. Am.,* 47 F. Supp. 3d 890, 902 (E.D. Mo. 2014), *aff'd sub nom., Yafei Huang* v. *Life Ins. Co. of N. Am.,* 801 F.3d 892 (8th Cir. 2015) (state insurance regulations may be considered directly in a claim for benefits under 29 U.S.C. § 1132(a)(1)(B)).

[3] *See also Pilot Life Ins. Co.* v. *Dedeaux,* 481 U.S. 41, 53 (1987) (relief under § 1132(a)(1)(B) "may take the form of . . . a declaratory judgment on entitlement to benefits"); *Kerns* v. *Caterpillar, Inc.,* 499 F. Supp. 2d 1005, 1024 (M.D. Tenn. 2007).

acting within the scope of that provider's license or certification under applicable State law." SAC ¶ 65 (the "provider non-discrimination provision" of the Affordable Care Act ("ACA")). Plaintiff alleges that Anthem's reimbursement policy for out-of-network behavioral health services violates this provision. She therefore seeks to enjoin its continued use.

Anthem points out that § 300gg–5 does not include an independent private right of action. Anthem argues that this federal statute is "only enforceable to the extent such laws 'become ERISA plan terms,'" and that the only viable method of enforcing the statute is through benefits claim under § 1132(a)(1)(B). Anthem Mem. 20. But Congress expressly incorporated § 300gg–5 into subchapter 1 of ERISA through 29 U.S.C. § 1185d(1). Section 1185d(1) states that:

> the provisions of part A of title XXVII of the Public Health Service Act [42 U.S.C. 300gg, et seq.] (as amended by the Patient Protection and Affordable Care Act) shall apply to group health plans, and health insurance issuers providing health insurance coverage in connection with group health plans, ***as if included in this subpart.***

(Emphasis added.) While Anthem makes a passing reference to § 1185d, Anthem Mem. 22, it ignores its significance. Because § 1185d makes 42 U.S.C. § 300gg–5 a part of ERISA, Plaintiff does not need to rely on the implied incorporation of § 300gg–5 into the plan terms to enforce it as part of a § 1132(a)(1)(B) benefit claim.

6

Rather, Plaintiff may enforce the federal provider nondiscrimination statute against Anthem under § 1132(a)(3).[4]

Section 1132(a)(3)(A) specifies that a civil action may be brought "to enjoin any act or practice which violates any provision *of this subchapter* or the terms of the plan." (Emphasis added). Because the ACA's provider nondiscrimination provision is deemed to be part of ERISA, Plaintiff has an explicit statutory right to enjoin Anthem's violation of this provision under § 1132(a)(3)(A) or to obtain "other appropriate equitable relief" to enforce that provision under § 1132(a)(3)(B).

### 2. *This Court Already Has Held That Plaintiff May Assert Claims Under Both § 1132(a)(1)(B) and (a)(3).*

This Court already addressed—and rejected—Anthem's argument that the relief Plaintiff seeks under § 1132(a)(3) is duplicative of the relief she seeks under § 1132(a)(1)(B). This Court found that "Plaintiff seeks two different types of recovery," pursuing "equitable relief in the form of recovery of amounts Defendant may have improperly gained from the alleged breach of fiduciary duty" through the second claim and "payment of benefits" through the third claim. *O'Dowd,* 2015 WL

---

[4] Anthem cites two cases for the proposition that there is no "direct or indirect" private right of action under 300gg, Anthem Mem. 21: *Warren Pearl Const. Corp.* v. *Guardian Life Ins. Co. of America,* 639 F. Supp. 2d 371 (S.D.N.Y. 2009) and *O'Donnell* v. *Blue Cross Blue Shield of Wyo.,* 173 F. Supp. 2d 1176 (D. Wyo. 2001). Both cases, however, predate the adoption of § 1185d. Anthem also cites *American Psychiatric Assoc.* v. *Anthem Health Plans,* 50 F. Supp.3d 157, 169 n.12 (D. Conn. 2014). The district court there stated in a footnote that § 1132(a)(1)(B) "provides the appropriate mechanism" to enforce the Federal Mental Health Parity Act as part of the ERISA plans at issue. The district court never addressed the effect of 29 U.S.C. § 1185a, which made the Parity Act a part of ERISA, just as § 1185d makes the ACA's provider nondiscrimination provision a part of ERISA.

5728814, at *4. The Court made clear that while Plaintiff cannot obtain duplicative *relief*, she may pursue both claims. *Id.* at *5.

Anthem's arguments are no more persuasive the second time around. For that matter, Anthem never asked the Court to reconsider its ruling. And so the Court could treat its prior ruling as the law of the case, and reject Anthem's argument on that ground alone. *Bishop* v. *Smith,* 760 F.3d 1070, 1082, 1086 (10th Cir. 2014) (observing that a court's ruling on a legal issue "should continue to govern the same issues in subsequent stages in the same case" subject to narrow exceptions not satisfied here).

Even still, the Court should reach the same decision as before. First, Plaintiff has asserted her claims under § 1132(a)(1)(B) and (a)(3) alternatively. In her second claim for relief, she seeks "the equitable relief of restitution, disgorgement, or surcharge . . . to the extent such relief does not duplicate the relief otherwise available under ERISA." SAC ¶ 68. Similarly, in her fourth claim, Plaintiff seeks relief for her breach of fiduciary duty claims under both § 1132(a)(1)(B) and § 1132(a)(3), *id.* ¶ 80, "to the extent such relief does not duplicate relief otherwise available under ERISA." *Id.* ¶ 86. The Federal Rules of Civil Procedure permit pleading alternate legal theories of recovery based on the same factual allegations. *See, e.g.*, Fed. R. Civ. P. 8(a). Nothing in ERISA alters the federal rules of pleading. Nor does the Supreme Court's decision in *Varity Corporation* v. *Howe*, 516 U.S. 489 (1996). Anthem Mem. 7–8.

Anthem misreads *Varity* by contending that it forbids pleading alternative claims under both § 1132(a)(1)(B) and (a)(3). That contention has been rejected by the Second and Eighth Circuits. In *Silva* v. *Metro. Life Ins. Co.*, 762 F.3d 711 (8th Cir. 2014), the court of appeals explained that it "[did] not read *Varity* . . . to stand for the proposition that [a plaintiff] may only plead one cause of action to seek recovery of . . . benefits." *Id.* at 726. Instead, *Varity* only "prohibit[s] duplicate *recoveries*." *Id.* (emphasis in original).[5] In other words, *Varity* addresses relief, not pleading. Sharpening the point, the *Silva* Court cautioned that "[t]o dismiss an ERISA plaintiff's § 1132(a)(3) claim as duplicative at the pleading stage of a case would, in effect, require the plaintiff to elect a legal theory and would, therefore, violate [the Federal Rules of Civil Procedure]." *Id.* (quoting *Black* v. *Long Term Disability Insurance*, 373 F. Supp.2d 897, 902–03 (E.D. Wis. 2005)) (internal citations omitted). It is only after the Court determines at summary judgment whether relief is available under § 1132(a)(1)(B) that it should consider whether the § 1132(a)(3) claim would be duplicative.

The Second Circuit endorsed *Silva* in *New York State Psychiatric Ass'n, Inc.* v. *UnitedHealth Grp.,* 798 F.3d 125 (2d Cir. 2015). The Second Circuit reversed a district court's dismissal of a § 1132(a)(3) claim as duplicative. The Court found that "dismissal on this basis was premature." *Id.* at 133. As the court explained, "it is

---

[5] The "more specific section" regarding Anthem's statutory violations is § 1132(a)(3)(A), not § 1132(a)(1)(B). That is because 1132(a)(1)(B) addresses plan violations, not statutory violations.

important to distinguish between a cause of action and a remedy under § [1132](a)(3)," given that "'*Varity Corp.* did not eliminate a private *cause of action* for breach of fiduciary duty when another potential remedy is available.'" *Id.* at 134 (emphasis in original) (quoting *Devlin* v. *Empire Blue Cross & Blue Shield,* 274 F.3d 76, 89 (2d Cir. 2001)). "[I]f a plaintiff 'succeed[s] on both claims . . . the district court's *remedy* is limited to such equitable relief as is considered appropriate.'" *Id.* Just as in *Silva,* the Second Circuit stressed that the appropriateness of equitable relief under § 1132(a)(3) should only be considered *after* the factual record has been developed through discovery.[6]

Anthem relies on two older Tenth Circuit cases, *Lefler* v. *United Healthcare of Utah,* 72 Fed. Appx. 818 (10th Cir. 2003) and *Moore* v. *Berg Enter.,* 1999 WL 1063823 (10th Cir., Nov. 23 1999). Anthem Mem. 8. But Anthem ignores the procedural posture of these decisions. Both cases were decided at the summary judgment stage. Neither was decided on a motion to dismiss. As the court explained in *Silva*, the difference in procedural posture matters. That is "because claims are more developed by the time a motion for summary judgment is filed," and "a court is better equipped to assess the likelihood for duplicate recovery, analyze the overlap

---

[6] *See also DeVito* v. *Aetna, Inc.*, 536 F. Supp. 2d 523, 534 (D.N.J. 2008); *Zebrowski* v. *Evonik Degussa Corp. Admin. Comm.*, 2011 WL 767444, at *3 (E.D. Pa., Feb. 24, 2011); *Martin* v. *Aetna Life Ins. Co.*, 2014 WL 2009079, at *4 (E.D. Mo. May 16, 2014); *Allbaugh* v. *Cal. Field Ironworkers Pension Trust*, 2014 WL 2112934, at *6 (D. Nev. May 20, 2014); *In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig.*, 2005 WL 1972565, at *3 (D. Or., Aug. 15, 2005); *A.A., ex rel. J.A.* v. *Blue Cross & Blue Shield of Illinois*, 2014 WL 910144, at *11 (W.D. Wash., Mar. 7, 2014).

between claims, and determine whether one claim alone will provide the plaintiff with 'adequate relief.'" *Id.* And so *Lefler* and *Moore* are not dispositive.[7]

Worse yet, Anthem may later argue that Plaintiff does not have a valid claim under § 1132(a)(1)(B). At this stage of the litigation, the Court is not being asked to determine whether there is a valid § 1132(a)(1)(B) claim. So it's premature to determine whether the relief Plaintiff seeks under § 1132(a)(3) is duplicative. As the Eighth Circuit held in *Silva,* this scenario "illustrates the unfairness" of this argument. *Silva,* 762 F.3d at 727. Anthem contends on the one hand that Plaintiff cannot pursue a § 1132(a)(3) claim because she can pursue her claim for relief under § 1132(a)(1)(B). But on the other hand, Anthem may later argue that she may not even be able to bring the § 1132(a)(1)(B) claim at all. Plaintiff should not be forced at this stage to select which legal theory to pursue and hope for the best. Rather, she can "plead both." *Id.* at 728.

Second, Plaintiff's § 1132(a)(3) claims are not duplicative of her § 1132(a)(1)(B) claims. Plaintiff seeks plan benefits under § 1132(a)(1)(B) based on Anthem's violation of plan terms. Plaintiff seeks injunctive relief under § 1132(a)(3) based on Anthem's violation of ERISA. Anthem seems to contend that the statutory

---

[7] In its first decision, this Court noted this distinction, but did not base its rejection of Anthem's argument on that basis. 2015 WL 5728814, at *4. Given that the Tenth Circuit has not considered whether *Lefler*'s analysis should be applied at the pleading stage, however, and in light of *Silva* and *New York State Psychiatric Ass'n,* the Court should follow *Silva*'s analysis and recognize why *Lefler* is distinguishable from the present case. For the same reason, there is no reason for the Court to change its interpretation of *Lefler,* notwithstanding Anthem's assertion that the SAC allegations change the analysis. Anthem Mem. 15 n.9. They do not.

11

provisions of ERISA should be deemed to be incorporated into the underlying ERISA plan, thereby allowing a court to enjoin a statutory violation as part of a benefits claim under § 1132(a)(1)(B). Anthem Mem. 7. But if § 1132(a)(1)(B) were read to be the exclusive basis for an action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan," then § 1132(a)(3)(A) is superfluous. It would be odd indeed for the courts to preclude relief that Congress explicitly authorized under one provision based on the potential availability of comparable relief under a different provision that is, at best, implied.

Anthem loses sight of the fact that Plaintiff is not merely seeking to challenge an individual denial of benefits. Rather, she seeks to compel Anthem to comply with ERISA's provider nondiscrimination provision. As the Sixth Circuit held in *Hill* v. *Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 718 (6th Cir. 2005), there is a "difference between correcting the denial of individual claims on a beneficiary-by-beneficiary basis and altering . . . the methodology used to process claims for all beneficiaries." As the court explained: "[o]nly injunctive relief of the type available under § 1132(a)(3) will provide the complete relief sought by Plaintiffs by requiring [the claims administrator] to alter the manner in which it administers all the Program's claims for emergency-medical-treatment expenses." *Id. See also Smith* v. *Med. Benefit Adm'rs Grp., Inc.*, 639 F.3d 277, 284 (7th Cir. 2011) (observing that a range of "meaningful declaratory and injunctive relief" is available under § 1132(a)(3), including "requir[ing the claims administrator] to modify its

12

preauthorization practices so as to bring them into conformity with the governing regulations as well as its broader fiduciary obligations to plan participants"); *Z.D., ex rel. J.D.* v. *Grp. Health Coop.*, 829 F. Supp. 2d 1009, 1016 (W.D. Wash. 2011). This Court may later conclude that this same relief is available under § 1132(a)(1)(B). But until it does, Plaintiff should not be barred from seeking that relief under § 1132(a)(3).

Plaintiff also seeks "the equitable relief of restitution, disgorgement, or surcharge." SAC ¶ 68. Anthem contends that such claims "are, in substance, no more than 'requests for recovery of reduced benefits' under Plaintiff's plan that should be pursued only under 1132(a)(1)(B)." Anthem Mem. 12–13. Anthem understates the potency of these equitable remedies.

For instance, Anthem disputes the possibility of Plaintiff obtaining any form of monetary relief as part of an equitable remedy under § 1132(a)(3). Anthem complains that Plaintiff has "fail[ed] to plausibly allege a constructive trust or unjust enrichment as required to state a claim for restitution, disgorgement or surcharge." Anthem Mem. 14 (citing *Callery* v. *U.S. Life Ins. Co. in City of New York,* 392 F.3d 401, 406 (10th Cir. 2004)). *Callery* was issued seven years before the Supreme Court's landmark decision in *CIGNA Corp.* v. *Amara,* 563 U.S. 421, 437–38 (2011). As many courts have commented, *Amara* altered the landscape of available equitable remedies under § 1132(a)(3). *See Fulgham* v. *Embarq Corp.*, 2015 WL 759169, *19 (10th Cir., Feb. 24, 2015); *Gabriel* v. *Alaska Elec. Pension*

13

*Fund*, 773 F.3d 945, 963 (9th Cir. 2014); *Silva*, 762 F.3d at 724–25; *Kenseth* v. *Dean Health Plan, Inc.*, 722 F.3d 869, 870, 892 (7th Cir. 2013); *McCravy* v. *Metro. Life Ins. Co.*, 690 F.3d 176, 181–83 (4th Cir. 2012).

As the *Amara* Court stated, "[s]urcharge is one such equitable remedy" under ERISA, which "extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary." *Amara*, 563 U.S. at 442.[8] That a surcharge might make a beneficiary whole does not transform the surcharge into "compensatory damages" or bar such relief under § 1132(a)(3). As Justice Breyer explained in *Amara*, "[e]quity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." *Id.* at 441. At equity, a court could "simply order[] a trust or beneficiary made whole following a trustee's breach of trust." *Id.* at 423. In doing so, the equity court would apply a "flexible approach," by "'mold[ing] the relief to protect the rights of the beneficiary according to the situation involved.'" *Id.* at 444 (quoting G. BOGERT & A. HESS, THE LAW OF TRUSTS AND TRUSTEES § 861, at 4 (rev. 2d ed. 1995)). Section 1132(a)(3) similarly accords this Court the flexibility and discretion to provide appropriate relief to Plaintiff based on the facts proved.

---

[8] The only other case cited by Anthem on this point is a district court decision addressing the relief available to a fiduciary seeking to recover overpaid benefits. *See Arapahoe Surgery Ctr.* v. *Cigna Healthcare,* 2015 WL 1041515, *344 (D. Colo. Mar. 6, 2015) Anthem Mem. 14. That decision says nothing about the relief available to a beneficiary for a fiduciary violation.

14

Indeed, the Fifth Circuit has interpreted *Amara* as "an expansion of the kind of relief available under § [1132](a)(3) when the plaintiff is suing a plan fiduciary and the relief sought makes the plaintiff whole for losses caused by the defendant's breach of a fiduciary duty." *Gearlds* v. *Entergy Servs., Inc.*, 709 F.3d 448, 450 (5th Cir. 2013). The Tenth Circuit also has acknowledged that § 1132(a)(3) now includes those forms of relief traditionally available at equity. *Jensen* v. *Solvay Chemicals, Inc.*, 721 F.3d 1180, 1185 (10th Cir. 2013).

By engaging in the alleged fiduciary breaches, Anthem may have been unjustly enriched in an amount greater than the withheld benefits. Anthem received premiums that should have been used to reimburse beneficiaries for the payments they made to receive mental health services and otherwise comply with the non-discrimination statute. Anthem surely benefitted from possessing the funds it should have used to reimburse participants and beneficiaries. Anthem's unjust enrichment is separate from the benefits that Plaintiff is seeking. *Young* v. *Principal Fin. Grp., Inc.*, 547 F. Supp. 2d 965, 981–82 (S.D. Iowa 2008) (holding that "depending on the development of the facts of the case, Plaintiffs may be entitled to the traditional equitable remedy of a disgorgement of [defendant's] profits and they may be entitled to . . . some other form of traditional equitable relief").

Third and finally, § 1132(a)(3) may turn out to be the only available remedy. Consider for instance Defendants' conviction that Anthem, Inc. cannot be sued for benefits under § 1132(a)(1)(B) because it is not a formally designated fiduciary

under the plan. Defendants contend that only Anthem Colorado has "control over the ultimate decision to pay or not pay benefits," and is the only party who may be held liable under § 1132(a)(1)(B). Anthem Mem. 23. Defendants' contentions reinforce why Plaintiff's § 1132(a)(3) claims are necessary. According to Anthem, there is *no* § 1132(a)(1)(B) claim against Anthem, Inc., leaving only § 1132(a)(3) as a basis for relief against that entity.

In that regard, Anthem is wrong that a claim can only be brought against Anthem, Inc. if it controls benefit determinations. While the relief available under § 1132(a)(3) is limited to certain kinds of *plaintiffs*—a "participant, beneficiary, or fiduciary"—it is *not* limited to certain types of *defendants*. Nor does § 1132(a)(3) say that actions for injunctive or other appropriate equitable relief cannot be issued against a company like Anthem, Inc., who is alleged to have devised policies and imposed them on its state-level licensees which run afoul of ERISA. As the Supreme Court has made clear*,* "§ [1132](a)(3) makes no mention at all of which parties may be proper defendants—the focus, instead, is on redressing the '*act or practice* which violates any provision of [ERISA Title I].'" *Harris Trust & Sav. Bank* v. *Salomon Smith Barney, Inc.*, 530 U.S. 238, 239 (2000) (emphasis added). *See also Lowen* v. *Tower Asset Mgmt., Inc.,* 829 F.2d 1209, 1220 (2d Cir. 1987) (noting that a non-fiduciary can be sued under 1132(a)(3)). The natural reading of the statute is that an action lies under § 1132(a)(3) against *any* party that engages in conduct that causes an ERISA violation.

16

Similarly, the substantive ERISA provisions incorporated from the ACA identify what conduct is prohibited: discrimination against providers based on their license or the type of services they provide. But those provisions do not identify which parties may be liable for violations. Defendants' contention that only group health plans and their direct insurers may be sued for provider discrimination is inconsistent with *Harris Trust*. In *Harris Trust*, successor plan fiduciaries sued Salomon Brothers, the broker-dealer for an ERISA plan, for violating ERISA by engaging in transactions that harmed the plan. The plan fiduciaries sought equitable relief under § 1132(a)(3). *Harris Trust*, 530 U.S. at 243. Salomon Brothers argued that it was not a proper defendant under § 1132(a)(3) because the substantive ERISA provision at issue applied only to plan fiduciaries who caused the harmful transaction—not to a non-fiduciary who may have facilitated it. *Id.* In a unanimous decision, the Supreme Court disagreed and held that "§ [1132](a)(3) itself imposes certain duties, and therefore . . . liability under that provision does not depend on whether ERISA's substantive provisions impose a specific duty on the party being sued." *Id.* at 245. Thus, § 1132(a)(3) imposes on Anthem, Inc. a duty to not participate in a violation of ERISA—including the provider nondiscrimination statute.

Plaintiff has alleged that Anthem, Inc. is responsible for the creation and use of the discriminatory reimbursement policy at issue in this case. Put simply, Anthem, Inc. cannot cause ERISA violations, then hide behind its subsidiary.

### C. Plaintiff Has Stated Claims for Breaches of Fiduciary Duty.

In her fourth claim for relief, Plaintiff asserts breach of fiduciary duty claims against Anthem under both § 1132(a)(1)(B) and § 1132(a)(3). In particular, Plaintiff alleges that each Defendant is a fiduciary under ERISA, SAC ¶ 81, and that they violated their fiduciary obligations by (1) "fail[ing] to discharge their duties in the interest of the participants and beneficiaries" of the ERISA plans they control and/or administer, *id.* ¶ 83, and (2) "by applying processes, strategies, evidentiary standards, and other factors to deny or reduce benefits for mental health services that are inconsistent with or in conflict with the Plans and applicable law," *id.* ¶ 84.

Anthem Colorado does not deny it is a fiduciary. Nor does it point to any allegations that would dispel its fiduciary status. The complaint states that Defendant exercised sole discretion in establishing reimbursement rates, and exercised that discretion in a way that was contrary to law. Such allegations satisfy the lenient pleading rules:

> Nevertheless, in light of the flexible and fact-intensive concept of a "functional fiduciary" under ERISA, the Federal Rules' adoption of liberal "notice pleading," and the infant stage of this litigation, the Court is reluctant to dispose of Plaintiff's ERISA claims based on the absence of exacting factual averments respecting the existence of Defendants' fiduciary status or the outer contours of their fiduciary capacities.

*Woods* v. *S. Co.*, 396 F. Supp. 2d 1351, 1365 (N.D. Ga. 2005).[9]

---

[9] *See also In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 470 (S.D.N.Y. 2005) ("an ERISA complaint need do little more than track the statutory definition to establish a defendant's fiduciary status in compliance with Rule 8"); *In re AEP*

As Anthem concedes, fiduciary status under ERISA is "functional." That is "'regardless of status or title, parties are only plan fiduciaries to the extent they are performing one of the functions identified in the [ERISA] definition' of fiduciary." Anthem Mem. 18–19 (quoting *Coldesina* v. *Estate of Simper*, 407 F.3d 1126, 1132 (10th Cir. 2005)). *Coldesina* sets forth the limitation that "non-discretionary or ministerial functions are those that do not require individual decisionmaking," which "include[s] tasks which by their nature are inherently ministerial, such as clerical services." *Id.* at 1132. Plaintiff is challenging Anthem's discriminatory reimbursement policies that adversely impacted her right to benefits under her plan. This is neither ministerial nor clerical.

Also amiss is Anthem's attempt to liken those policies to "business decisions" untethered to particular plans or benefit determinations. Anthem Mem. 20. Anthem cites two cases in support: *American Psychiatric Assoc.* v. *Anthem Health Plan,* 50

---

*ERISA Litig.*, 327 F. Supp. 2d 812, 827 (S.D. Ohio 2004) ("[T]his Court subscribes to the view that fiduciary status is a fact-intensive inquiry, making the resolution of that issue inappropriate for a motion to dismiss."); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 312 F. Supp. 2d 1165, 1180–81 (D. Minn. 2004) (questions of fiduciary status and capacity are ill-suited to resolution on Rule 12(b)(6) motion); *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 305 F. Supp. 2d 658, 665 (E.D. Tex. 2004) ("It is typically premature to determine a defendant's fiduciary status at the motion to dismiss stage of the proceedings."); *In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d 1207, 1227 (D. Kan. 2004) (it is premature to determine scope of fiduciary duties and whether particular defendant acted in fiduciary capacity on motion to dismiss); *In re WorldCom, Inc.*, 263 F. Supp. 2d 745, 759–60 (S.D.N.Y. 2003) (holding sufficient allegations of fiduciary status that did "little more than track the statutory definition of a fiduciary[,]" and rejected defendant's argument that "boilerplate and conclusory allegations" of fiduciary status were insufficient to state a claim under Rule 8).

F. Supp. 3d 157, 169–70 (D. Conn. 2014) and *DeLuca* v. *Blue Cross Blue Shield of Mich.,* 628 F.3d 743, 747 (6th Cir. 2010). Those cases are nothing like this case. In those cases, the courts held that an association of providers and an insured could not pursue ERISA claims challenging in-network reimbursement rates because the setting of those rates did not involve interpretation of any plan or limit benefits in any way. Instead, such rate setting reflected business decisions made by the defendants in connection with their separate contractual relationship with in-network providers with whom they had contracts.

Here, an ERISA participant challenges the legality of Anthem's unilaterally-devised out-of-network rate schedule where: 1) her plan specifies the basis of out-of-network rates; 2) Anthem's rate schedule was used to adjudicate her claims for out-of-network benefits; and 3) Anthem's adjudication caused Plaintiff's financial exposure.[10] Anthem uses its discretion to determine how much Plaintiff's plan pays in out-of-network benefits. This is the definition of a fiduciary act.

Defendants' contention that Anthem, Inc. is not a proper defendant for a declaratory judgment and under § 1132(a)(1)(B) is also unavailing. As Anthem concedes, "'an entity with control over the ultimate decision to pay or not pay benefits' may be liable under § 1132(a)(1)(B)." Anthem Mem. 23 (quoting *Basquez* v.

---

[10] Given that Anthem was engaging in fiduciary acts in making benefit determinations based on discriminatory reimbursement policies, Anthem retreats to its argument that the § 1132(a)(3) claims are duplicative of the § 1132(a)(1)(B) claims. Anthem Mem. 19. For the reasons already discussed, that argument is wrong.

*East Central OK Elec. Co-op, Inc.*, 2008 WL 906166, \*6 (E.D. Okla., Mar. 31, 2008)).

That is precisely what Plaintiff alleges about Anthem, Inc. While it may be true

that Anthem Colorado is the entity to which the applicable plan gives "'final'

decision-making authority [over] 'how [Plaintiff's] benefits [are] managed,'" Anthem

Mem. 23, the SAC alleges that "Anthem Colorado takes instruction for the

operation of those plans from Anthem [Inc.], including the amount at which it sets

reimbursement rates for services performed by medical providers and by mental

health providers." SAC ¶ 2.[11] On top of that, the SAC alleges:

- Anthem [Inc.] owns Anthem Colorado, either directly or indirectly. . . . Through its many subsidiaries and affiliates (such as Anthem Colorado), it offers managed health care plans to employers. . . . In this respect, Anthem [Inc.] functions as a large insurance company. Indeed, through its subsidiaries, it is licensed to conduct insurance in every State in the union. SAC ¶ 4.
- Upon information and belief, Anthem [Inc.] sets policies across its subsidiaries, including coverage policies and national policies for the methods Anthem [Inc.'s] subsidiaries use to set provider reimbursement rates and to apply medical necessity standards. Anthem [Inc.] employs Samuel R. Nussbaum, M.D., who serves as its Executive Vice President of Clinical Health Policy and Chief Medical Officer. Upon information and belief, Dr. Nussbaum and his staff are in charge of developing these policies. *Id.* ¶ 5.
- Anthem [Inc.] uses RVUs to determine reimbursement rates for medical care providers. It does not, however, use RVUs to determine reimbursement rates for mental healthcare providers. Instead, Anthem [Inc.] purposefully uses an alternative system that leads to lower reimbursement rates for the same services. Anthem [Inc.'s] decision to use separate methods is not based on quality or performance measures. By itself, this demonstrates that Anthem [Inc.] is not

---

[11] In the SAC, Anthem, Inc. is defined as "Anthem." SAC, Introductory paragraph. Thus, when quoting the SAC, Plaintiff has added "[Inc.]" when Anthem is used to reflect the fact that the allegation concerns Anthem, Inc.

21

> treating mental health providers comparably to medical providers, in violation of the non-discrimination provision. *Id.* ¶ 27.
>
> - Anthem [Inc.] continues to discriminate against mental health providers. . . . This discrimination has further been exacerbated by the fact that Anthem [Inc.] has changed its policies internally to reduce reimbursement for behavioral health care services even further. For example, Plaintiff's children are seeing out-of-network psychologists to address certain mental health issues. In the last two years, Anthem [Inc.'s] reimbursement rates for these providers have declined precipitously. . . . *Id.* ¶¶ 43–44.
> - Anthem [Inc.'s] communications both to Plaintiff and to the regulators in 2012 demonstrated that Anthem [Inc.] had adopted its reimbursement methodology as a firm policy which would not be changed based on individual grievances or appeal. *Id.* ¶ 47.

Thus Plaintiff has plausibly alleged that Anthem, Inc. has operated as an ERISA fiduciary by creating the reimbursement policies at issue and requiring them to be used by Anthem Colorado when making benefit determinations.

The extent to which a parent company that owns and controls a health insurance subsidiary can itself be deemed to be an ERISA fiduciary was addressed in *Drolet* v. *Healthsource, Inc.*, 968 F. Supp. 757, 761 (D.N.H. 1997). Denying a motion to dismiss by the parent company, the court held that the plaintiff "adequately alleges that Healthsource [Inc.] controls the policies and practices of Healthsource New Hampshire to such an extent that it is also exercises control over the management and policies of the plan." *Id.* at 761. *See also Johnson* v. *Flowers Indus.,* 814 F.2d 978, 981 (4th Cir. 1987) (holding that corporate separateness will be disregarded when the parent dominates the subsidiary "to the extent that the subservient corporation manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation"). The court in

22

*Drolet* "afford[ed] [the plaintiff] an opportunity to engage in discovery to address the question of how much, if any, control Healthsource [Inc.] exerts over the management or policies of the plan." *Id.* at 761 n.3.

Plaintiff requests the same opportunity.

## IV.    Conclusion

For these reasons, Plaintiff Laural O'Dowd asks that the Court deny Anthem's latest motion to dismiss.

ZUCKERMAN SPAEDER LLP
*A duly signed original is on file at Zuckerman Spaeder LLP*

/s/ D. Brian Hufford

Gregory A. Gold, #26064
Sommer D. Luther, #35053
THE GOLD LAW FIRM
7375 E. Orchard Road, Suite 300
Greenwood Village, CO 80111
(303) 694–4653

D. Brian Hufford
Jason S. Cowart
Zuckerman Spaeder LLP
399 Park Avenue, 14th Floor
New York, NY 10022
(212) 704–9600
(212) 704–4256 (fax)
dbhufford@zuckerman.com
jcowart@zuckerman.com

Meiram Bendat
Psych-Appeal, Inc.
8560 Sunset Boulevard
Suite 500
West Hollywood, CA 90069
(310) 598–3690 x.101
(888) 975–1957 (fax)
mbendat@psych-appeal.com

Conor B. O'Croinin
Zuckerman Spaeder LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
(410) 332–0444
(410) 659–0436 (fax)
cocroinin@zuckerman.com

*Attorneys for Plaintiff*

23