IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02787-KLM-NYW

LAURAL O'DOWD, for herself and all others similarly situated,

      Plaintiff,

v.

ANTHEM, INC., and
ROCKY MOUNTAIN HOSPITAL AND MEDICAL SERVICE, INC., doing business as
Anthem Blue Cross and Blue Shield,

      Defendants.
_____

**AMENDED FINAL ORDER AND JUDGMENT**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Plaintiff's **Unopposed Motion for Attorneys' Fees and Expenses and Incentive Award for Named Plaintiff** [#128][1] (the "Motion for Attorneys' Fees") and **Unopposed Motion for Final Approval of Class Action Settlement and Related Relief** [#131] (the "Motion for Final Approval") (collectively, the "Motions").  Plaintiff requests, and Defendants do not oppose, that the Court approve the Settlement Agreement [#121-1], which resolves all of Plaintiff's and class members' claims in this litigation.  A fairness hearing pursuant to Fed. R. Civ. P. 23(e)(2) was held on May 24, 2019, at 9:30 a.m. in the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado.  For the reasons stated below, the Motions [#128, #131] are

---

[1] "[#128]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's electronic case filing and management system (CM/ECF).  This convention is used throughout this Order.

**GRANTED.**[2]

## I. Background

**A.    Factual Background**

This case concerns the reimbursement methodology Defendant Rocky Mountain Hospital and Medical Service, Inc. ("Anthem Colorado") used for Out-of-Network Behavioral Health Services.[3]  As Plaintiff explains in the Motion for Final Approval [#131], "Anthem Colorado historically determined the allowed reimbursement amount (the 'Allowed Amount') for out-of-network behavioral health professional providers using a fee schedule (the 'ZBHA Fee Schedule') that differed from the reimbursement methodology that Anthem Colorado most often used to calculate the Allowed Amounts for out-of-network medical and surgical services (the 'RBRVS Reimbursement Methodology') [which] was based on Medicare payment rates."  [#131] at 7 (citing *Second Am. Compl.* [#53] (the "SAC") ¶¶ 26-27, 39-40).

Plaintiff O'Dowd purchased a Preferred Provider Organization ("PPO") health insurance policy from Anthem Colorado in 2008 and has been under the care of a psychiatrist since January of 2008.  *Id.* (citing *SAC* [#53] ¶¶ 19, 22).  Plaintiff's "psychiatrist is an Out-of-Network Provider under the Anthem Colorado PPO plan, which means that the provider does not participate in Anthem Colorado's PPO network and has not agreed

---

[2]  The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2.  *See generally Consent Form* [#21].

[3]  This Order incorporates by reference the definitions in the parties' Settlement Agreement [#121-1], dated March 7, 2018, and all capitalized terms used, but not defined herein, shall have the same meaning as in the Settlement Agreement.  This Order incorporates herein and makes part hereof the Settlement Agreement, including the Exhibits thereto.

to accept Anthem Colorado's reimbursement as payment in full for services provided to Plaintiff." *Id.* Applying the ZBHA Fee Schedule, "Anthem Colorado imposed a cap on the Allowed Amount for Plaintiff's psychiatrist [and,] [b]ased on the terms of her contract with her provider, Plaintiff was financially responsible for the difference between her psychiatrist's charges and the Maximum Allowable Amount paid by Anthem." *Id.* at 7-8 (citing *SAC* [#53] ¶ 23).

"Plaintiff alleges that Anthem Colorado's application of the ZBHA Fee Schedule for Out-of-Network Behavioral Health Services resulted in lower reimbursement rates than the RBRVS Reimbursement Methodology, thereby increasing the out-of-pocket responsibility borne by her and other putative class members for such services." *Id.* at 8 (citing *SAC* [#53] ¶ 27). Plaintiff further alleges that, by using this different methodology for Out-of-Network Behavioral Health Services, Anthem Colorado violated ERISA[4] and Colorado state law, and "deprived Plaintiff and other persons in health plans insured or administered by Anthem Colorado of benefits that were owed under the respective Plans." *Id.* (citing *SAC* [#53] at 22-26).

## B. Procedural Background

Plaintiff initiated this lawsuit in Boulder County District Court on behalf of herself and others similarly situated on July 18, 2014. *See Compl.* [#4]. On October 10, 2014, Anthem Colorado removed the action to this Court pursuant to 28 U.S.C. § 1441(a) and (c). *Notice of Removal* [#1].

Plaintiff filed an Amended Complaint on January 21, 2015, which asserted four

---

[4] The Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq.*

claims against Defendants. *See Am. Compl.* [#27] ¶¶ 41-68. Defendant Anthem Colorado then filed a Motion to Dismiss Amended Complaint in Part (the "First Motion to Dismiss") [#29]. On September 30, 2016, the Court granted in part and denied in part the First Motion to Dismiss. *See Order* [#36]. Specifically, the Court denied Defendant's First Motion to Dismiss with respect to the first, second, and third claims, and granted Defendant's First Motion to Dismiss with respect to the fourth claim. *Id.* However, the Court dismissed the fourth claim without prejudice. *Id.* at 15.

Subsequently, Plaintiff moved to file a Second Amended Complaint. *See* [#51]. This motion was unopposed. *Id.* The Court granted the motion, and Plaintiff filed her Second Amended Complaint on December 1, 2015. *See SAC* [#53]. Plaintiff's Second Amended Complaint, which is the operative pleading in this case, did not add any new claims, but instead added further specificity with respect to her existing claims. Thus, Plaintiff's current claims are as follows: (1) a claim seeking a declaratory judgment that Defendants violated Colo. Rev. Stat. §§ 10-16-104(7) and 10-16-107.7; (2) a claim seeking injunctive relief under ERISA, specifically 29 U.S.C. § 1132(a)(3); (3) a claim for payment of benefits and associated interest under ERISA, specifically 29 U.S.C. § 1132(a)(1)(B); and (4) a breach of fiduciary duty claim under ERISA, specifically 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3). *See id.* ¶¶ 57-87.

After the filing of Plaintiff's Second Amended Complaint, Defendants filed a Partial Motion to Dismiss Plaintiff's Second Amended Complaint [#66] (the "Second Motion to Dismiss") which sought to dismiss all claims against Defendant Anthem and claims one, two, and four against Defendant Anthem Colorado. The Court denied Defendants' Second Motion to Dismiss on September 23, 2016. *Order* [#91].

Following the Court's September 23, 2016 Order [#91], the parties engaged in prolonged settlement negotiations which culminated in the parties executing a proposed Settlement Agreement, dated March 7, 2018. On October 22, 2018, the Court entered its Order [#125] (the "Preliminary Approval Order") granting Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and Related Relief [#121]. Pursuant to the Preliminary Approval Order [#125], the Court: (1) conditionally certified the class for settlement purposes; (2) preliminarily appointed Plaintiff as a representative of the Settlement Class and D. Brian Hufford, Jason S. Cowart, and Andrew N. Goldfarb of Zuckerman Spaeder LLP ("Zuckerman"), and Gregory A. Gold and Sommer D. Luther of The Gold Law Firm ("The Gold Firm") as counsel for the Settlement Class (collectively, "Class Counsel"); (3) preliminarily approved the parties' Settlement Agreement; (4) appointed Dahl Administration, LLC ("Dahl") as the Settlement Administrator; (5) approved of and ordered the Settlement Administrator to provide the Mailed Notice, Long Form Notice, and CAFA Notice to Settlement Class Members; and (6) provided opportunities for absent Settlement Class Members to be heard.

It appears that the parties have complied with all requirements of the Court's Preliminary Approval Order [#125], including sending Notice to the Settlement Class Members. *Ness Decl.* [#131-2] ¶ 4. In the present Motions [#128, #131], Plaintiff seeks, and Defendants do not oppose, an order from the Court: (1) granting final certification of the Settlement Class to implement the Settlement, (2) granting final approval of the Settlement Agreement pursuant to Fed. R. Civ. P. 23(e), including the Plan of Allocation, and (3) approving Plaintiff's attorneys' fees, costs, and incentive award. *Motion for Final Approval* [#131] at 25.

**C.    Overview of the Settlement Agreement**

As Plaintiff summarizes, the proposed Settlement Agreement has three primary components: (1) a change to Anthem Colorado's business practices requiring it to use its RBRVS Reimbursement Methodology for covered Out-of-Network Behavioral Health Services for a period of three years; (2) payment by Defendants of a Settlement Amount of $380,000 that will be allocated among members of the proposed Settlement Class according to the proposed Plan of Allocation, subject to a De Minimis Threshold of $2.00; and (3) a release of claims against Defendants and Related Entities.  *Motion* [#131] at 11; *see Settlement Agreement* [#121-1] §§ 8, 9, 13.  The proposed Settlement Agreement defines the Settlement Class as:

> [A]ll Plan Members who received Out-of-Network Behavioral Health Services with dates of service during the Settlement Class Period that were allowed at or below the provider's billed charges.

*Settlement Agreement* [#121-1] § 1.58.  The Settlement Class Period ran from June 1, 2008, to October 22, 2018, the date of the Court's Preliminary Approval Order [#125].  *Id.* § 1.60.  Excluded from the Settlement Class are:

> (a) Defendants and any current and former Subsidiaries, divisions, Affiliates, predecessors, insurers, assignees, and successors-in-interest; (b) any judge who presides or has presided over the Litigation, together with his/her immediate family members and any other individual residing in the judge's household; and (c) individuals who validly and timely request to Opt Out of this Agreement pursuant to Section 5.1 of the Settlement Agreement.

*Id.* § 1.58.

With respect to the first component, the Settlement Agreement provides, for three years, the injunctive relief Plaintiff seeks in this litigation.  *Motion for Final Approval* [#131] at 18; *see Settlement Agreement* [#121-1] § 8.  Specifically, Anthem Colorado agrees to implement for three years a reimbursement methodology for determining Allowed

Amounts for Out-of-Network Behavior Health Services delivered in Colorado that aligns with the methodology Anthem Colorado most often uses to calculate Allowed Amounts for out-of-network medical and surgical health care services. *Id.* According to Plaintiff, "[t]his will address what [she] alleged to be improper disparities in reimbursement for Out-of-Network Behavioral Health Services [because,] [u]nder the Settlement, for a given Out-of-Network Behavioral Health Service, the Allowed Amount will be determined using the same RBRVS Reimbursement Methodology regardless of whether the service is performed by a behavioral health professional or a medical care provider." *Id.*

As to the second component, the monetary relief provided by the Settlement Agreement seeks to "reimburse Settlement Class Members for a portion of the difference, if any, between the actual Allowed Amount for the Out-of-Network Behavioral Health Services compared to what it would have been had Anthem Colorado used its RBRVS Reimbursement Methodology." *Id.* at 18. To accomplish this, the distribution of funds to Settlement Class Members are subject to determination by the Settlement Administrator pursuant to the process set forth in the Plan of Allocation [#121-8] which "provides for a pro rata distribution to eligible Settlement Class Members based on the ratio of each Settlement Class Member's Total Alleged Underpayment to the Total Alleged Underpayment of all Settlement Class Members collectively." *Motion for Final Approval* [#131] at 21; *see Settlement Agreement* [#121-1] § 9.1; *Plan of Allocation* [#121-8]. In order to "preserve the Settlement Fund, if the pro rata payment calculated for a particular Settlement Class Member does not exceed Two Dollars ($2.00), that Settlement Class Member will not receive a payment. *Id.* This is because the administrative costs of processing and sending such check to the Settlement Class Member would have

- 7 -

exceeded the value of the check itself." *Id.* at 21.

Finally, as to the third component, the Settlement Agreement contains a release of claims related to the lawsuit from Plaintiff and from all Settlement Class Members. *Id.* § 13. Specifically, on final approval of the Settlement Agreement, Plaintiff and the Settlement Class Members shall be deemed to have released the Released Claims. [#121-1] § 1.51.

The Released Claims are defined as:

> any and all manner of claims, counterclaims, actions, causes of action, arbitrations, damages, debts, demands, duties, judgments, liabilities, losses, obligations, penalties, liquidated damages, proceedings, agreements, promises, controversies, costs, expenses, attorneys' fees, and suits of every nature and description whatsoever, whether based on federal, state, provincial, local, foreign, statutory, or common law or any other law, rule, or regulation, in the United States, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, known or unknown, foreseen or unforeseen, whether class or individual in nature, arising on or before the Sunset Date, that the Releasing Parties, or any of them, ever had, now have, can have, shall or may hereafter have, or that have been or could have been asserted against any of the Released Parties by the Releasing Parties, directly or derivatively, in the Litigation, or any other forum based on, by reason of, arising from, in connection with, or in any way relating to the conduct, events, facts, transactions, occurrences, acts, representations, omissions, or other matters set forth, alleged, embraced, or otherwise referred to or alleged in the Complaint. This includes, without limitation and as to the Released Parties only, any claims arising from, in connection with or in any way relating to the adequacy or lawfulness of Anthem Colorado's reimbursement rates, policies, or methodologies, including but not limited to the ZBHA Fee Schedule or RBRVS Reimbursement Methodology, used by Anthem Colorado to determine reimbursement for Out-of-Network Behavioral Health Services, and Anthem Colorado's determination, computation, payment, nonpayment, adjustment, or limitation of reimbursement for Out-of-Network Behavioral Health Services based on the ZBHA Fee Schedule or the RBRVS Reimbursement Methodology. Notwithstanding the foregoing, Released Claims do not include claims against the Released Parties by Persons covered by self-funded plans that have elected to use reimbursement methodologies or rates other than the RBRVS Reimbursement Methodology, arising on or after the Preliminary

Approval Date. For avoidance of doubt, Released Claims do not include claims against the Released Parties relating to medical necessity or coverage determinations.

*Id.*

Finally, the Settlement Agreement states that "Defendants specifically deny any wrongdoing or liability, and this Settlement Agreement is entered to resolve all claims amicably and does not imply or suggest in any way fault or wrongdoing." *Id.* § 16.3.

**D.  Notice to and Response from Settlement Class Members**

Pursuant to the Preliminary Approval Order [#125], the Court appointed Dahl as the Settlement Administrator to give notice to the Settlement Class Members and to carry out other responsibilities as provided for in the Settlement Agreement.  [#125] ¶ 23. Additionally, the Court approved the parties' proposal to be jointly responsible for identifying names and addresses of potential Settlement Class Members and for Defendants to provide the Settlement Administrator with information from which a list of potential Settlement Class Members could be identified for the Mailed Notice. *Id.* ¶ 10.

On March 16, 2018, prior to the Court's Preliminary Approval Order [#125], Dahl mailed notice to the appropriate state insurance regulators in all fifty states, as well as to the Attorney General of the United States, pursuant to the requirements of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b). *Ness Decl.* [#131-2] ¶ 6.  No objection was raised by any recipient of the CAFA notice. *Motion for Final Approval* [#131] at 11.

On February 7, 2019, Dahl received data from Defendant's counsel containing records for 19,750 Settlement Class Members. *Ness Decl.* [#131-2] ¶ 7.  On February 19, 2019, the court-approved Mailed Notice was mailed by Dahl to the 19,750 Settlement Class Members.  *Id.*  Settlement Class Members were identified as individuals who

received Out-of-Network Behavioral Health Services from Anthem Colorado with dates of service between June 1, 2008 and October 22, 2018. [#121-5]. The Mailed Notice advised the Settlement Class Members of the Settlement Agreement, including a description of the injunctive and monetary relief obtained, instruction on how to op-out or object to the Settlement Agreement, information on how Class Counsel would be paid, information about the Settlement Hearing, and the binding effect of a class judgment. *Id.* The Mailed Notice also informed the Settlement Class Members of the automated toll-free phone number and settlement website established by Dahl for persons seeking information about the settlement. *Id.* ¶ 8.

The automated toll-free phone number is a helpline to assist potential Settlement Class Members and any other persons seeking information about the Settlement. *Id.* ¶ 8. The phone number is fully automated and operates 24 hours per day, seven days per week, and is still operating. *Id.* The toll-free phone number includes a voice response system that allows callers to listen to general information about the settlement and responses to frequently asked questions ("FAQs"). *Id.* ¶ 9. According to the Ness Declaration, "Dahl worked with counsel for the Parties to prepare responses to the FAQs to provide accurate answers to anticipated questions about the settlement, and Counsel approved the full helpline script prior to implementation." *Id.*

The settlement website was activated on February 19, 2019, and is still operating. *Id.* ¶ 9. According to the Ness Declaration, the website displays "general settlement information; a list of important dates and deadlines; a list of [FAQs] and Responses; reviewable and downloadable versions of important documents, including the Complaint, the Settlement Agreement, the Long Form Notice, and the motion for attorneys' fees and

expenses; and information on how to contact the Settlement Administrator via email, U.S. Mail, or phone." *Id.* ¶ 12.

Out of the 19,750 Mailed Notices initially sent, 3,183 were returned with no forwarding address. *Id.* Dahl sent 2,992 of the returned Mailed Notices for tracing, and was able to obtain updated information and re-mail the Mailed Notice to 2,222 Settlement Class Members. *Id.* Of those 2,222 Mailed Notices, 205 were returned without a forwarding address and 41 were returned with a forwarding address. *Id.* Dahl re-mailed the Mailed Notice to all 41 Settlement Class Members with forwarding addresses and, in total, re-mailed 2,263 Mailed Notices. *Id.* Ultimately, Dahl was unable to locate addresses for only 5.9% of the total population of Settlement Class Members. *Id.* Kimberly K. Ness, a principal of Dahl, states that, in her experience, this is a highly successful mailing rate for a Settlement Class of this size. *Id.*

As of April 22, 2019, Dahl has received, and responded to when appropriate, 26 live phone calls, 8 email messages, and 1 piece of written correspondence related to this settlement. *Id.* ¶ 14. Also as of April 22, 2019, the automated helpline has received 118 telephone calls and the settlement website has received 212 unique visits. *Id.* ¶¶ 10, 12. Pursuant to the Preliminary Approval Order, the deadline for potential class members to opt-out of or object to the Settlement was April 5, 2019. [#125] at 15. By that deadline, of the 19,750 Settlement Class Members: (i) eight individuals opted out of the Settlement, (ii) one family of Settlement Class Members objected to the Settlement, and (iii) no Settlement Class Members provided notices of intent to appear at the May 24, 2019 Settlement Hearing. *Motion for Final Approval* [#131] at 10; *Ness Decl.* [#131-2] ¶ 15. A list of those persons who have requested to opt-out of the settlement agreement has been

filed on the docket under Level 1 Restriction.  [#133].

Finally, no Settlement Class Members appeared at the May 24, 2019 Settlement Hearing to object to the Settlement.

## II.  Final Certification of the Settlement Class

A class certified for settlement purposes only must nevertheless satisfy the requirements of Rule 23.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620- 622 (1997).  "Settlement, though a relevant factor, does not inevitably signal that class-action certification should be granted more readily than it would be were the case to be litigated."  *Id.* at 620 n.16.  Indeed, "proposed settlement classes sometimes warrant more, not less, caution on the question of certification."  *Id.*  "On the other hand, a district court that is asked to certify a class for settlement purposes need not inquire whether the case would, if tried, present 'intractable management problems,' as settlement necessarily means the parties are not proceeding to trial."  *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1227 (D.N.M. 2012) (quoting *Amchem Prods.*, 521 U.S. at 620 n.16).

A party seeking to certify a class bears the "strict" burden of proving that the requirements of Rule 23 have been met.  *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988); *see also Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 381 (D. Colo. 1993).  Specifically, Plaintiff must establish each of the four requirements set forth in Rule 23(a): "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  *Cook*, 151 F.R.D. at 381.

In addition, a party seeking class certification must establish that the case falls within one of the subcategories provided in Rule 23(b). *Id.* These subcategories are: (1) that separate actions would create a risk of inconsistent adjudications resulting in conflicting consequences for Defendants or other putative class members; (2) that Defendants have acted on grounds that generally apply to the class; and (3) that common questions of law or fact predominate over individualized questions. *DG ex rel. Stricklen v. Deveughn*, 594 F.3d 1188, 1194 (10th Cir. 2010).

## A.    Rule 23(a)

Defendants do not oppose the Motion for Final Approval [#131] and, pursuant to the Settlement Agreement, have agreed to the certification of a Rule 23 class for settlement purposes. *See* [#131] at 6; [#121-1] at 24. Plaintiff asserts that because the Court provisionally certified the Class for settlement purposes in the Preliminary Approval Order [#125] and because "nothing about the Class or the bases supporting class certification has changed since then," the Court should grant final certification of the Class to implement the Settlement. *Motion for Final Approval* [#131] at 12. The Court agrees.

### 1.    Numerosity

With respect to the numerosity element of Rule 23(a)(1), "[t]he burden is upon plaintiffs seeking to represent a class to establish that the class is so numerous as to make joinder impracticable." *Folks v. State Farm Mut. Auto. Ins. Co.*, 281 F.R.D. 608, 616 (D. Colo. 2012) (quoting *Peterson v. Okla. City Hous. Auth.*, 545 F.2d 1270, 1273 (10th Cir. 1976)). Determining whether Plaintiff has met this element is not subject to a "set formula"; it is a "fact-specific inquiry." *Folks*, 281 F.R.D. at 616 (quoting *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006)).

Here, Defendants do not oppose the certification of a Rule 23 class and thus, do not dispute that Plaintiff meets the numerosity element of Rule 23(a). The Settlement Class includes 19,742 putative class members, *Motion for Final Approval* [#131] at 12, which the Court finds to satisfy the numerosity factor of Rule 23(a). *See, e.g., Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (finding that proposed Class consisting of "100 to 150 members—is within the range that generally satisfies the numerosity requirement"); *Bittinger v. Tecumseh Prod. Co.*, 123 F.3d 877, 884 n.1 (6th Cir. 1997) (rejecting as "frivolous" the "content[ion] that Plaintiffs failed to address the issue of whether joinder of all [1,100] members of the class [wa]s impracticable"); *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) ("[T]he difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable."); *Clay v. Pelle*, No. 10-cv-01840-WYD-BNB, 2011 WL 843920, at *2-3 (finding that a class of 400 prisoners, all subject to the challenged prison policy, satisfied the numerosity element).

### 2. Common Question of Law or Fact

The Court next turns to the common-question requirement of Rule 23(a)(2). For class members to share a least one common question of law or fact, they must "possess the same interest and suffer the same injury." *Trevizo*, 455 F.3d at 1163 (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). Class members do not need to share both common questions of law *and* common questions of fact. *J.B. ex rel Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999). Determining the existence of common questions turns on whether "a classwide proceeding will be efficacious in generating common answers apt to drive the resolution of litigation." *Martinez v. Nash Finch Co.*, No. 11-cv-02092-MSK-KLM, 2013 WL 1313921, at *5 (D. Colo. Jan. 30, 2013). Further,

the common question must be able to be resolved classwide, meaning that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Here, Defendants have stipulated to the certification of a Rule 23 class and thus, do not dispute that Plaintiff meets the commonality requirement of Rule 23(a). Plaintiff states that "the claims of every putative member of the Settlement Class, including [her], turn on the same common questions that have common answers, including whether Anthem Colorado was acting as an ERISA fiduciary when it created and applied its ZBHA Fee Schedule to Out-of-Network Behavioral Health Services, whether it breached its fiduciary duties by so doing, and whether Anthem Colorado's use of the ZBHA Fee Schedule for Out-of-Network Behavioral Health Services violated Colorado's mental health parity laws." *Motion for Final Approval* [#131] at 13. The Court agrees that "[t]he answer to each of these questions would be the same for every Settlement Class member and would rest on common proof that does not depend upon the individual circumstances of any Settlement Class member, including Plaintiff." *Id.*; *see Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 126 (D. Colo. 2016) ("Commonality still exists if class members differ factually but challenge the application of a commonly-applied policy."). The impact of Defendants' alleged conduct was consistent among potential class members and thus, the resolution of Plaintiff's common questions would result in common answers classwide. *See Trevizo*, 455 F.3d at 1163 (affirming the district court's finding that the commonality element was not satisfied because each of the plaintiffs' claims presented "divergent fact patterns") (internal quotation marks omitted). Therefore, the

Court finds that the commonality element is met as a result of the common questions articulated by Plaintiff.

### 3. Typicality

In order to establish the third element of Rule 23(a), Plaintiff must demonstrate that her individual claims are typical of the class members she seeks to represent. *See Folks*, 281 F.R.D. at 617. Rule 23(a)(3) states that typicality is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." In other words, "[a] prerequisite for certification is that the class representatives be part of the class and possess the same interest and suffer the same injury as class members." *Folks*, 281 F.R.D. at 617-18 (quoting *Rector v. City & Cty. of Denver*, 348 F.3d 935, 949 (10th Cir. 2003)).

Defendants do not oppose the certification of a Rule 23 class and thus, do not dispute that Plaintiff meets the typicality element of Rule 23(a). Plaintiff asserts that the same questions of law and fact raised in her allegations demonstrate that her claims are typical of all putative class members. *Motion for Final Approval* [#131] at 13; *DG*, 594 F.3d at 1199 (stating that "typicality exists where . . . all class members are at risk of being subjected to the same harmful practices, regardless of any class members individual circumstances"). Based on the information that Plaintiff has provided, the Court finds that the typicality factor is satisfied. *See Pliego*, 313 F.R.D. at 126 (finding that the plaintiffs satisfied the typicality standard because their claims "challenge[d] the same conduct under the same legal and remedial theories as d[id] the claims of the absent class").

### 4. Fair Representation

Finally, the Court determines whether the fair-representation requirement of Rule

23(a) has been satisfied. In order to do so, Plaintiff must show that the class representative will fairly and adequately protect the class interests. *See Folks*, 281 F.R.D. at 618 (citing Fed. R. Civ. P. 23(a)(4)). The Tenth Circuit has mandated that two questions must be asked in making this determination: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Folks*, 281 F.R.D. at 618 (quoting *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002)). "Any doubt regarding adequacy of representation should be resolved in favor of [ ] upholding the class[.]" *Schwartz v. Celestial Seasonings, Inc.*, 178 F.R.D. 545, 552 (D. Colo. 1998).

Defendants do not oppose the certification of a Rule 23 class and thus, do not dispute that Plaintiff meets the fair and adequate representation element of Rule 23(a)(4). In response to the first question, Plaintiff states that there are no conflicts between her or her counsel and the Settlement Class. *Motion for Preliminary Approval* [#121] at 22. Plaintiff further states that she "and Settlement Class [M]embers share an interest in demonstrating that Anthem Colorado's development and utilization of the ZHBA Fee Schedule violated ERISA and Colorado law, and in obtaining equitable and monetary relief, including requiring Anthem Colorado to change its business practices." *Id.* In response to the second question, Plaintiff maintains that Class Counsel are experienced class action attorneys who are well qualified to litigate this case. *Id.* Plaintiff notes that Class Counsel "from Zuckerman Spaeder LLP have successfully prosecuted numerous nationwide class actions against insurance companies for violations of ERISA and related federal and state laws [and that,] [a]mong their successes[,]" have obtained two of the

largest recoveries in health insurance class actions.  *Id.*

The Court finds that, based on the information that Plaintiff has provided, the fair and adequate representation element of Rule 23(a) is satisfied.  *See Pliego*, 313 F.R.D. at 127 ("Absent evidence to the contrary, a presumption of adequate representation is invoked.") (quoting *Schwartz v. Celestial Seasonings*, 178 F.R.D. 545, 552 (D. Colo. 1998)); *see also In re Thornburg Mortg.*, 912 F. Supp. 2d at 1236 (In considering whether named plaintiffs and their counsel will prosecute vigorously on behalf of the class, "the experience and competence of the attorney representing the class may inform the court's analysis." (citing *Lopez v. City of Santa Fe*, 206 F.R.D. 285, 288-90 (D.N.M. 2002))).

## B.    Rule 23(b) Requirements

In order for a class to be certified, Plaintiff must satisfy not only the requirements of Rule 23(a), but also one of the requirements of Rule 23(b).  Plaintiff seeks certification only pursuant to Rule 23(b)(3).  *Motion for Final Approval* [#131] at 14.  Rule 23(b)(3) states, in part, that class treatment is allowed where (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In making this determination, the Court considers: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) whether it is desirable to concentrate the litigation of the claims in the particular forum; and (4) any difficulties in managing a class action.  *Id.*

Defendants do not oppose the certification of a Rule 23 class and thus, they do not

dispute that Plaintiff meets the requirements of Rule 23(b)(3). In its Rule 23(a) commonality discussion above, the Court found that whether the putative class members were subject to Anthem Colorado's ZBHA Fee Schedule for Out-of-Network Behavioral Health Services was a question common to all putative class members. *Motion for Final Approval* [#131] at 13. Thus, the same alleged course of conduct by Defendants is at the heart of all putative class members' claims, predominating over any potential individual differences. *See Torres-Vallejo*, 220 F. Supp. 3d at 1084 ("Rule 23(b)(3) simply requires a showing that the questions common to the class predominate over individualized questions.") (citing *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1255 (10th Cir. 2014)). Plaintiff has therefore met the predominance element of Rule 23(b)(3). Additionally, Plaintiff states, and the Court concurs, that the Settlement Class "satisfies the superiority requirement because 'the potential recovery for an individual plaintiff is unlikely to provide sufficient incentive for individual members to bring their own claims.'" *Motion for Final Approval* [#131] (quoting *Rhodes v. Olson Assocs., P.C.*, 83 F. Supp. 3d 1096, 1115 (D. Colo. 2015)).

Addressing each of the factors outlined in Rule 23(b)(3) in turn, there is no indication that: (1) the absent class members have an interest in controlling the litigation; (2) other litigation regarding this issue has been commenced; or (3) it would not be desirable to concentrate the claims in this particular forum. *See* Fed. R. Civ. P. 23(b)(3). As stated above, when determining whether to certify a class for settlement purposes, the Court does not need to consider the fourth requirement of whether there will be any difficulties in managing a class action. *Anchem Prods.*, 521 U.S. at 620 (explaining that "a district court need not inquire whether the case, if tried, would present intractable

management problems . . . for the proposal is that there be no trial"). Therefore, the Court agrees that proceeding as a class is the superior method for adjudicating this controversy. *See Torres-Vallejo*, 220 F. Supp. 3d at 1084-85 (finding that Rule 23(b)(3) was satisfied because "individualized resolution of claims would be both unlikely and impractical").

Accordingly, for settlement purposes only, the Court finally certifies the Settlement Class pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3). *See DG*, 594 F.3d at 1194.

### III. Final Approval of Class Action Settlement

### A.    The Objection Letter [#129]

The Court first addresses the single objection to the Settlement which was submitted to the Court on March 11, 2019.[5]  *See Letter to the Clerk of the Court, dated March 11, 2019, filed March 14, 2019* [#129] (the "Objection Letter").  Courts consider objections from class members in the context of evaluating whether a proposed class settlement satisfies the Rule 23 standard.  *See* Fed. R. Civ. P. 23(e)(5) advisory committee's note to 2018 amendment ("Objections by class members can provide the court with important information bearing on its determination under Rule 23(e)(2) whether to approve the proposal.").  After reviewing the Objection Letter [#129], the Court agrees with Plaintiff that this objection goes beyond the scope of this case and the Settlement.

The Objection Letter is submitted by one family and generally objects to the Settlement on the grounds that "it will not compensate members even a fraction of the

---

[5]  The Objection Letter is signed by three individuals, two of whom are potentially minors. Because the Objection Letter contains private medical information concerning minors, the Court refrains from disclosing the objectors' names and summarizes the contents of the Objection Letter only to the extent necessary to adjudicate the Motion for Final Approval [#131].

amount that they are owed." [#129] at 2. However, the Objection Letter appears to concern broader issues with the way in which health insurance companies generally cover mental health needs. *Id.* at 2-3. The Objection Letter first cites to national statistics that demonstrate the difficulty in finding mental health doctors and psychiatric hospitals that will accept health insurance, the long wait times for patients seeking mental health treatment, and the greater out-of-pocket costs for mental health services generally. *Id.* Next, the Objection Letter describes the family's continued struggle to receive adequate treatment for serious behavioral health problems among members of the family. *Id.* at 3- 6. The family states that it has encountered difficulties in finding in-network care that was geographically accessible and that certain services (such as residential or in-patient care and long-term hospitalization) had not been authorized or covered by Anthem Colorado under their health insurance plan. *Id.* at 4-6. In sum, the family objects to the Settlement as "grossly inadequate" because it believes Anthem Colorado should have covered behavioral health services for which the family had to pay out-of-pocket. *Id.* at 6.

Like Plaintiff, the Court does sympathize with the family's difficulties in obtaining adequate health care. *See Motion for Final Approval* [#131] at 24. However, the Court agrees with Plaintiff that the family's concerns do not fall within the scope of issues addressed by the Settlement. *Id.* As stated above, this case and the proposed Settlement pertain to Anthem Colorado's alleged use of a different reimbursement methodology for Out-of-Network Behavioral Health Services. It does not concern issues relating to in-network providers or the coverage of specific services and treatments. Therefore, as Plaintiff notes, "even if [she] was successful in certifying a class, prevailing at trial, and obtaining the maximum relief available, this case would not remedy the [family's]

concerns and the [family] would not be eligible to receive the amounts identified in the objection." *Id.*

Accordingly, because the issues raised by the objection do not call into question the fairness, reasonable, or adequacy of the Settlement for the claims at issue in this litigation, the Court **overrules** the Objection Letter [#129].

## B.     Adequate Notice to the Settlement Class Members

Pursuant to Rule 23(e)(1), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B); *see Aragon v. Clear Water Prod. LLC*, No. 15-cv-02821-PAB-STV, 2018 WL 6620724, at *1 (D. Colo. Dec. 18, 2018). Additionally, Rule 23(c)(2)(B) provides that "[f]or any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice may be by "United States mail, electronic means, or other appropriate means" and

> must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* "In addition to the requirements of Rule 23, the Due Process Clause also guarantees unnamed class members the right to notice of a settlement." *Aragon*, 2018 WL 6620724, at *1 (citing *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005)). "However, due process does not require that each class

- 22 -

member receive actual notice to be bound by the adjudication of a representative action. Instead, the procedural rights of absent class members are satisfied so long as 'the best notice practicable under the circumstances [is given] including individual notice to all members who can be identified through reasonable effort.'" *Id.* (quoting *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1110 (10th Cir. 2001)). Therefore, "[t]he legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are coextensive and substantially similar." *DeJulius*, 429 F.3d at 944.

In this case, the Court finds that the parties have complied with the Notice Plan approved by the Court's Preliminary Approval Order [#125] and have satisfied the requirements of Rule 23 and Due Process. [#125] ¶ 12. The Court-approved notice was provided by United States mail, electronic means, and through the automated toll-free phone number which, taken together, reasonably notified Settlement Class Members of the terms of the Settlement; their right to a share of the Settlement Fund; their right to object to the Settlement or to opt-out and preserve their right to pursue their own remedies; and their right to appear in person or by counsel at the Settlement Hearing and be heard regarding approval of the Settlement; and the binding effect of a class judgment. Fed. R. Civ. P. 23(c)(2)(B); *see Long Form Notice* [#121-4]; *Mailed Notice* [#121-5]. The Mailed Notice was provided with ample time for the potential Settlement Class Members to follow the applicable procedures and to consider Plaintiff's request for attorneys' fees and expenses and for an incentive amount for the class representative.

Moreover, the parties made reasonable efforts to identify and provide notice to all Settlement Class Members. *See* Fed. R. Civ. P. 23(e)(1). Of the 19,750 Settlement Class Members identified by Defendants, Dahl was unable to locate only 5.9% of the members

for mailing purposes after multiple efforts. *Ness Decl.* [#131-2] ¶ 7; *see Tennille v. W. Union Co.*, 785 F.3d 422, 438-39 (10th Cir. 2015) (finding that mailing of settlement notice to addresses updated through post office's change-of-address database was sufficient under Rule 23 and due process); *DeJulius*, 429 F.3d at 944 (noting that due process inquiry "focuses upon whether the district court gave the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort" (internal quotation marks omitted)). In addition to the Mailed Notice, Dahl maintained the automated toll-free phone number to provide information regarding the Settlement. *Ness Decl.* [#131-2] ¶ 8. Dahl also maintained the settlement website which provided information and documents regarding the Settlement, a list of relevant deadlines, responses to FAQs, and contact information. *Id.* ¶ 12. *See Tennille*, 785 F.3d at 437 (finding that "notice satisfied due process by informing class members of several ways they could obtain information about the claims that they would be releasing if they joined the settlement").

Based on the foregoing, the Court concludes that the notice provided to the Settlement Class Members constituted the best notice practicable, which fully satisfied the requirements of Rule 23(e) and Due Process.

**C.   Approval of Settlement**

Rule 23(e)(2) provides that a class action settlement may be approved only if the Court finds that the settlement is fair, reasonable, and adequate. *Rutter & Wilbanks Corp. v. Shell Oil*, 314 F.3d 1180, 1186 (10th Cir. 2002). In the Tenth Circuit, a proposed class action settlement is reviewed by the Court primarily by considering four factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious

questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir.1993), *overruled in part on other grounds by Devlin v. Scardelletti*, 536 U.S. 1 (2002). "Additional factors which may be relevant include: (1) the risk of establishing damages at trial; (2) the extent of discovery and the current posture of the case; (3) the range of possible settlement; and (4) the reaction of class members to the proposed settlement." *Belote v. Rivet Software, Inc.*, No. 12-cv-02792-WYD-MJW, 2014 WL 3906205, at *2 (D. Colo. Aug. 11, 2014) (citing *In Re New Mexico Nat. Gas Antitrust Litig.*, 607 F. Supp. 1491, 1504 (D. Colo. 1984)). The proponent of the settlement has the burden of showing that the settlement is fair. *Id.* at 1015. Approval of a proposed settlement is committed to the sound discretion of the trial court. *Jones v. Nuclear Pharm., Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). The "presumption in favor of voluntary settlement agreements" is especially strong in class actions. *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014).

In addition to the four factors identified above, Rule 23(e) was recently amended to provide its own list of factors for courts to consider when determining whether a settlement is "fair, reasonable, and adequate." Those factors include:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The above factors are not intended to displace the considerations that the Circuits apply to assess proposed settlements. Rather, the goal of these factors is "to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. Accordingly, the Court first addresses the relevant factors the Tenth Circuit applies in approving class action settlements and then, to the extent that they do not overlap, considers the factors identified in Rule 23(e)(2).

Regarding the first factor identified in *Gottlieb*, where "the settlement resulted from arm's length negotiations between experienced counsel after significant discovery had occurred, the Court may presume the settlement to be fair, adequate and reasonable." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006); *Tuten*, 41 F. Supp. 3d at 1007. Fair and honest negotiations happen when the parties have "vigorously advocated their respective positions throughout the pendency of the case." *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997). Here, Plaintiff asserts that nothing has changed since the Preliminary Approval Order [#125] was issued to alter the Court's initial finding that the Settlement Agreement is a product of arm's length negotiation. *Motion for Final Approval* [#131] at 17. The Court agrees.

There is no evidence of collusion and the Settlement Agreement appears to be the result of protracted dialogue between experienced counsel engaged in good faith negotiation. *Id.* ("The parties had multiple in-person negotiation sessions and numerous

conference calls, including calls in which both Plaintiff herself and a representative of Anthem Colorado participated, to discuss Anthem Colorado's reimbursement practices."). This matter involved two challenges on the pleadings, an adversarial discovery process, and a Settlement Conference that was held in May of 2017. *See* [#29, #66, #106]. Thus, because the history of the litigation establishes that the parties "vigorously advocated their respective positions throughout the pendency of the case," *see Wilkerson*, 171 F.R.D. at 284, the Court finds that the Settlement Agreement was fairly and honestly negotiated at arm's length. *See also* Fed. R. Civ. P. 23(e)(2)(B).

Second, serious questions of law and fact exist where disputes between the parties are "such that they could significantly impact this case if it were litigated." *Lucas*, 234 F.R.D. 688, 693-94 (D. Colo. 2006). Plaintiff states that, "[b]ut for the Settlement, Anthem Colorado would have challenged her efforts to certify a class on numerous grounds[ ]" and "would have vigorously challenged the form of relief sought by Plaintiff on legal and factual grounds." *Motion for Final Approval* [#131] at 20. Plaintiff further notes that "[g]iven that the law surrounding mental health parity requirements is relatively undeveloped, it is difficult to predict how the Court would have resolved these merits defenses." *Id.* Thus, in short, the parties agree that the litigation of Plaintiff's claims "would be challenging and hard-fought at every step [and that] Plaintiff faced real risk of total defeat on several fronts." *Id.* The Court therefore finds that serious questions of law and fact exist.

Third, the recovery is to be weighed "against the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *Gottlieb*, 11 F.3d at 1015. Here, the relief offered to

Plaintiff in the Settlement Agreement is significant, without her having to take the additional risks associated with litigation. *Motion for Final Approval* [#131] at 20. This case has been pending for nearly five years and, given the complicated nature of the legal questions and issues presented, it could, in the absence of settlement, continue into the foreseeable future. *Id.* Instead, the Settlement Agreement provides immediate relief to Plaintiff and the Settlement Class Members through two means. First, the Settlement Agreement provides the injunctive relief Plaintiff seeks by requiring Anthem Colorado to align, for three years, its reimbursement methodology for Out-of-Network Behavior Health Services with the method most often used for out-of-network medical and surgical health care services. *Id.* at 18. Second, Plaintiff and the Settlement Class Members will receive monetary relief under the Settlement Agreement which reimburses the Settlement Class for a portion of the difference between the actual Allowed Amount for the Out-of-Network Behavioral Health Services and what the Allowed Amount would have been had Defendant Anthem Colorado used its RBRVS Reimbursement Methodology. *Id.*

"According to the information in Anthem Colorado's records, the Settlement Fund of $380,000 is, in total, about 29% of the total difference between the reimbursement Class Members received for Out-of-Network Behavioral Health Services and the amount they would have received had Anthem Colorado applied the reimbursement methodology for other out-of-network medical services, and factoring in deductible and other co-insurance obligations." *Id.* at 18-19. The parties agree that this monetary recovery compares favorably to other approved ERISA settlements. *Id.* at 19. (collecting cases). The parties also agree that, because the Settlement Class Members will recover quickly under the Settlement Agreement, the Class will have "the benefit of the time value of a

sum clearly determined by the Plan Allocation." *Id.* Thus, rather than waiting until this litigation is resolved, the Settlement Class Members can receive their distribution sooner and earn interest on, invest, or spend the money they receive from the Settlement. *Id.* Therefore, the Court finds that the value of an immediate recovery outweighs the mere possibility of future relief. *See also* Fed. R. Civ. P. 23(e)(2)(C).

Fourth, "the recommendation of a settlement by experienced plaintiff[s'] counsel is entitled to great weight." *Wilkerson*, 171 F.R.D. at 288-89. Plaintiff's principal counsel are "experienced attorneys with extensive experience in multi-jurisdictional and complex class action litigation, with a particular emphasis and expertise in the area of class action litigation of health-care related and mental health-care related issues." *Motion for Preliminary Approval* [#121] at 16. Class Counsel strongly believe the settlement to be fair and reasonable, an assertion which is supported by the limited number of Settlement Class Members that opted-out out of or objected to the Settlement. *Id.* at 18-20, 21, 22; *see Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (noting that the fact that "only a small number of objections are received . . . can be viewed as indicative of the adequacy of the settlement" (internal quotation marks omitted)); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86–87 (2d Cir. 2001) (where 27,883 notices were sent to class members, but only 72 class members requested exclusion from the settlement and only 18 class members objected, court stated that "this small number of objections weigh[s] in favor of the settlement"); *Aragon*, 2018 WL 6620724, at *3 ("Class members' apparently positive response to the settlement is further evidence that it is fair, adequate, and reasonable." (citation omitted)); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (approving class action settlement with 4.86% opt-out rate).

Thus, the Court finds that it is the judgment of the parties that the settlement is fair and reasonable.

Finally, with respect to the factors identified in Rule 23(e)(2) not already discussed, the Court finds that these factors are satisfied for purposes of approving the Settlement.

First, as to whether the class representative and class counsel have adequately represented the Class, Plaintiff asserts that she "has been a diligent, attentive, and unwavering advocate for the interests of the Class throughout the case [and that] [she] voluntarily shed light on her own mental health history to enable this case to be brought, and ultimately to achieve meaningful results for the Class." *Motion for Final Approval* [#131] at 16-17. Plaintiff also states that Class Counsel's adequate and effective representation of the class is demonstrated by the favorable settlement that was reached. *Id.* at 17 (citing *Motion for Attorneys' Fees* [#128] at 10-15). Based on Plaintiff's representations and the Court's findings that pertain to the Motion for Attorneys' Fees [#128], *see infra*, the Court agrees that Plaintiff, as the class representative, and Class Counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A).

Second, as to the equitable treatment of class members, the Court agrees with the parties that the proposed Plan of Allocation demonstrates that the Settlement treats each Class member equitably relative to each other. *Motion for Final Approval* [#131] at 22; Fed. R. Civ. P. 23(e)(2)(D). The Plan of Allocation provides for distribution to Settlement Class Members based on a pro rata calculation that applies to every member. *Id.* Moreover, the parties agree, and the Court concurs, that the Settlement Agreement does not improperly grant preferential treatment to Plaintiff or segments of the Class. Although Plaintiff seeks an incentive award, no objection was filed thereto and the Court finds the

award appropriate and reasonable, *see infra*.

Accordingly, based on all of the factors discussed here, the Court finds pursuant to Fed. R. Civ. P. 23(e) that the class settlement is fair, reasonable, and adequate.

**D.    Plan of Allocation**

"Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to the approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 692 (D. Colo. 2014) (quoting *Law v. Nat'l Collegiate Athletic Ass'n*, 108 F. Supp. 2d 1193, 1196 (D. Kan. 2000)).  "As a general rule, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." *Id.*

As stated above, the Plan of Allocation "provides for a pro rata distribution to eligible Settlement Class Members based on the ratio of each Settlement Class Member's Total Alleged Underpayment to the Total Alleged Underpayment of all Settlement Class Members collectively." *Motion for Final Approval* [#131] at 21; *see Settlement Agreement* [#121-1] § 9.1; *Plan of Allocation* [#121-8].  "To preserve the Settlement Fund, if the pro rata payment calculated for a particular Settlement Class Member does not exceed Two Dollars ($2.00), that Settlement Class Member will not receive a payment." *Id.*  According to the parties, "[t]his is because the administrative costs of processing and sending such check to the Settlement Class Member would have exceeded the value of the check itself." *Id.*

The parties agree that the Plan of Allocation is fair and adequate. *Id.*; *see In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. at 692 (citing *Maley v. Del Global Techs. Corp.*,

186 F. Supp. 2d 358, 367 (S.D.N.Y.2002) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.")). As already discussed, there is no indication of collusion between the parties in the preparation of the Settlement Agreement or that the Plan of Allocation improperly favors Plaintiff or segments of the Class. Additionally, no objection has been filed to the Plan of Allocation.[6] *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. at 692 (citing *Maley*, 186 F. Supp. 2d at 367 ("the favorable reaction of the Class supports approval of the proposed Plan of Allocation")). Moreover, the Court finds that the $2.00 threshold for payment from the Settlement Fund is proper in order to "preserve the Settlement Fund" in light of administrative costs and the fact that processing and sending a check for $2.00 would exceed the value of the check itself. *Motion for Final Approval* [#131] at 21. See, e.g., *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. at 692-93 (finding a $10.00 de minimis threshold in the allocation proper); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 463 (S.D.N.Y. 2004) (same). For these reasons, the Court concludes that the Plan of Allocation is fair, adequate, and reasonable.

## IV. Attorneys' Fees and Costs and Plaintiff's Incentive Award

Pursuant to the Settlement Agreement preliminarily approved by the Court, Plaintiff may seek attorney fees in an amount not to exceed 25% of the Settlement Fund and litigation costs not to exceed $30,000. *Settlement Agreement* [#121-1] § 12. "To increase recovery to the Class," Class Counsel requests an award of attorney fees in the amount of $60,000, which is approximately 16% of the Settlement Fund, and expenses in the

---

[6] The Objection Letter [#129] does not contend that the Plan of Allocation is unfair, unreasonable, or inadequate for the Settlement Class as a whole.

amount of $22,679.44.  *Motion for Attorneys' Fees* [#128] at 6.

## A.     Attorneys' Fees

In common fund cases, the Tenth Circuit has "recognized the propriety of awarding attorneys' fees . . . on a percentage of the fund, rather than lodestar, basis."[7]  *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993); *accord Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994) (holding that, although either method is permissible in common fund cases, "*Uselton* implies a preference for the percentage of the fund method").  "Because this is a common fund case and because [P]laintiff['s] fee request is for a percentage of the common fund, the Court will evaluate the attorney's fees award using the percentage of the fund approach."  *Aragon*, 2018 WL 6620724, at *4 (citing *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) (distinguishing common fund and statutory fees cases)).

The "percentage reflected in a common fund award must be reasonable [and] the district court must 'articulate specific reasons for fee awards.'"  *Brown*, 838 F.2d at 454 (quoting *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983)).  In determining the reasonableness of a percentage award, courts must apply the *Johnson* factors, which include:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee-this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12)

---

[7]  The lodestar amount is calculated by multiplying the number of attorney hours expended to resolve an issue or perform a task by a reasonable hourly billing rate.  *Hensley v. Eckerhart*, 641 U.S. 424, 433 (1983).

awards in similar cases.

*Id.* at 454-55 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974)). "[I]n evaluating the reasonableness of a fee award, the Court need not specifically address each *Johnson* factor. *Aragon*, 2018 WL 6620724, at *4 (citing *Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F.3d 1074, 1083 (10th Cir. 1998)); *see Brown*, 838 F.2d at 455-56 ("The court here clearly considered all of the relevant *Johnson* factors and applied them appropriately.").

With the above in mind, the Court addresses the *Johnson* factors most relevant to this case and finds that Class Counsel's requested fee award is reasonable.

### 1.    Time and Labor Involved

With respect to the first *Johnson* factor, Class Counsel represent that they have invested 867 hours litigating this case over its four-and-a-half-year life span. *Motion for Attorneys' Fees* [#128] at 13. The parties agree that this investment was necessary "to research the factual and legal theories, prepare multiple complaints, defeat motions to dismiss, and then to engage in lengthy arms-length negotiations, which involved extensively analyzing a substantial amount of claim data to evaluate the scope of a potential class and the risks and benefits of litigating the case or negotiating a resolution." *Id.* Given the substantial amount of time and labor invested in this case by Class Counsel, the Court finds that the first *Johnson* factor weighs in favor of granting the requested fee award. *See Aragon*, 2018 WL 6620724, at *5.

### 2.    Difficulty of the Questions Presented and Undesirability of the Case

The Court considers the second and tenth *Johnson* factors together. As previously stated, the parties agree that, but for the Settlement, Anthem Colorado would have

challenged Plaintiff's class certification on numerous grounds. *Motion for Attorneys' Fees* [#128] at 14-15. Even assuming Plaintiff did successfully certify the class, "Anthem Colorado could have sought immediate appellate review under Rule 23(f), challenging the certification decision on one or more grounds." *Id.* at 15. Indeed, Class Counsel has regularly faced such challenges in other cases they have litigated against different insurance companies. *Id.* (citation omitted). Moreover, "Anthem Colorado would have vigorously disputed Plaintiff's case on every aspect of the merits." *Id.* Therefore, "[w]hile Class Counsel believe they had a strong case to present, Plaintiff was not assured of prevailing in whole or even in part." *Id.* The Court acknowledges the inherent difficulties in class action litigation. *See Aragon*, 2018 WL 6620724, at *6 ("The Court agrees that counsel's time spent and out-of-pocket costs was not an insubstantial burden, given the significant risk that plaintiffs would be unable to obtain any recovery from defendants even if they prevailed on the merits."); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1143, 1150 (D. Colo. 2009) (noting that, although the area of law was not novel, the difficulty and complexity of the issues in the case supported a "generous award of attorney fees"). Accordingly, the Court finds that the second and tenth *Johnson* factors weigh in favor of granting the requested fee award.

### 3. Skill Required and Experience of Plaintiff's Counsel

The Court considers the third and ninth *Johnson* factors together. *See In re Qwest Commc'ns Int'l, Inc.*, 625 F. Supp. 2d at 1150 (noting that the second, third, and ninth *Johnson* factors are closely related). The parties agree that "Zuckerman is a national leader in the field of ERISA litigation, including class actions, on behalf of plaintiffs, providers, and others [and that] Zuckerman has successfully litigated through trial, or

settled, significant class actions that involve both behavioral health treatments and coverage and reimbursement policies." *Motion for Attorneys' Fees* [#128] at 13; *see Goldfarb Aff.* [#128-1] ¶¶ 5-13. The parties further agree that the "The Gold Firm is a highly regarded Colorado-based firm that represents plaintiffs in a wide variety of cases." *Id.*; *see Luther Aff.* [#128-2] ¶¶ 5-6. Accordingly, given that Plaintiff's counsel successfully negotiated a settlement that provides meaningful recovery for the Class and given that there is no indication that counsel lacks in experience, reputation, or ability, the Court finds that the ninth *Johnson* factor weighs in favor of granting the requested fee award.

### 4. Preclusion of Other Employment and Fixed or Contingent Nature of the Fee

The Court considers the fourth and sixth *Johnson* factors together. The Motion for Attorneys' Fees states that "Class Counsel took the case as a full-contingency matter, increasing their risk of nonpayment and exposure in the event of an unsuccessful outcome." [#128] at 14; *see Goldfarb Aff.* [#1281-1] ¶¶ 18-19 ("In short, the time devoted by Class Counsel to this case was a major investment of both firms' resources to the financial detriment of other uses of that time."). As an initial matter, "[c]ourts have consistently found that [a contingency] fee arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of the reasonableness of a requested fee award." *Aragon*, 2018 WL 6620724, at *6 (citing *Shaw v. Interthinx, Inc.*, No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *8 (D. Colo. Apr. 22, 2015); *Farley v. Family Dollar Stores, Inc.*, No. 12-cv-00325-RM-MJW, 2014 WL 5488897, at *4 (D. Colo. Oct. 30, 2014)). Moreover, given that Class Counsel spent a significant number of hours on this matter on a contingent fee basis, it is reasonable to expect that this case precluded other work. *See id.* Accordingly, the Court finds that the fourth and sixth *Johnson* factors

weigh in favor of granting the requested fee award.

**5.      The Customary Fee/Awards in Similar Cases**

The Court considers the fifth and twelfth *Johnson* factors together.  *See Aragon*, 2018 WL 6620724, at *5.  "Courts in this district have recognized that '[t]he customary fee to class counsel in a common fund settlement is approximately one-third of the economic benefit bestowed on the class.'"  *Id.* (quoting *Anderson v. Merit Energy Co.*, No. 07-cv-00916-LTB-BNB, 2009 WL 3378526, at *3 (D. Colo. Oct. 20, 2009)); *see also Shaw*, 2015 WL 1867861, at *6 (citing cases holding that fees within the 20-50% range are "presumptively reasonable"); *Brody v. Hellman*, 167 P.3d 192, 203 (Colo. App. 2007) (collecting cases approving percentage fees ranging from 24% to 36% of the common fund).  Plaintiff in this case seek $82,679.44 in attorneys' fees and costs, or between 21% and 22% of the total Settlement Fund.  The Court finds this amount to be well in line with the customary fees and awards in similar cases.  Accordingly, the fifth and twelfth *Johnson* factors weigh in favor of granting the requested fee award.

**6.      Amount Involved and Results Obtained**

"[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained."  *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (internal quotation marks omitted).  Here, the Settlement obtained by Class Counsel achieved a change in Anthem Colorado's reimbursement methodology for Out-of-Network Behavioral Health Services, and monetary relief to Settlement Class Members who had greater out-of-pocket costs as a result of that reimbursement methodology.  *Motion for Attorneys' Fees* [#128] at 10-11.  The Court agrees that the injunctive relief provides a substantial non-monetary benefit to the Settlement Class Members and that the

Settlement Fund of $380,000 provides valuable retrospective relief. *Tennille v. W. Union Co.*, No. 09-cv-00938-JLK-KMT, 2014 WL 5394624, at *4 (D. Colo. Oct. 15, 2014) (recognizing that prospective relief contributes to the "real and actual value" of a settlement). Notably, Plaintiff states that "[t]o remedy the retrospective harm caused by Defendant's conduct, Plaintiff [initially] sought an order directing Anthem Colorado to reprocess Class Members' claims for Out-of-Network Behavioral Health Services under the same formula that Anthem Colorado used to calculate reimbursement for out-of-network non-behavioral medical health services." *Motion for Attorneys' Fees* [#128] at 11. Because of the Settlement, however, the need to reprocess is avoided and benefits to the eligible Settlement Class Members can be provided immediately without requiring the members to do anything. *Id.* at 11-12. Accordingly, the Court finds that the eighth *Johnson* factor weighs in favor of granting the requested fee award.

### 7.    Lodestar Crosscheck

Finally, "[c]ourts evaluating the reasonableness of a percentage fee award will often crosscheck the requested fee with the lodestar amount." *Aragon*, 2018 WL 6620724, at *7 (citing *Shaw*, 2015 WL 1867861, at *8; *Brody*, 167 P.3d at 201 (noting that, "[t]ypically, courts use the percentage method and then crosscheck the adequacy of the resulting fee by applying the lodestar method")). Class Counsel seek $60,000 in attorney's fees for approximately 867 hours spent on the litigation.

Numerous attorneys from two law firms worked on this lawsuit for Plaintiff:

| Name & Position | Hours | Rate | Total Amount |
|---|---|---|---|
| *Zuckerman Spaeder LLP:* | | | |
| D. Brian Hufford, Attorney | 191.1 | $1,095.00 | $209,254.50 |
| Jason S. Cowart, Attorney | 49.4 | $940.00 | $46,436.00 |
| Andrew N. Goldfarb, Attorney | 315.2 | $825.00 | $260,040.00 |

| | | | |
|---|---|---|---|
| Conor O'Croinin, Attorney | 169.5 | $730.00 | $123,735.00 |
| Lori V. Duignan, Attorney | 42.7 | $355.00 | $15,158.50 |
| Jer-Wei (Jay) Chen, Attorney | 3.9 | $355.00 | $1,384.50 |
| Laura Eller, Attorney | 5.5 | $375.00 | $2,062.50 |
| D'Ann Vermilye, Attorney | 4.3 | $355.00 | $1,526.50 |
| William K. Meyer (est.), Attorney | 0.3 | $500.00 | $150.00 |
| Kimberley Wilson, Attorney | 0.1 | $205.00 | $20.50 |
| | | | |
| *Gold Law Firm:* | | | |
| Greg Gold, Attorney | 15 | $450.00 | $6,750.00 |
| Sommer Luther, Attorney | 70 | $450.00 | $31,500.00 |

*See* [#128-1] at 8. Combining all accrued fees for the twelve attorneys from both law firms, creates a lodestar of $698,018.00. The agreed-upon total amount of the fee award is $60,000, which is approximately 8.6% of $698,018.00.

The Court has considered the amount in controversy, the length of time required to represent Plaintiff and the Settlement Class Members effectively, the complexity of the case, the value of the legal services to Plaintiff and the Settlement Class Members, and other factors in determining whether the requested fees and costs are reasonable. *See Manohar v. Sugar Food LLC*, No. 16-cv-02454-NYW, 2017 WL 3173451, at *5 (D. Colo. July 26, 2017). Based on the undersigned's thirty-three years of combined private and judicial experience and careful consideration of the attorneys' Affidavits [#128-1, #128-2] and the issues underlying this matter, the Court finds that the lodestar crosscheck supports the reasonableness of the requested fee. *See Shaw*, 2015 WL 1867861, at *8 (finding lodestar multiplier of 1.37 to be "significantly lower than lodestar multipliers that Colorado federal courts and other courts consistently have approved in other class action cases"); *Mishkin v. Zynex, Inc.*, No. 09-cv-00780-REB-KLM, 2012 WL 4069295, at *2 (D. Colo. Sep. 14, 2012) (collecting Colorado federal district court cases approving lodestar multipliers ranging from 2.5 to 4.6).

Accordingly, for the reasons stated above, the Court finds that Class Counsel's requested fee award is reasonable.

## B. Attorneys' Costs

Class Counsel seeks separate reimbursement for out-of-pocket litigation expenses, totaling $22,679.44. *Motion for Attorneys' Fees* [#128] at 6. As stated above, the parties' Settlement Agreement permits Plaintiff to recover litigation costs not to exceed $30,000. [#121-1] § 12.

"As with attorneys' fees, an attorney who creates or preserves a common fund for the benefit of a class is entitled to receive reimbursement of all reasonable costs incurred." *Vaszlavik v. Storage Corp.*, No. 95-B-2525, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000). "Expenses are compensable in a common fund case if the particular costs are the type typically billed by attorneys to paying clients in the marketplace." *Brody*, 167 P.3d at 205-06 (citing *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cty., Okla.*, 8 F.3d 722, 725-26 (10th Cir. 1993)).

With respect to costs, Plaintiff's counsel provide the following information:

| Category | Total Amount |
| --- | --- |
| *Zuckerman Spaeder LLP:* | |
| Non-local travel | $10,024.63 |
| Westlaw Research | $8,567.42 |
| Auto Rental | $169.32 |
| Telephone Reimbursed | $164.85 |
| Pacer – Docket Research | $49.40 |
| Local Transportation | $807.78 |
| Express Delivery | $55.27 |
| Meal Reimbursement | $79.76 |
| Postage | $4.60 |
| Court costs | $261.00 |
| | |
| *Gold Law Firm*: | |
| Legal Research | $1,504.81 |

| | |
|---|---|
| Filing Fees | $438.00 |
| Service of Process | $210.00 |
| Case Management Fees | $207.00 |
| Postage | $1.20 |
| Pacer | $1.50 |
| Copying Cost | $132.90 |

*See* [#128-1] at 9; [#128-2] at 3.  Combining all accrued expenses for both firms, the total amount is $22,679.44.

After reviewing the expenses outlined above, the Court finds that the expenses are the type typically billed by attorneys to paying clients in the market place.  *See Brody*, 167 P.3d at 205-06.   Moreover, because there is no objection to counsel's request for expenses and because the amount counsel requests for expenses is less than the amount permitted under the Settlement Agreement, the Court concludes that $22,679.44 in litigation expenses is independently reasonable in the context of this case.  *See Shaw*, 2015 WL 1867861, at *8 (awarding $62,388.58 in litigation expenses in wage-and-hour class action lawsuit).

## C.    Approval of Plaintiff's Incentive Award

"A class representative may be entitled to an award for personal risk incurred or additional effort and expertise provided for the benefit of the class."  *Tuten*, 41 F. Supp. at 1010 (citing *UFCW Local 880-Retail Food Emp'rs Joint Pension Fund v. Newmont Mining Corp.*, 352 F. App'x 232, 235-36 (10th Cir. 2009)).   "The reasonableness of a service award to a named Plaintiff is not generally listed as a factor to consider when deciding whether to approve a settlement."  *Thompson v. Qwest Corporation*, No. 17-cv-01745-WJM-KMT, 2018 WL 2183988, at *3 (D. Colo. May 11, 2018).   However, "reasonable incentive payments have become common for class representatives . . . ."

*Id.* (internal quotation marks and citations omitted).

Plaintiff asks the Court to approve an incentive award of $1,000.00 as recognition for her role in this case and its outcome. *Motion for Attorneys' Fees* [#128] at 17-18. This sum is well within the range of incentive awards which have been deemed reasonable. *See, e.g.*, *Thompson*, 2018 WL 2183988, at *3-4 ($5,000 award) (citing *Pliego*, 313 F.R.D. at 131 ($7,500 award); *Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271(LTS), 2011 WL 9380874, at *7 (S.D.N.Y. Sept. 21, 2011) ($10,000 award)); *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010) ($10,000); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) ($5,000); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ($25,000).

Factors to be considered when determining whether to approve an incentive award include: "(1) the actions that the class representative took to protect the interests of the class; (2) the degree to which the class has benefited from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation." *Thompson*, 2018 WL 2183988, at *3. In support of these factors, Plaintiff states:

> Plaintiff voluntarily shed light on her own mental health history to enable this case to be brought, and ultimately to achieve the result for the Class. She was an exceptionally dedicated and zealous advocate for the interests of the Class, conferred frequently with Class Counsel about the facts and legal theories, and participated actively in discussions concerning the litigation and settlement strategy.

*Motion for Attorneys' Fees* [#128] at 18 (citations omitted).

Given Plaintiff's actions, given that no objection has been raised to Plaintiff's request, given the overall settlement value of this case, and given the awards approved in other cases, the Court finds that an incentive award of $1,000 for Ms. O'Dowd is justified here, and therefore is approved.

## V. Conclusion

Thus, after reviewing the Motions [#128, #131] and Settlement Agreement [#121-1], the Court finds that the Settlement Agreement is fair, reasonable and adequate, and that the proposed settlement permits reasonable attorneys' fees and costs and an incentive award.  The Court therefore approves the parties' Settlement Agreement.

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Objection Letter [#129] is **OVERRULED** and that the Motions [#128, #131] are **GRANTED**.  All Settlement Class Members who failed to submit an objection to the Settlement in accordance with the deadline and procedure set forth in the Preliminary Approval Order are deemed to have waived and are forever foreclosed from raising any objection to the Settlement.  Accordingly,

IT IS FURTHER **ORDERED** that the following Settlement Class is finally certified pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) for settlement purposes only:

> All Plan Members who received Out-of-Network Behavioral Health Services during the Settlement Class Period that were allowed at or below the provider's billed charges.

The Settlement Class excludes those potential members who have properly excluded themselves (i.e., Opted Out) from the Settlement Class (identified in Exhibit B to the Declaration of Kimberly K. Ness with Respect to Administration Activities, which is designated as Confidential Health Information under the Qualified Protective Order in this matter and was filed under seal to protect the privacy of such persons).  Also excluded from the Settlement Class are: (1) Defendants and any current and former Subsidiaries, divisions, Affiliates, predecessors, insurers, assignees, and successors-in-interest and (2) any judge who presides or has presided over the Litigation, together with her

immediate family members and any other individual residing in the judge's household.

The certification of the Settlement Class is non-precedential and without prejudice to Defendants' rights under the Settlement Agreement if the Settlement Agreement and this Final Order and Judgment do not become effective as provided in the Settlement Agreement. In the event the Court's approval of the Settlement is reversed, vacated, or modified in any material respect by this or any other Court, the certification of the Settlement Class shall be deemed vacated, the Litigation shall proceed as if the Settlement Class had never been certified, without prejudice to Plaintiff's right to file a motion to certify a class or classes and to seek appointment of class representatives and class counsel, and without prejudice to Defendants' right to assert any and all defenses to class certification, including, but not limited to, the propriety of a class or classes and/or the substantive allegations asserted by Plaintiff and the putative class or classes, and no reference to the Settlement Class, the Settlement Agreement, or any documents, communications, or negotiations related in any way thereto shall be made for any purpose in the Litigation, or any other action or proceeding

IT IS FURTHER **ORDERED** that, for purposes of the Settlement only, the appointment of Plaintiff Laural O'Dowd as a representative of the Settlement Class and the appointment of D. Brian Hufford, Jason S. Cowart, and Andrew N. Goldfarb of Zuckerman Spaeder LLP, and Gregory A. Gold and Sommer D. Luther of The Gold Law Firm as Class Counsel are **AFFIRMED**.

IT IS FURTHER **ORDERED** that the Settlement Agreement [#121-1] is **APPROVED**, including all terms set forth in the Settlement Agreement and the Plan of Allocation.

IT IS FURTHER **ORDERED** all potential Settlement Class Members who have not timely excluded themselves from the Settlement Class have irrevocably submitted to the exclusive jurisdiction of this Court for any suit, action, proceeding, or dispute relating in any way to, or arising out of the Released Claims, the Settlement Agreement, or this Final Order and Judgment. In addition, all potential Settlement Class Member who did not timely exclude themselves from the Settlement Class are bound by the terms and conditions of the Settlement Class.

IT IS FURTHER **ORDERED** that the Escrow Account to be established pursuant to the Settlement Agreement is a "Qualified Settlement Fund" within the meaning of Treasury Regulation Section 1.468B-1(a).  All funds held in the Escrow Account shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Settlement Agreement and/or further order(s) of the Court.

IT IS FURTHER **ORDERED** that the parties shall direct the distribution of the Settlement Fund pursuant to the Plan of Allocation.

IT IS FURTHER **ORDERED** that an incentive award payment of $1,000.00 to Plaintiff is **APPROVED**.

IT IS FURTHER **ORDERED** that a payment to Class Counsel of $60,000.00 in attorneys' fees and of $22,679.44 in litigation expenses is **APPROVED**.

IT IS FURTHER **ORDERED** that pursuant to this Judgment, upon the Effective Date, the Plaintiff and each and every Settlement Class Member, on behalf of itself, himself or herself as well as his or her heirs, executors, administrators, successors, assigns, and all other persons to the fullest extent provided for in the Settlement

Agreement (i.e., the Releasing Parties) shall be deemed to have—and by operation of this Final Order and Judgment shall have—unconditionally, fully, finally and forever released and forever discharged and relinquished the Released Claims. Released Claims are: any and all manner of claims, counterclaims, actions, causes of action, arbitrations, damages, debts, demands, duties, judgments, liabilities, losses, obligations, penalties, liquidated damages, proceedings, agreements, promises, controversies, costs, expenses, attorneys' fees, and suits of every nature and description whatsoever, whether based on federal, state, provincial, local, foreign, statutory, or common law or any other law, rule, or regulation, in the United States, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, known or unknown, foreseen or unforeseen, whether class or individual in nature, arising on or before the Sunset Date, that the Releasing Parties, or any of them, ever had, now have, can have, shall or may hereafter have, or that have been or could have been asserted against any of the Released Parties by the Releasing Parties, directly or derivatively, in the Litigation, or any other forum based on, by reason of, arising from, in connection with, or in any way relating to the conduct, events, facts, transactions, occurrences, acts, representations, omissions, or other matters set forth, alleged, embraced, or otherwise referred to or alleged in the Complaint. This includes, without limitation and as to the Released Parties only, any claims arising from, in connection with or in any way relating to the adequacy or lawfulness of Anthem Colorado's reimbursement rates, policies, or methodologies, including but not limited to the ZBHA Fee Schedule or RBRVS Reimbursement Methodology, used by Anthem Colorado to determine reimbursement for Out-of-Network Behavioral Health Services, and Anthem Colorado's determination,

computation, payment, nonpayment, adjustment, or limitation of reimbursement for Out-of-Network Behavioral Health Services based on the ZBHA Fee Schedule or the RBRVS Reimbursement Methodology. Notwithstanding the foregoing, Released Claims do not include claims against the Released Parties by Persons covered by self-funded plans that have elected to use reimbursement methodologies or rates other than the RBRVS Reimbursement Methodology, arising on or after the Preliminary Approval Date. For avoidance of doubt, Released Claims do not include claims against the Released Parties relating to medical necessity or coverage determinations.

IT IS FURTHER **ORDERED** that pursuant to this Judgment, upon the Effective Date the additional Mutual Releases under Section 13.3 of the Settlement Agreement also shall have full force and effect.

IT IS FURTHER **ORDERED** that the Releasing Parties, whether or not any such Releasing Party seeks or receives payment under the terms of the Settlement Agreement, are hereby permanently enjoined from:

    (a)    filing, commencing, prosecuting, continuing, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits from any lawsuit, arbitration, or regulatory proceeding or order in any jurisdiction based on any or all Released Claims against one or more Released Parties;

    (b)    filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefits from any lawsuit, arbitration, administrative, or regulatory proceeding, or order in any jurisdiction, against one or more Released Parties, or against any person or

entity who may claim over against any Released Party for contribution or indemnity, based on, involving, or incorporating, directly or indirectly, any or all Released Claims; and

(c)      filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefits from any lawsuit, arbitration, administrative or regulatory proceeding, or order in any jurisdiction based on an allegation that an action taken by the Released Parties, which is in compliance with the provisions of the Settlement Agreement, violates any legal right of any Settlement Class Member; and

Any person that knowingly violates such injunction shall pay the attorneys' fees and costs incurred by Defendants or any Released Party as a result of such violation.

IT IS FURTHER **ORDERED** that in addition to the above, the Releasing Parties and each of them are deemed to have agreed and covenanted not to sue or prosecute, institute or cooperate in the institution, commencement, filing or prosecution of any suit or proceeding in any forum against any Released Party, or against any other person or entity who may claim contribution or indemnity from or against any Released Party, based upon or related to any Released Claim.

IT IS FURTHER **ORDERED** that the terms of the Settlement Agreement and this Final Order and Judgment shall be forever binding upon, and shall have res judicata, collateral estoppel, and all other preclusive effect as to the Released Claims

IT IS FURTHER **ORDERED** that the effectiveness of this Order and Final Judgment and the obligations of Plaintiff and Defendants under the Settlement shall not be conditioned upon or subject to the resolution of any appeal from this Order and Final

Judgment that relates solely to the issue of Class Counsel's application for an award of Attorneys' Fees.

IT IS FURTHER **ORDERED** that the parties to the Litigation are ordered to comply with the terms of and effectuate the Settlement Agreement. Plaintiff and Defendants, through Class Counsel and Defendants' Counsel, are authorized, without further approval from the Court, to agree to and to adopt such amendments, modifications, and expansions of the Settlement Agreement and all exhibits attached hereto as (a) are consistent with this Final Order and Judgment, and (b) which do not limit the rights of Settlement Class Members under the Agreement.

IT IS FURTHER **ORDERED** that during the course of the Litigation, Plaintiff, Defendants and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.

IT IS FURTHER **ORDERED** that as set forth in the Settlement Agreement, the Settlement comprises claims that are contested and nothing in this Final Order and Judgment, the Settlement Agreement, or any documents or statements related thereto, is or shall be deemed or construed to be (a) an admission of any fact, allegation, claim or defense that was or could have been asserted in the Litigation, or any other litigation, court, proceeding, arbitration, investigation or other forum; (b) evidence of any violation of any statute or law or of any liability or wrongdoing by the Defendants; or (c) an admission of the propriety of class certification or any class definition for any purposes other than for purposes of the current Settlement.

IT IS FURTHER **ORDERED** that in the event that the Settlement does not become effective for any reason, this Final Order and Judgment, except the three "Further

Ordered" clauses immediately preceding this one, shall be rendered null and shall be vacated, the Settlement (except as otherwise provided therein) shall be terminated, and the parties shall return to their positions without prejudice, as provided in the Settlement Agreement.

IT IS FURTHER **ORDERED** that judgment shall enter **DISMISSING WITH PREJUDICE** all claims against Defendants in this case, without fees or costs to any party except as provided herein and except as to any claim of the persons who properly requested to Opt Out of the Settlement (identified in Exhibit B to the Ness Declaration (under seal)). All Settlement Class Members are bound by this Final Order and Judgment. The Clerk of the Court is directed to **CLOSE** this case.

IT IS FURTHER **ORDERED** that, without affecting the finality of the Final Order and Judgment, the Court shall retain exclusive and continuing jurisdiction over the Litigation, the Parties, and the Settlement Class, and the administration, enforcement, and interpretation of the Settlement and the Final Order and Judgment, including but not limited to the injunctions described herein. Any disputes or controversies arising with respect to the Settlement shall be presented by motion to the Court, provided, however, that nothing herein shall restrict the ability of the Parties to exercise their rights pursuant to the ordered Release and Injunction.

Dated: September 9, 2019

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge